IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DONATO APONTE NAVEDO, BELKIS ISABEL SANTIAGO MARTÍNEZ, AND CONYUGAL PARTNERSHIP APONTE-SANTIAGO,<br>    PLAINTIFFS,<br><br>        v.<br><br>NALCO    CHEMICAL    COMPANY,    JOSÉ SERRANO,  AND  HIS  WIFE,  JANE  DOE (1),    AND    CONJUGAL    PARTNERSHIP SERRANO-DOE (1), JORGE CASTILLO AND HIS    WIFE,    JANE    DOE    (2),    AND CONJUGAL    PARTNERSHIP    CASTILLO-DOE (2),  ASHOK  PAUL  DUGGAL,  AND  HIS WIFE,  JANE  DOE  (3),  AND  CONJUGAL PARTNERSHIP  DUGALL-DOE(3)  AND  ABC INSURANCE,<br>    DEFENDANTS. | CIVIL NO.09-CV-01232-GAG<br><br>SUBJECT MATTER: TITLE VII VIOLATIONS, AGE, GENDER AND NATIONAL ORIGIN DISCRIMINATION, AMERICANS WITH DISABILITIES ACT, AND TORTS<br>PLAINTIFF DEMANDS TRIAL BY JURY |

## JOINT INITIAL SCHEDULING CONFERENCE MEMORANDUM

TO THE HONORABLE COURT:

COME  NOW  plaintiffs  Donato  Aponte  Navedo,  Belkis  Isabel Santiago  Martínez  and  the  Conjugal  Partnership  Aponte  Santiago (collectively  "**plaintiffs**"),  and  defendants  Nalco  Company  f/k/a Nalco    Chemical    Company    ("**NALCO**")    and    Ashok    Paul    Duggal, personally  and  on  behalf  of  the  conjugal  partnership  constituted between  him  and  his  wife  Somarie  Santiago  (collectively  referred to  as  the  "**defendants**"),  through  their  undersigned  attorneys  and to  this  Honorable  Court  respectfully  state,  allege  and  pray  as follows:

1

Pursuant to this Honorable Court's directives (see Dkt. No. 16), the parties hereby submit the present "Joint Initial Scheduling Conference Memorandum" for its consideration and approval.

## I. EACH PARTY'S THEORY OF THE CASE, FACTUAL AND LEGAL CONTENTIONS

### A.    PLAINTIFF

**1)** This is an action for employment discrimination and related violations of the constitutional rights of Plaintiff by defendants. The claims, filed on behalf of Mr. Donato Aponte (**Aponte**) and at then time spouse, now ex-wife, Belkis Isabel Santiago Martínez, arise from the acts and omissions by defendants, when starting on or around the year 2001, and all throughout the year 2008, until or around July 23rd, 2008, subjected Plaintiff Aponte to: a hostile work environment through discrimination and privacy violations and adverse employment conditions, leading to his eventual unjustified termination. Defendant Nalco further refused to pay Plaintiff Aponte severance pay, as required by the separation pay statutes of the Commonwealth of Puerto Rico.

**2)** Defendants Serrano, Castillo and Duggal all throughout the year 2008 either collaborated with, or failed in their duty to prevent, Plaintiff Aponte from being the object of disparaging, demeaning and ridiculing remarks. Plaintiffs also file this

2

action against all codefendants, whom they allege where deliberately indifferent to their rights, and caused the damages alleged, due to their failure to adequately supervise and discipline yet unidentified other persons, employees and agents of **Nalco**, whose actions and omissions were taken in deliberate indifference to Plaintiffs' rights and proximately caused their injuries. Plaintiffs' claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

3) This action is brought pursuant to **29 U.S.C. § 626**, Section 7(b) of the Age Discrimination in Employment Act (**ADEA**); **42 U.S.C. §1981**, as it pertains deprivation of rights of non-white persons; **42 U.S.C. § 12101**, Americans with Disabilities Act (**ADA**); **42 U.S.C. §2000**, Title VII of the Civil Rights Act of 1964; **42 U.S.C. §1988**, Civil Rights Attorney's Fee Act.

4) Jurisdiction is founded upon **28 U.S.C. §§ 1331, 1337, 1343** and **29 U.S.C. § 626**, and the aforementioned statutory provisions. Plaintiffs further invokes the supplemental jurisdiction of the Court pursuant to **28 U.S.C. § 1367** to hear and decide claims arising under the laws of Puerto Rico and any related claims which are deemed to be within respect to the pendent parties.

5) This is the proper venue to bring this action, since the cause of action arose in Puerto Rico and all parties reside in this jurisdiction.

6) Plaintiff Donato Aponte is a citizen of the Commonwealth of Puerto Rico and former employee of Nalco. Plaintiff qualifies as a protected individual under the statutes cited in the paragraphs above, as he is: Over 40 years old (**ADEA**); A Type II diabetic (**ADA**); and of Puerto Rican national origin (**Title VII**).

7) Plaintiff, Belkis Isabel Santiago Martínez, was at the time of filing this Complaint, wife of plaintiff Donato Aponte. They have since then divorced.

8) Defendant **Nalco** is a Delaware corporation with headquarters in Illinois, registered to do business in the Commonwealth of Puerto Rico as a foreign corporation.

9) Defendants José Serrano, Jorge Castillo and Ashok Paul Duggal were at all times relevant to the complaint officers of Nalco.

