**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DONATO APONTE NAVEDO, et al.<br>Plaintiffs<br>v.<br>NALCO CHEMICAL, INC., et al.<br>Defendants | **CIVIL No. 09-01232-GAG-JA**<br><br>TITLE VII AGE & GENDER DISCRIMINATION, ADA, NATIONAL ORIGIN<br>TORTS<br><br>TRIAL BY JURY |

**MOTION TO COMPEL DISCOVERY**

**TO THE HONORABLE COURT**:

Plaintiffs, Donato Aponte-Navedo and Belkis Isabel Santiago-Martínez, by and through their undersigned counsel, hereby, and pursuant to **Federal Rule of Civil Procedure 37(a)(4)**, request that this court issue order to compel discovery against co-defendant Nalco Chemical, Inc. (**Nalco**), in regards to the interrogatories and requests for production of documents served on Nalco by Plaintiffs, as detailed below. Pursuant to **Federal Rule of Civil Procedure 37(a)(1)**, and **Local Rule of Civil Procedure 26(b)**, Plaintiffs include a certification that they have in good faith conferred with Nalco in an effort to resolve this discovery dispute without court action.

**FACTUAL BACKGROUND**

1.  Counsel for both parties met on August 25th, 2009, as part of their conference and planning duties, and initiated a dialogue in regard to the discovery phase of the present case. Plaintiffs early on expressed their concern towards what they perceived to be a potentially massive amount of discovery of Electronically Stored Information (**ESI**) to be exchanged between the parties, coming mostly from Nalco, as the responding party. Accordingly, at said meeting, the parties agreed that even before exchanging formal discovery requests, they would address Plaintiffs general inquiries as they pertained to ESI. Plaintiffs submitted such inquiries to Nalco's attention on August 27th, 2009, and Nalco committed to answer said inquiries by September 3rd, 2009. See **Exhibit 1**.

1

**2.** The parties later agreed that the scope of the initial ESI inquiries would be expanded to include, as it related to any initial disclosures Nalco was to make, the following:

  **a.** for each indexed document produced, identification of the corresponding computer desktop program or software productivity tool from which it was created, or electronic messaging system from which it was transmitted;

  **b.** for each indexed document produced, a soft-copy - in its native electronic file format form – together with all of its original metadata;

  **c.** for each indexed document which is purported to be an e-mail communication, identity of the data extraction techniques and key-words utilized for its identification.

**3.** Without having the benefit of receiving Nalco's answers to the **Exhibit 1** inquiry, as later expanded as detailed in **¶ 2**, above, Plaintiffs served on Nalco a *First Set of Interrogatories and Request for Document Production* on September 9th, 2009. See **Exhibit 2**. In said discovery requests, Plaintiffs reiterated their need to take into consideration several Nalco ESI aspects, in order to be able to further refine, and make proper discovery requests. See **Exhibit 2** at **pp. 7 – 9**, Interrogatories 12 – 19. See also **Exhibit 2** at **pp. 9 – 15**, Requests 1 – 26.

**4.** On September 18th, 2009, Nalco made their initial disclosures to Plaintiffs, consisting of a series of statements which purported to be in compliance with **Fed. R. Civ. P. 26**, and documents bates-numbered 1 – 331. See **Exhibit 3**. A majority of the documents produced purported to be images of e-mail communications. The remainder of the production which did not consist of purported e-mail communications, had the general appearance of having been produced by software productivity tools. Hence, virtually all of Nalco's production had its origin in ESI documents. On that very same date, September 18th, 2009, the parties filed a *Joint Initial Scheduling Conference Memorandum*. See **Doc.# 32**.

**5.**   Although the parties had held several informal conversations regarding Nalco's responses to the agreed upon inquiries raised by Plaintiffs on August 25th, 2009, Nalco had failed to respond to the same, or make any material disclosures regarding ESI, by September 18th, 2009. However, in the spirit of cooperation, and relying in good faith on Nalco's assurances that they would comply with said inquiries and disclosures together with Nalco's responses to the outstanding discovery requests served by Plaintiffs, Plaintiffs agreed to file **Doc.# 32** stating only that the ESI issues were being handled. See **Doc.# 32**, at **p. 34**, ¶ *V. Electronic Discovery Issues*.