10) On **December 10, 2008**, Plaintiff timely submitted a charge of discrimination against Nalco and the above-named individuals with the Equal Employment Opportunity Commission ("**EEOC**") on the basis of national origin, disability, gender, age and both gender and age.

11) On **January 28, 2009**, plaintiff received a "notice of right to sue within 90 days" from the **EEOC**.

4

12)     At all times relevant to this Complaint, Nalco was engaged in an industry affecting commerce as defined in Section 11(h) of the ADEA, **29 U.S.C. § 630**.

13)     At all times relevant to this Complaint, the **Nalco** has employed 20 or more employees for each working day in each of 20 or more calendar weeks in the preceding calendar year.

14)     Nalco was and is, therefore, an employer within the Commonwealth of Puerto Rico and within the jurisdictional coverage of Section 11(b) of the **ADEA**, **29 U.S.C.A. § 630**, **ADA**, **42 U.S.C. § 12101** and Title VII of the Civil Rights Act, **42 U.S.C. §2000**.

15)     Defendants **Serrano, Castillo** and **Duggal** were at all times relevant to this complaint employers within the Commonwealth of Puerto Rico and within the jurisdictional coverage of **ADEA**, **29 U.S.C.A. § 630**, **ADA**, **42 U.S.C. § 12101** and **42 U.S.C. §2000**, and accountable for the action of Nalco's agents and its supervisors.

16)     The aforementioned defendants directly caused the injuries and violation to Plaintiffs' civil rights by their actions, and by their omissions in failing tc prevent others from injuring Plaintiffs.

17)     Defendants **Serrano, Castillo** and **Duggal**, where at all times relevant to this complaint respectively General Manager, Sales Manager, and Area Supervisor of Nalco, and thus charged with the responsibility of supervising the actions of all Nalco

agents and employees. On information and belief, these **Nalco** officers failed in their duty to supervise, evaluate, monitor and assign Nalco agents and employees, or otherwise assure that they would not represent a risk of injury to Plaintiffs, proximately causing the injuries alleged herein.

18)   Discriminatory acts of defendants and their refusal to follow company standards and procedures for dismissal and termination decisions were taken on behalf of **Nalco** and named defendants, as well as other unnamed **Nalco** Directors, Officers, Officials and Management.

19)   On information and belief, **Nalco** Directors, Officers, Officials and Management have long been aware of the habitually discriminatory conduct by defendants against Plaintiff.

20)   Furthermore, **Nalco** Directors, Officers, Officials and Management knew or should have known that defendants granted more favorable treatment to employee's who are either: non - Puerto Rico nationals; non disabled; conform to male, gender based stereotypes imposed by defendant Castillo; younger than Plaintiff, or a combination of the above unlawful basis for discrimination.

21)   Despite this knowledge, **Nalco** Directors, Officers, Officials and Management failed to take any steps to rectify the situation, and instead permitted Plaintiff's work conditions and environment to progressively deteriorate.

22)   The failure of **Nalco** Directors, Officers, Officials and Management to take remedial action indicates that the national origin,

disability, age and gender discrimination animus that pervades in **Nalco** is endorsed by its highest levels of authority.

23)    Each of the individually named co-defendants are sued in his official capacity, in his individual capacity, and their respective conjugal partnerships.

24)    Plaintiff Aponte began his career in **Nalco** on or around June'1996, and was subsequently terminated on or around July 23rd, 2008.

25)    Plaintiff Aponte was subjected to a hostile work environment by **Castillo** starting on or around 2001, until the end of his employment with **Nalco**, due to his **ADA** protected condition of Type II diabetes.

26)    Specific instances of **Castillo's** conduct include: Insistent disparaging remarks about Petitioner's diabetes-induced weight and girth; Directing demeaning and ridiculing comments towards Aponte for failing to physically "keep-up", due to his medical condition; Refusing to provide Aponte with a minimum reasonable accommodation, such that he could be properly nourished, medicated and rested to fulfill his duties; Imposing on Aponte working conditions which endangered his health and wellbeing by preventing him from adequately monitoring and reacting to his chronic condition.

27)     Plaintiff **Aponte** was subjected to a sexual and gender based hostile work environment by **Castillo** starting on or around 2001, until the end of his employment with **Nalco**.

28)     Specific instances of **Castillo's** conduct include: Persistent harassment insisting that Aponte participate in binge-drinking in **Nalco** sponsored employee and client outings; Persistent harassment insisting that Aponte participate in philandering, womanizing and sex-procurement in **Nalco** sponsored employee and client outings; Subjecting Aponte to ridicule and disparaging remarks in the presence of his colleagues, for refusing to engage in the above behavior; Subjecting Aponte to ridicule and disparaging remarks for failing to conform to **Castillo's** stereotype of acceptable male behavior.

29)     Plaintiff **Aponte**, as well as all other fellow employees of Puerto Rican national descent, were subjected to a hostile work environment by Nalco management, including but not limited to, the individuals named in this complaint.

30)     All individuals perpetrating the national-origin based discriminatory acts are non-Puerto Rican, foreign nationals, motivated by their hostility towards Puerto Ricans.

31)     Plaintiff Aponte endured the national-origin based discriminatory acts starting on or around 1998, and all throughout the date of his termination on or around July 23rd, 2008.