**6.**   On November 4th, 2009, Nalco replied to Plaintiffs' discovery requests. For the most part, Nalco failed to comply with Plaintiffs discovery efforts, with pretexts which mainly circled around the unrealistic perception that as imposed on Nalco, the requests were oppressive, burdensome, overbroad, and a number of other equivalent empty canned and boilerplate expressions. See **Exhibit 4**. Also absent from any disclosures and the responses to the discovery requests, were the aforementioned initial ESI inquiries of ¶¶ **1** and **2**, above.

**7.**   On November 24th, 2009, the parties held another Rule 26 meeting to address Plaintiffs' opposition to Nalco's discovery objections, above. During said meeting Nalco agreed to comply with all outstanding discovery requests served by Plaintiffs, provided their scope was specifically reduced from "*Nalco worldwide*", to "*Nalco regional*", or limited to only those geographic locations in which all individual Nalco-employee co-defendants exercised some level of authority. See **Exhibit 5**. Plaintiffs, accordingly, served on Nalco a re-drafted *First Set of Interrogatories and Request for Document Production* on December 3rd, 2009. See **Exhibit 6**.

**8.**   Also during the November 24th, 2009, Rule 26 meeting, Plaintiffs requested, and Nalco agreed, that a **Fed. R. Civ. P. 30(b)(6)** official would be designated by Nalco for deposition, to address the ever increasing complexity the ESI discovery requests seemed to be taking.

9.   Although Nalco had committed to a turn-around time of one week to respond to the re-drafted discovery requests, they immediately reacted to the re-drafted discovery, requesting an extension of time within which to respond. Notwithstanding Plaintiffs' apprehension with such an arrangement, again in the spirit of cooperation and to avoid the necessity of the Court's intervention, Plaintiff agreed to an extension of time. See **Exhibit 7**.

**10.** Notwithstanding Plaintiffs' continued cooperation effort, and willingness to compromise, on December 30th, 2009, Nalco once again reacted to the previously agreed upon scope of discovery of November 24th, 2009, presenting the same canned and boilerplate objections of "*burdensome* and *overbroad*", and inviting Plaintiffs to yet another Rule 26 meeting, to be held in a time-frame no earlier than mid January, 2010. See **Exhibit 8**.

**11.** To this date, Plaintiff objects to Nalco's behavior in the present litigation, in as much they have failed to:

   **a.**   properly comply with their duty of disclosure in regards to ESI, and properly respond to Plaintiffs' initial ESI inquiries; and

   **b.**   properly answer Plaintiffs' valid discovery requests.

**12.** Based on the discussion below, Plaintiffs request the intervention of this Honorable Court, in order to aid the parties in resolving the underlying discovery dispute.

## NALCO'S FAILURE TO DISCLOSE

**13.** Under the federal rules, parties are required to voluntarily and automatically disclose certain information relevant to the matter at issue. These automatic disclosure obligations are contained within Rule 26(a). As stipulated by the *Advisory Committee Notes*, initial disclosures are intended to provide sufficient information to enable opposing parties to develop strategies as to which documents might need to be examined, and to outline their discovery requests in a manner likely to avoid squabbles resulting from the wording of these requests.

**14. Federal Rule of Civil Procedure 16(c)(1)** directs that at pretrial and management conferences, attorneys make stipulations about *all matters that can reasonably be anticipated for discussion*, which includes, as it should, the requirement that there be a discussion of *ESI discovery*, if such discovery is contemplated in the action.

**15. Fed. R. Civ. P. 26(a)(1)(A)** requires a party to: "*without awaiting a discovery request, provide to the other parties: (ii) **a copy -- or a description by category and location -- of all documents, electronically stored information**, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . .*". [emphasis added]. **Fed. R. Civ. P. 26(f)(2)** imposes on counsel the duty to: "*discuss any issues about preserving discoverable information; and develop a proposed discovery plan.*". **Federal Rule of Civil Procedure 26(g)** further imposes on counsel the duty to supervise defendants disclosures, answers to interrogatories and production of documents.