32)     Specific  instances  of  conduct  by  **Nalco**  management which  suggest  a  national-origin  based  discriminatory  animus include:  persistent  derogatory  comments  towards  Puerto  Rican work  ethics  and  habits;  demotions  aimed  specifically  to  Puerto Ricans,  under  threat  of  termination,  while  less  qualified foreign nationals were brought in as new hires.

33)     Plaintiff  **Aponte's**  discharge  from  **Nalco**  was  made  in favor  of  a  less-qualified,  younger  (under  40  years  of  age),  non- Puerto  Rican  foreign  national,  who  has  subsequently  filled Petitioner's  role  and  duties,  and  now  tends  to  what  was  once  his client base.

34)     All  throughout  the  period  from  1996,  until  July  23rd, 2008,  **Aponte**  proved  himself  as  a  qualified  employee  and professional,  for  which  he  repeatedly  received  accolades  from colleagues,  clients  and  Nalco  management  outside  of  the  Puerto Rico operation.

35)     **Nalco**,  on  the  other  hand,  continued  to  have  client demand  for  Aponte's  skill  set,  as  he  was  replaced  by  a  less qualified,  less  experienced  younger  foreign  national,  who  does not appear to suffer from a chronic disease.

36)     Plaintiff  **Aponte**  -  without  cause  or  justification  - was  further  subjected  to  arbitrary  and  discriminatory  decisions to    exclude    him    from:    training    and    continued    education opportunities;  work  tools  and  equipment  replacement  programs;

**Nalco** official communications and e-mail distributions; internal and customer meetings in which his participation would be otherwise essential.

37) Defendants acted within the scope of their employment as agents of **Nalco**, under the supervisory control of all named defendants and other **Nalco** Directors, Officers, Officials and Management.

38) Defendant's discriminatory conduct leading to the eventual termination of **Aponte**, created a work environment extremely detrimental to **Aponte's** emotional and physical health, interfered with his work performance, and caused Plaintiff acute emotional distress necessitating medical treatment and consequent medical expenses, which have only become aggravated since the date of termination.

39) All injuries suffered by Plaintiff are as a direct and proximate result of the grossly negligent and culpable actions and omissions of all the defendants, which were taken in reckless disregard of and in deliberate indifference to Plaintiff's constitutional rights.

40) These causes of action arise under the provisions of **29 U.S.C. § 626**, **42 U.S.C. § 12101**, **42 U.S.C. §1981**, **42 U.S.C. §2000**, and under the provisions of Commonwealth of Puerto Rico Law 100, **29 L.P.R.A. §146** et seq., which prohibit age, gender, national origin and disability based discrimination.

10

41)     This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and adjudicate these claims arising from the same nucleus of operative facts, and to hear and adjudicate any such claim this court may deem to be brought on behalf of a pendent party to this action.

42)     At all times relevant to this complaint Plaintiff's terms and conditions of employment, with respect to such matters as training, advancement, compensation, benefits, privileges, fringe benefits and bonuses, were not commensurate with that of similarly situated:     younger employees; employees who were willing to submit themselves to conform to male, gender based stereotypes imposed by defendant Castillo; non - Puerto Rico national employees; non - disabled employees.

43)     Discriminatory acts of defendants and their refusal to follow corporate standards and procedures for termination decisions were taken on behalf of Nalco and named defendants, as well as other unnamed Nalco Directors, Officers, Officials and Management.

44)     Defendants who are natural persons are accountable and respond in their official capacity for charges under 29 U.S.C. § 626, 42 U.S.C. § 12101, 42 U.S.C. §2000, and personally for charges under 42 U.S.C. §1981. The defendants respond jointly and severally to Plaintiffs for these violations, entitling Plaintiffs to an award of compensatory damages, costs, interests and attorney fees under 42 U.S.C. §1988.

45)     Given the wanton and malicious actions and omissions as described herein, the Plaintiffs are entitled to an award of punitive or exemplary damages.

46)     The actions and omission described herein constitute a tort under the Constitution and laws of the Commonwealth of Puerto Rico, for which the defendants respond to the Plaintiffs in compensatory damages, pursuant to **Article 1802** and **1803** of the **Civil Code of Puerto Rico**.

47)     At all times relevant to this complaint Plaintiff was subject to a demonstrated discriminatory animus was and submitted to continuous insults, disparaging remarks and ridicule, at a sufficient degree to constitute an abusive attack on his honor, dignity, personal integrity, reputation and private and family life.

48)     The actions and omission described herein constitute a privacy claim based on the violation of his right to privacy and dignity, a tort in violation of the provisions of **Article II §§1**, **8** and **16** of the Constitution of the Commonwealth of Puerto Rico.

49)     This cause of action for wrongful discharge and damages arises under of **Article II §§1**, **8** and **16** of the Constitution of the Commonwealth of Puerto Rico, which prohibit the termination of an employee in violation of a public policy

12

of constitutional magnitude, and pursuant to Law 80, **29 L.P.R.A. §185a**, which provides for statutory separation pay.

50) The insurers identified with the fictitious name ABC Insurance issued policies which cover the damages alleged herein.

51) These insurers respond directly to the plaintiff pursuant to the Direct Action Statute of the Commonwealth of Puerto Rico.