**16.** Issues can typically arise because counsel still might tend to view the rules as they existed before the above ESI 2006 amendments to the rules. However, e-discovery matters are no longer the novel issues they once were, and even if the absence of the ESI amendments, with the advent of the Internet and wide expansion of computerized data collection, there is no legitimate excuse for a disclosing party to fail to identify the existence and nature of ESI sources. *Johnson v. Big Lots Stores, Inc., 253 F.R.D. 381, 395  (2008)*.

**17.** Where counsel simply does not   anticipate, is seemingly unaware, or woefully underestimates issues related to ESI, such tactics lead to a reasonable adverse inference that they are engaging in 'hide-the-ball' discovery tactics.

**18.** Nalco has not made full, proper, and timely disclosure of its highly sophisticated Information Technology infrastructure and professional services organization. No mention of this was made by Nalco in their disclosures or in the September 18th, 2009 *Joint Initial*

*Scheduling Conference Memorandum* (**Doc.# 32)**. To this date, it hasn't occurred to Nalco that they could possibly have ESI evidence, which might be relevant to this litigation, or that there is even any of this type of evidence to be had by the parties. Nalco still intends to invite Plaintiffs to further "discovery planning" meetings, to handle matters that it should have foreseen and addressed earlier in this litigation.

**19.** Plaintiffs contend that when the amended Federal Rules of Civil Procedure came into effect in December 2006, Nalco and its skilled legal representation were "put on notice" that the mechanics of discovery needed to be conducted with a heightened degree of procedural formality, most specifically in regards to ESI.

**20.** Plaintiffs have at every moment been prepared, and shown their willingness, to make certain concessions which limit the scope of discovery, and to discuss the full gamut of ESI issues, in order to get their arms around a more specific definition of parameters for this discovery process. To that end, Plaintiffs attempted to engage Nalco in a rational discussion on these matters, and persistently avoided the last recourse alternative of appearing before this Honorable Court.

**21.** That Nalco has failed to both, take advantage of Plaintiffs' good-faith spirit of cooperation constructively to advance this litigation, and adequately utilize prior Rule 26(f) conferences as strategic opportunities to negotiate an acceptable discovery plan, presents a set of circumstance that warrant intervention of the Court at this stage of the present case.

### NALCO'S FAILURE TO ANSWER VALID DISCOVERY REQUESTS

**22.** The scope of this discovery motion covers the attempts carried out by Plaintiffs to secure discoverable information under the custody and control of co-defendant Nalco, which Plaintiffs insist  they need to prove the claims made under the present case, and over which they have a legitimate right to access.

**23.** Nalco, as the party not responsive and resisting legitimate discovery requests, bears the burden of establishing why it should not be compelled to respond. Plaintiffs contend that this wholesale refusal to answer, and concerted effort to conceal legitimate discoverable information, should not be countenanced.

**24.** Nalco, as a computer-savvy litigant is taking unfair advantage of a supposed leeway in the procedural rules, to make discoverable documents intentionally difficult to discover by claiming undue burden. Their pervasive use of generalized objections must be recognized as nothing more than an evasive tactic aimed at hindering and delaying Plaintiffs' discovery efforts.

**25.** Nalco has failed to make a showing that they have paused, made a reasonable inquiry, and discovered facts that demonstrate the burdensomeness of Plaintiffs' discovery request, after which they undoubtedly would have been in a position to propose particularized objections. Nalco's objections, therefore, fail on their face to comply with the specificity requirement of **Fed. R. Civ. P. 33** and **34**. The canned objections, no matter how many times repeated, never rise to the level of valid objections under the Federal Rules of Civil Procedure.

**26.** Courts have long held through a litany of decisions, that the responding party  must have a valid objection to each discovery request in order to escape the production  requirement, and show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive. _McLeod, Alexander, Powell & Apfell, P.C. v. Quarles_, 894 F2d 1482, 1485 (5_th_ Cir. 1990). Recitations of expense and burdensomeness are merely conclusory. _Panola Land buyers Association v. Shuman_, 762 F2d 1550, 1559 (11_th_ Cir. 1985).