## B. DEFENDANTS

Plaintiff Aponte's employment with the defendants as District Sales Representative was terminated for just cause effective July 23, 2008, as a result of, among others, his poor performance. Mr. Aponte's performance commenced to decline drastically during the year 2007, and continued until the date he was discharged. He exhibited an attitude of not performing his work efficiently; did not perform the minimum requirements of his field sales role for more than a year before his termination of employment on July 23, 2008. He was placed on a performance improvement plan in August of 2007, which was followed by a short-term effort to improve performance. He, nonetheless, failed to achieve the desired improvement, resulting in him being removed of his largest account, AMGEN, by the customer. Among other things, plaintiff Aponte:

    a.  did not fulfill company, personal and local sales
        expectations/goals;

b.    caused the dissatisfaction of clients due to poor service;

c.    missed routine service visits which were expected by the clients without providing any explanation;

d.    untimely submitted service and special studies reports;

e.    failed to act upon complaints made by clients, as well as to comply with management's instructions/directives in relation to the same; and

f.    untimely submitted internal company administrative reports.

All of these things are properly documented.

It is defendants' position that Mr. Aponte's termination of employment was due exclusively to performance related issues and, hence, was for just cause under the provisions of Puerto Rico's Law 80, P.R. Laws Ann. tit. 29, §§ 185a-185m.  That is, it had nothing to do whatsoever with the reasons alleged by Mr. Aponte in the Complaint.

It is also defendants' position that, even if Mr. Aponte could show that he was treated unfairly while being terminated from his employment, something that defendants vehemently deny, he has no evidence to prove that his age, gender, national origin and/or alleged disability had anything to do with the

decision to terminate his employment.  See, e.g., Marti Navarro v. U.S., 104 F.Supp.2d 96, 105 n.8 (D.P.R. 2000) ("The Court notes that although reasonable minds could differ as to the fairness of [plaintiff's] dismissal, the Court's role is to determine whether [plaintiff] has a legally cognizable cause of action and not to decide whether he was fairly treated or not.") (quoting Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1 (1st Cir. 2000)).  See also Baralt v. Nationwide Mutual Insurance Company, 251 F.3d 10 (1st Cir. 2001), cert. denied, 534 U.S. 1127 (2002); Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424 (1st Cir. 2000); Cardona Jiménez v. Bancomercio de Puerto Rico, 174 F.3d 36 (1st Cir. 1999); and Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17 (1st Cir. 1998), cert. denied, 526 U.S. 1123 (1999).

### (i) LAW 80

Even if Mr. Aponte could establish that his termination of employment was unjustified, something that defendants emphatically deny, he would only be entitled to the remedy provided for under Puerto Rico's Wrongful Termination Act, P.R. Laws Ann. tit. 29, §§ 185a-185m ("**Law 80**").

As this Honorable Court well knows, Law 80 provides for severance pay as the exclusive remedy to an employee when the employer terminates his/her employment without just cause.  See e.g., Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839

F.Supp. 98, 109-110 (D.P.R. 1993), *aff'd without opinion*, 36 F.3d 1089 (1st Cir. 1994) ("Absent an express contract to the contrary, an employee hired for an indefinite term is terminable at the will of the employer without notice.... Puerto Rico courts have not recognized a right for at-will employees to sue for wrongful discharge outside of the remedies given under Act No. 80 for discharge without cause.... Because [plaintiff] was an at-will employee, any claim for wrongful discharge is covered under Act No. 80, which is an exclusive remedy in Puerto Rico....") (citations, quotation marks and footnote omitted; underscore added).[1]

### (ii) ADEA

Under the ADEA, it is unlawful for an employer "... to discharge any individual or otherwise discriminate against any individual with respect to ... terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). Nonetheless, the "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem

---

[1] See also Valle v. J.C. Penney, Inc., 704 F.Supp. 329, 330 (D.P.R. 1988); Weatherly v. International Paper Co., 648 F.Supp. 872, 875 (D.P.R. 1986); Vargas v. The Royal Bank of Canada, 604 F.Supp. 1036, 1039 (D.P.R. 1985); and Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517, 527 (1977).

from the person's age." Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988).

Where there is little or no direct evidence of age discrimination, plaintiff may rely upon the three stage burden-shifting framework set forth in McDonnell Douglas.[2] "Under this framework, the initial burden is on the plaintiff[s], who must make a prima facie showing of discrimination." Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994).

> [Establishing a prima facie case] puts the ball in defendant's court.... The burden of persuasion remains with the employee, but the burden of production shifts to the employer, who must then articulate -- not necessarily prove -- some valid, nondiscriminatory reason for the dismissal.... So long as the employer proffers such a reason, the inference raised by plaintiff's prima facie case vanishes.... In the final round of shifting burdens, it is up to plaintiff[s], unassisted by the original presumption, to show that the employer's stated reason was but a pretext for age discrimination.... To achieve this plateau, an ADEA plaintiff must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must also show a discriminatory animus based on age....

Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990) (citations and quotation marks omitted).

---

[2] McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).

The ADEA makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623 (a)(1). However, an employer is only liable if age was the motivating factor in the employer's decision. That is, the plaintiff's age must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

In this case, the plaintiff bears the burden of establishing that his age was the determinative factor in his discharge, and that defendants intentionally discriminated against him on account of his age. Reeves, 530 U.S. at 143; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Usually, a plaintiff can support an age discrimination claim by furnishing either direct or circumstantial evidence. See McDonnell Douglas, supra. Regardless of the evidence presented, the plaintiff must present sufficient facts to establish a genuine issue of material fact as to whether the dismissal was attributable to his age. Adams v. Corporate Realty Services, Inc., 190 F.Supp.2d 272, 276 (D.P.R. 2002)

18

(quoting _Mandavilli v. Maldonado_, 38 F.Supp.2d 180, 191 (D.P.R. 1999)).