**27.** "_The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived . . ._" [emphasis added]. **Fed.R.Civ.P. 33(b)(4)**. See also a ruling based on the rule pertaining to interrogatories, _Jayne H. Lee, Inc. v. Flagstaff Indus.,_ 173 _F.R.D. 651, 657  (D.Md.1997)_, and another to document production requests, _Hall v. Sullivan,_

*231 F.R.D. 468, 473 (D.Md.2005).* "*Further, the failure by the Defendants to particularize their objections to Plaintiffs' discovery requests suggested a probable violation of* __Fed.R.Civ.P. 26(g)(1)__ *(failure to conduct a "reasonable inquiry" before objecting to an interrogatory or document request).*" [emphasis added]. <u>Mancia v. Mayflower Textile Servs. Co</u>, *253 F.R.D. 354, 356 (2008).* __Mancia__ provides a lengthy and persuasive analysis, together with a well-reasoned assessment of "canned" discovery objections.

28. By Nalco's own admission, a significantly large volume of ESI that is relevant to this litigation, e-mail messages, diaries, journals, memos, and correspondence regarding Plaintiff Donato Aponte reside on the Nalco's databases and servers, as is all information regarding the reasons and motivation for all employment actions at issue in this case. Nalco also maintains personnel databases with discoverable information regarding the age and gender of its workforce, from which discriminatory conduct and animus can be corroborated.

29. Nalco is in exclusive control of all relevant personnel records, aggregated employment data, and e-mail communications regarding relevant topics, all sitting and being hosted by Nalco computers, and all flowing through this employer's data-communications network. Other responsive ESI is only recoverable by Nalco owned and controlled recovery and back-up systems.

30. For this litigation to be objectively and fairly decided on the facts and on the merits in Nalco's virtually paper-free environment, all of the above relevant information cannot just remain solely available to Nalco, and withheld from Plaintiffs. Otherwise, the discovery effort of this discrimination case will be crippled, undermining the strong public policy of resolving disputes on their merits, and an injustice and unfair leverage and advantage would ensue precisely in favor of the most powerful party in this litigation, over the one with the most modest means. <u>Zubulake v. UBS Warburg LLC</u> *217 F.R.D. 309, 317 (S.D.N.Y., 2003).*

## CONCLUSION

**31**. Nalco has failed to honor its duty to make the above pre-trial disclosures regarding the availability of ESI, even after Plaintiffs have affirmatively and directly requested such disclosure.

**32**. Nalcos' discovery objections fall far short of the specificity required by *Fed. R. Civ. P. 33* and *34* and evidence a failure to comply with *Fed. R. Civ. P. 26(g)*.

**33**. Nalco's discovery objections, having not been made on a timely Fashion, should further also be deemed by this Honorable Court as waived.

## PRAYER FOR RELIEF

**34**. Due to the clear violations of the Federal Rules of Civil Procedure as noted, Plaintiffs request that  this Court order co-defendants to fully respond without further objections to:

Plaintiffs' Initial ESI inquiries, as stated in **Exhibit 1**;

Plaintiffs' request for supplementation of Nalco's production and disclosures according to ¶ **2**, above, identifying: relevant computer desktop program or software productivity tools: soft-copy in native electronic file format form, together with all of its original metadata; data search and extraction techniques , together with related key-word definition.

Plaintiffs' discovery requests in their redrafted *First Set of Interrogatories and Request for Document Production,* as stated in **Exhibit 6**.

Plaintiffs' **Fed. Civ. P. 30(b)(6)** request for the designation of a competent Information Technology Nalco official.

**WHEREBY**, for all of the above, Plaintiffs pray this Honorable Court:

> Take **NOTICE** of all of the above;

> **GRANT** Plaintiffs' present motion to compel.

**Respectfully submitted** in New York, New York, this 11th day of January, 2010.

S/William Meléndez Menéndez
William Meléndez Menéndez
USDC-PR No. 226902

William E. Meléndez | We.Melendez@e-Lex.us |Cuadros & Cuadros

410 Park Avenue 15th Floor, Suite # 1223 | New York, New York 10022

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for defendants and all other parties of interest.

S/William Meléndez Menéndez
William Meléndez Menéndez