In cases such as the present one, where plaintiff lacks direct evidence of the alleged type of discrimination, the familiar burden-shifting framework established in _McDonnell Douglas_ comes into play.   _Goldman v. First National Bank of Boston_, 985 F.2d 1113 (1st Cir. 1993) (citations omitted).

Under this framework, Mr. Aponte must establish a prima facie case of discrimination by proving four (4) elements:

> (a) that he is over 40 years of age;
>
> (b) that he met his employer's legitimate job expectations;
>
> (c) that he was discharged; and,
>
> (d) that he was replaced by someone younger than him.

_Serrano Cruz v. DFI Puerto Rico Inc._, 109 F.3d 23 (1st Cir. 1997); _Udo v. Thomes_, 54 F.3d 9, 12 (1st Cir. 1995); _Le Blanc v. Great American Insurance Co._, 6 F.3d 836, 842 (1st Cir. 1993), _cert. denied_, 511 U.S. 1018 (1994); _Vallejo Serrano v. Cigna Ins. Co._, 970 F.Supp. 78 (D.P.R. 1996).

The burden to prove a prima facie case of age discrimination is not onerous and once the plaintiff establishes a prima facie case of discrimination, there is a presumption that the employer unlawfully discriminated against the plaintiff.   _Udo_, 54 F.3d at 12.   This presumption places upon

19

defendants the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. <u>Burdine</u>, 450 U.S. at 254. The employer's burden at this second stage is merely one of production; the burden of persuasion remains with the plaintiff at all times. <u>Reeves</u>, 530 U.S. at 142; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 518 (1993); <u>Hidalgo v. Overseas Condado Insurance Agencies</u>, 120 F.3d 328, 334 (1st Cir. 1997).

When the defendant articulates a legitimate and nondiscriminatory reason for its actions, the presumption of discrimination established by the plaintiff's prima facie showing vanishes or drops out of the picture. <u>Reeves</u>, 530 U.S. at 143; <u>St. Mary's Honor Center</u>, 509 U.S. at 511. In turn, the burden of production shifts back to the plaintiff, who has to show that the defendants' proffered reason for its actions was a pretext for discrimination. <u>Serrano-Cruz v. DFI Puerto Rico, Inc.</u>, 109 F.3d at 25-26; <u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 260 (1st Cir. 1994). In this third prong, the plaintiff must do more than simply refute or cast doubt on the company's rationale; the plaintiff must show an impermissible discriminatory animus. <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d at 842; <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.2d 476, 479 (1st Cir. 1993); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 9 (1st Cir. 1990).

### (iii) TITLE VII

Title VII provides in its pertinent part that it is unlawful for an employer "... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1).

Under Title VII, just like under the ADEA, an employer is liable if the proscribed category -in this case sex (gender) and/or national origin- was the motivating factor in the employer's decision. That is, the plaintiff's sex and/or national origin must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." Reeves, 530 U.S. at 141 (citing Hazen Paper Co. v. Biggins, 507 U.S. at 610). Under Title VII, Mr. Aponte has the burden of establishing that his sex and/or national origin was a determinative factor in his discharge and other employment actions, and that defendants intentionally discriminated against him on account of his sex and/or national origin. Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 253. Where, as in this case, the plaintiff lacks direct evidence of either type of discrimination, the familiar burden-shifting framework established in McDonnell Douglas comes into play. Goldman v. First National Bank of Boston, *supra*.

In the context of a national origin and/or sex (gender) discrimination claim, to establish a prima facie case, Mr. Aponte must prove that:

> (a) he was a member of a protected class;
>
> (b) that he met his employer's legitimate job expectations;
>
> (c) that he was discharged; and,
>
> (d) that his employer recruited someone outside the protected class.

The burden to prove a prima facie case of sex and/or national origin discrimination is not onerous and once the plaintiff establishes a prima facie case of discrimination, there is a presumption that the employer unlawfully discriminated against the plaintiff. Udo, 54 F.3d at 12. This presumption places upon defendants the burden of producing an explanation to rebut the prima facie case, i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. Burdine, 450 U.S. at 254. The employer's burden at this second stage is merely one of production; the burden of persuasion remains with the plaintiff at all times. Reeves, 530 U.S. at 142; St. Mary's Honor Center, 509 U.S. at 518; Hidalgo, 120 F.3d at 334. "At this stage, the court's role is 'not to second-guess the business decisions of an employer, imposing the court's

subjective judgments of which person would best fulfill the responsibilities of a certain job.'" Rossy v. Roche Products, 880 F.2d 621, 625 (1st Cir. 1989) (quoted in Soto v. Runyon, 13 F.Supp.2d 215 (D.P.R. 1998)). See also Sukowski v. St. Luke Home Care Program, 206 F.Supp.2d 236, 243 (D.P.R. 2002) ("Neither Title VII nor the ADEA were designed to transform courts into super personnel departments, assessing the merits - or even the rationality - of employer's nondiscriminatory business decisions. Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) [, cert. denied, 504 U.S. 985 (1992)].") (quotation marks omitted and underscore added).

When the defendant articulates a legitimate, nondiscriminatory reason for their actions, the presumption of discrimination established by the plaintiff's prima facie showing vanishes or "drops out of the picture." Reeves, 530 U.S. at 143; St. Mary's Honor Center, 509 U.S. at 511. In turn, the burden of production shifts back to the plaintiff, who has to show that the defendants' proffered reason for their actions was a pretext for discrimination. Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d at 25-26; Woods v. Friction Materials, Inc., 30 F.3d at 260. In this third prong, the "plaintiff must do more than simply refute or cast doubt on the company's rationale" - Medina Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d at 9 - the plaintiff must show an impermissible discriminatory

animus.  LeBlanc v. Great American Insurance Co., 6 F.3d at 842;

Vega v. Kodak Caribbean, Ltd., 3 F.2d at 479.  In other words,

> [T]he ultimate question is whether the
> employer intentionally discriminated, and
> proof that "the employer's proffered reason
> is unpersuasive, or even obviously
> contrived, does not necessarily establish
> that the plaintiff's proffered reason ... is
> correct." [citations omitted].  In other
> words, "it is not enough ... to disbelieve
> the employer; the fact finder must believe
> the plaintiff's explanation of intentional
> discrimination."

Reeves, 530 U.S. at 146-47 (citing St. Mary's Honor Center, 509

U.S. at 519, 524).

### (iv)  LAW 100, THE ADEA AND TITLE VII

Puerto Rico's Law 100 provides that:

> Any employer who discharges, lays off or
> discriminates against an employee... because
> of his/her age,..., race, color, sex, social
> or national origin, social condition,
> political affiliation or political or
> religious ideology of the employee...: (a)
> Shall incur civil liability....

P.R. Laws Ann. tit. 29, § 146.

As indicated by the Court of Appeals for the First Circuit:

> Puerto Rico Law 100, like the ADEA, provides
> a cause of action in favor of those persons
> who suffer discrimination in their
> employment because of their age.  However,
> the statutes differ with regard to the
> burdens of proof that they impose upon the
> employer and the employee, under certain
> circumstances....  In particular, Law 100
> establishes a rebuttable presumption that
> the employer has discriminated illegally

24

> unless the employer can show that the
> [alleged discriminatory act of the employer]
> was justified....
>
> The most important difference between Law
> 100 and the ADEA is that when the Law 100
> presumption has been triggered, it shifts
> not only the burden of production, but also
> the burden of persuasion, from the employee
> to the employer.... Thus, in order to rebut
> the Law 100 presumption, the employer must
> prove, by a preponderance of the evidence,
> that the challenged action was not motivated
> by discriminatory age animus....

Álvarez-Fonseca, 152 F.3d at 27 - 28 (quotation marks, citations

and footnotes omitted; underscore added).  See also Guillermety

Méndez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 183-

184 (D.P.R. 1999) (same).

Because of the presumption contained in Law 100, the

burden-shifting framework of that statute differs significantly

from the burden-shifting framework under the ADEA and Title VII.

> Under Law 100, the plaintiff has two
> requirements to establish a prima facie
> case: 1) [he/she] must demonstrate that
> [he/she] was actually or constructively
> discharged; and 2) [he/she] must allege that
> the decision was discriminatory....  Once
> this minimal showing has been established,
> the burden shifts to the employer to prove
> by a preponderance of the evidence that it
> had "just cause" for its actions....  If the
> employer establishes "just cause," the
> burden of proof returns to the plaintiff to
> show that the employer's decision was
> motivated by age discrimination, thereby
> placing the plaintiff in the same situation

> as an ADEA plaintiff after the defendant has
> articulated a legitimate non-discriminatory
> reason.... If, however, the employer fails
> to prove "just cause," the employer bears
> the burden of proving that the decision was
> not motivated by age discrimination....

Cardona Jiménez, 174 F.3d at 42-43 (citations and quotation marks omitted; underscore added).

The Supreme Court of Puerto Rico, as well as the Court of Appeals for the First Circuit, have extensively interpreted the extent of Law 100, in particular, its burden-shifting framework, as compared with the ADEA and Title VII.[3] In this respect, the Supreme Court of Puerto Rico has recognized in several cases that the burden-shifting framework of a claim under the ADEA and Title VII is that established in McDonnell Douglas. See, e.g., Ibañez v. Molinos de P.R., Inc., 114 D.P.R. 42 (1983).

Likewise, the Court of Appeals for the First Circuit has held that:

> The Supreme Court's opinion in McDonnell
> Douglas... established an allocation of the
> burden of production and an order for the
> presentation of proof in Title VII
> discriminatory-treatment cases.... The
> plaintiff carries the initial burden under
> the statute of establishing a *prima facie*
> case of... discrimination.... In employment
> termination cases, a plaintiff establishes a
> *prima facie* case by showing that: (1) the
> plaintiff is within a protected class; (2)
> she was qualified for, and performing her
> job at a level that met the employer's

26

legitimate expectations; (3) she was nevertheless dismissed; and (4) after her departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work....

Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its employment action.... The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action....

. . . .

Once the employer offers a non-discriminatory reason for its action, the burden shifts back to the plaintiff to show that the reason proffered was a "cover-up" for a discriminatory decision....

Feliciano de la Cruz, 218 F.3d at 5-6 (citations and quotation marks omitted). See also Burdine, *supra* (Title VII case based on gender discrimination).

### (v) ADA

Pursuant to the provisions of the ADA: "The term 'disability' means, with respect to an individual -- (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a

record of such an impairment; or (c) being regarded as having such an impairment."  42 U.S.C. § 12102(2)(A), (B) and (C).

As indicated by the Court of Appeals for the First Circuit in the case of Soileau:

> [Mr. Aponte's] initial claim under the ADA depends on establishing that he suffers from a "disability" within the meaning of the statute.  Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996); see also 42 U.S.C. § 12112(a).  The definition of disability must be understood in light of congressional objectives in enacting the ADA.  In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability".  42 U.S.C. § 12112(a).  The antidiscrimination obligation is unusual in the context of federal civil rights statutes.  It imposes not only a prohibition against discrimination, but also, in appropriate circumstances, a positive obligation to make reasonable accommodations.  Absent a disability, however, no obligations are triggered for the employer.

Soileau v. Guilford of Maine, Inc., 105 F.3d at 15 (underscore added).

As indicated by the Court of Appeals for the First Circuit:

> The American with Disabilities Act is a federal civil rights statute, enacted to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with

28

disabilities.   42 U.S.C. § 12101(b)(1).   See
also Grenier v. Cyanamid Plastics, Inc., 70
F.3d 667, 671 (1st Cir. 1995).   In the
employment context, the ADA prohibits a
"covered entity" (defined as a person
engaged in an industry affecting commerce
who has 15 or more employees) from
discriminating against a qualified
individual with a disability because of the
disability of such individual in regard to
job application procedures, the hiring,
advancement, or discharge of employees,
employee compensation, job training, and
other terms, conditions, and privileges of
employment.   42 U.S.C. § 12112(a).   To
obtain relief under the Act, a plaintiff
must prove three things.   First, that he was
disabled within the meaning of the Act.
Second, that with or without reasonable
accommodation he was able to perform the
essential functions of his job.   And third,
that the employer discharged him in whole or
in part because of his disability.[4]

---

[4]   "A plaintiff may indirectly prove that he was discriminated
against because of a disability by using the prima facie case
and burden shifting methods that originated in McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973), and were refined and sharpened in Texas Dep't of
Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67
L.Ed.2d 207 (1981) and St. Mary's Honor Ctr. v. Hicks, 509 U.S.
502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)."   Id. at 30 n.2
(other citations omitted).   A plaintiff can establish a prima
facie case by proving that: "1. the plaintiff has a disability
within the meaning of the ADA; 2. the plaintiff is qualified to
perform the essential functions of the job, with or without
reasonable accommodation; 3. the plaintiff was subject to an
adverse employment action by the defendant; and 4. the plaintiff
was treated less favorably than similarly situated non-disabled
employees."   Hodgens v. General Dynamics Corp., 963 F.Supp. 102,

Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996) (underscore added, internal quotation marks omitted and footnote in original).

---

106-107 (D.R.I. 1997) (citing and quoting Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996)). See also Vallejo Serrano v. CIGNA Ins. Co., 970 F.Supp. 78, 83 (D.P.R. 1996) (similar); and Gutierrez-Usera v. Puerto Rico Telephone Co., 967 F.Supp. 35, 38 (D.P.R. 1997) (similar). See, however, Villanueva v. Wellesley College, 930 F.2d 124, 127-28 (1st Cir.), cert. denied, 502 U.S. 861 (1991) ("As the first two elements of the McDonnell Douglas model are quite easy to meet, it is not surprising that most cases... come to rest on the third step. At the summary judgment stage, when ... the employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: discrimination.... The plaintiff must do more than cast doubt on the wisdom of the employer's justification; to defeat summary judgment, the plaintiff must introduce evidence that the real reason for the employer's action was discrimination....") (citation and quotation marks omitted); and Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994) ("At the third and final stage [under McDonnell Douglas], plaintiff must produce sufficient evidence, direct or indirect, to show that the reasons advanced by the employer constitute a mere pretext for unlawful discrimination.... To meet this burden, the claimant must prove *both* that the employer's articulated reason is false, and that discrimination was the actual reason for its employment action.... If plaintiff fails to show pretext for discrimination the challenged employment action must stand....") (citations, quotation marks and footnote omitted).

Moreover, "[t]he impairment must be a significant one to trigger the Act's obligation." Soileau v. Guilford of Maine, Inc., 105 F.3d at 16.

As indicated before, it is defendants' position that Mr. Aponte's termination of employment was due exclusively to performance related issues and, hence, was for just cause under the provisions of Puerto Rico's Law 80, P.R. Laws Ann. tit. 29, §§ 185a-185m. That is, it had nothing to do whatsoever with the reasons alleged by Mr. Aponte in the Complaint (specifically, Mr. Aponte has no evidence to meet his burden of proof, by a preponderance of the evidence, in order to establish a cause of action against the defendants herein for the alleged ADEA, Title VII, Law 100 and ADA claims contained in his Complaint).

### (vi) TORTS

### (APONTE'S SPOUSE AND CONJUGAL PARTNERSHIP'S CLAIMS)

In order for a plaintiff to prevail in a tort action under Puerto Rico law, he/she must meet three (3) essential requirements: (1) actual damages must be shown; (2) there must be a causal nexus between the alleged damages and the act or omission of another; and (3) that act or omission must have been negligent or at fault.[1]

---

[1]  See, e.g., Baco v. Almacén Ramón Rosa Delgado, Inc., 2000 T.S.P.R. 111, 2000 PR Sup. LEXIS 105, *19-*20.

It is Nalco's position that Mrs. Santiago and the conjugal partnership do not possess any evidence to make the required causal connection between the damages alleged in the Complaint and any negligent act on the part of the defendants.

As a matter of fact, the claims for damages by Mrs. Santiago and the conjugal partnership formed by and between her and Mr. Aponte, are grounded on Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 (Puerto Rico's tort statute) and, therefore, are contingent to Aponte's Law 100 claim.[3]  Consequently, if Mr. Aponte's claim under Law 100 is found to be insufficient as a matter of law, Mrs. Santiago's claim for damages, as well as any possible cause of action that their conjugal partnership could have had, would equally fall. See, e.g., Flamand, 876 F.Supp. at 372 n.23 ("[T]he Puerto Rico Supreme Court has ... held that family members of an employee bringing suit under Law 100 may bring an action under Article 1802 for damages suffered due to the employer's discrimination against the employee.  Santini Rivera v. Serv Air, Inc., 94

---

[3]   See, e.g., Flamand v. American Intern. Group, Inc., 876 F.Supp. 356, 372 (D.P.R. 1994) ("[A] spouse and a conjugal partnership do not have standing under [the] ADEA and Law 100 because they do not meet the description of an 'employee' or of an individual who may bring suit under the statutes....  In the same vein, ... Law 80 also provides a cause of action for 'employees' only....") (citations and footnote omitted).

J.T.S. 121 (1994).") (underscore added).   See also Baralt v. Nationwide Mutual Insurance Company, 183 F.Supp.2d 486, 488 (D.P.R. 2002) ("A relative can recover under Article 1802 in a separate cause of action from the Law 100 cause of action.   This Article 1802 action is *contingent*, since if the employee does not prevail, [his] spouse cannot make a claim for discrimination that has not been proven.") (quoting Maldonado Rodríguez v. Banco Central Corporation, 138 D.P.R. 268, 276 (1995); quotation marks omitted); and Ocasio Berríos v. Bristol Myers Squibb, Puerto Rico, Inc., 51 F.Supp.2d 61, 65 (D.P.R. 1999) (Pieras, Jr., J.) ("[A] person's cause of action in tort [under Article 1802] is contingent upon his relative's cause of action under the employment discrimination statute [i.e., Law 100].") (citing Maldonado Rodríguez, *supra*; and Santini Rivera, *supra*; footnote omitted).

Other than the above, defendants respectfully refer this Honorable Court's attention to the contents of their Answer to the Complaint.

## II.   JURISDICTIONAL ISSUES

To this date plaintiffs have been unable to serve process on codefendants José Serrano, Jorge Castillo and their respective conjugal partnerships.   Notwithstanding, the parties are currently discussing the possibility of plaintiffs

33

continuing the case against Nalco only, which matter will be addressed by the parties under separate motion.

### III. CONSENT TO PROCEED BEFORE MAGISTRATE JUDGE (28 U.S.C. § 636)

The parties consent to proceed before a Magistrate Judge pursuant to the provisions of 28 U.S.C. §636.

### IV. INITIAL DISCLOSURES

The parties hereby certify to this Honorable Court that they have complied with their respective initial disclosures pursuant to the provisions of Fed.R.Civ.P. 26(a)(1).

### V. ELECTRONIC DISCOVERY ISSUES

The parties have addressed electronic discovery issues pursuant to the provisions of Fed.R.Civ.P. 26 (f)(3), and are in the process of compiling and exchanging ESI composition to adequately direct discovery in the present case. The parties do not foresee at this time any electronic discovery issues.

### VI. JOINT PROPOSED DISCOVERY TIMETABLE

1. The parties already notified each other by e-mail Interrogatories and Requests for Production of Documents on September 9, 2009.

2. The parties will respond to notified Interrogatories and Requests for Production on or before October 27, 2009.

3. Plaintiffs will notify expert witness reports on or before October 26, 2009.

4.    Defendants will announce their expert witness, if any, on or before November 27, 2009.

5.    The parties have set aside the following dates for the taking of depositions:  February 3, 4, 9, 11, 16, 18, 23 and 25 of 2010.

## VII. OTHER MATTERS

a. The jurisdiction over certain missing defendants has not been finally resolved.  The parties are discussing this matter and intend to address it shortly under separate motion.

b. The parties have requested each other to preserve and prevent any and all spoliation of electronic data, files, documents and/or e-mails.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of September, 2009.


LAW OFFICES OF CUADROS & CUADROS
Centro de Seguros Bldg., Suite 215
701 Ponce de León Avenue (Miramar)
San Juan, Puerto Rico 00907
Tel: (787) 725-2652
Fax: (787) 728-3820
ombenitez@cuad-law.com
macuadros@cuad-law.com

Signed By: *M. A. Cuadros*
     Miguel A. Cuadros Pesquera
     USDC-PR No. 114814
Signed By: *Olga M. Benítez Quiñones*
     Olga María Benítez Quiñones
     USDC-PR No. 226502

s/ Arturo Díaz-Angueira
ARTURO DÍAZ ANGUEIRA, 117907

s/ Roberto Feliberti
ROBERTO FELIBERTI, 208002

**CANCIO, NADAL, RIVERA & DÍAZ, PSC**
PO Box 364966
San Juan, PR 00936-4966
Tel. (787) 767-9625
Fax  (787) 764-4430/622-2238
adiaz@cnrd.com
rfeliberti@cnrd.com