## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DONATO APONTE NAVEDO, *et. al.*, | CIVIL NO. 09-01232 (JA) |
| Plaintiffs, | |
| v. | |
| NALCO CHEMICAL COMPANY, *et. al.*, | TITLE VII VIOLATIONS, AGE, GENDER AND NATIONAL ORIGIN DISCRIMINATION, AMERICANS WITH DISABILITIES ACT AND TORTS |
| Defendants. | |
| | PLAINTIFFS DEMAND TRIAL BY JURY |

### DEFENDANTS' OPPOSITION TO MOTION TO COMPEL

TO THE HONORABLE COURT:

**COME NOW** codefendant Nalco Company f/k/a Nalco Chemical Company ("**NALCO**") and codefendant Ashok Paul Duggal, personally and on behalf of the conjugal partnership constituted between him and his wife Somarie Santiago (hereinafter referred to as "**Mr. Duggal**"), through the undersigned attorneys, and respectfully states, alleges and prays as follows:

### INTRODUCTION

This is a relatively simple case. The plaintiff, Donato Aponte Navedo, who worked in NALCO's Puerto Rico office for eight years, alleges that he was subjected to a hostile work environment and was unjustly terminated as a result of discrimination based on his age, gender, national origin and disability by NALCO. See Complaint, docket no. 1, ¶ 1. In fact, the plaintiff was fired by his local manager, co-defendant Duggal. Thus, it would

appear that discovery in this case should be focused on the existence or non-existence of the alleged hostile working environment - and, again, the plaintiff worked in Puerto Rico - and the basis for the plaintiff's termination, which also took place in Puerto Rico.

However, plaintiff has sought to expand the reach of discovery to include persons, documents and computer systems far beyond Puerto Rico. He has embarked, net in hand, on a truly global fishing expedition to include persons, documents and computer systems in Central and South America as well as the continental U.S., without any justification for the global reach of his discovery requests.  As the plaintiff's discovery requests are beyond the proper scope of discovery as provided by the federal rules, the motion to compel should be denied.

## RELEVANT FACTS AND PROCEDURAL HISTORY

On September 9, 2009, plaintiff served his First Set of Interrogatories and Request for Document Production. See docket no. 41-4. On September 18, 2009, NALCO served its Initial Disclosures, which included 331 bates-stamped pages of documents. That same date, the parties filed a Joint Initial Scheduling Conference Memorandum, in which they agreed that response to pending discovery would be due by October 27, 2009. See docket no. 32.. On November 4, 2009, NALCO served its responses and objections to plaintiff's interrogatories and request for production. Docket no. 41-6. The parties met to discuss NALCO's responses on November 24, 2009, and agreed that plaintiff would submit redrafted and more narrowly drawn versions of certain interrogatories and requests by

November 30, 2009. The redrafted discovery was actually served by plaintiff on NALCO

on December 3, 2009.

NALCO reviewed the redrafted discovery and found that it still was overly broad

and not reasonably calculated to lead to admissible evidence. It advised plaintiff of its

objections in an e-mail message on December 30, 2009 and offered to either meet with

plaintiffs' counsel again to discuss the redrafted discovery or, in the alternative, to jointly

schedule a conference with this Honorable Court to resolve these discovery issues. See

docket no. 41-10. Instead, the plaintiff filed this motion to compel.

## LEGAL ARGUMENT

### I.  THE DISCOVERY SOUGHT BY PLAINTIFF IN HIS REDRAFTED INTERROGATORIES AND REQUESTS FOR PRODUCTION IS BEYOND THE SCOPE OF DISCOVERY PROVIDED IN FED.R.CIV.P. 26.

Fed.R.Civ.P. 26(b) provides the scope of discovery and its limitations:

(b) Discovery Scope and Limits.

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2) Limitations on Frequency and Extent.

(A) When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action,

and the importance of the discovery in resolving
the issues.

Keeping the scope of discovery in mind, we turn to the plaintiffs' redrafted discovery
requests:

> *5. From January 2007 until the present day, list for each NALCO CHEMICAL, INC. employee who has received a promotion, or who's conditions of employment have improved as compared to those conditions of others within the following delimited and narrowly defined reference group: employees who have been under the scope of authority, chain of command, area of responsibility, reported to or been accountable in any way, formally or informally, on an institutional or project basis, to any of the following named co-defendants: **José Serrano**, **Jorge Castillo** and **Ashok Paul Duggal**:*

>> ***a.*** *name, gender, age, national origin, and date of promotion;*

>> ***b.*** *job promoted from, with its corresponding salary grade and department;*

>> ***c.*** *job promoted into, with its corresponding job description and criteria, selection devices and procedures, salary grade and department;*

>> ***d.*** *justifications and reasons why promotee was selected over others;*

>> *e. date and position of initial hire, with its corresponding salary grade and department;*

>> ***f.*** *other positions held with employer, with their corresponding salary grade and department;*

>> *g. supervisors and officials involved with promotion and the nature of their involvement;*

>> ***h.*** *copy of personnel file and all documents related to the above promotions.*

As NALCO set forth in its objection to these redrafted discovery requests, redrafted request No. 5 is objectionable in at least two senses. First, it is too broad, in that it seeks information concerning employees outside of the Puerto Rico office. As noted above, the plaintiff was terminated by his manager in Puerto Rico. Yet plaintiff seeks discovery related to managers outside of Puerto Rico. For example, José Serrano, who is Nalco's Business Manager, Energy Services, Downstream Latin America and who works out of Sao Paulo, Brazil, supervises 615 employees – 166 in Mexico, 260 in Brazil, 23 in Argentina 23, 52 in Chile, 67 in Colombia, 28 in Venezuela, 5 in Trinidad, 5 in the Dominican Republic, 2 in the U.S. and 7 in Puerto Rico. The plaintiff's claim is one of disparate treatment, not disparate impact and the relevant inquiry refers to the treatment of the plaintiff.[1] In such cases, courts have held that "Absent a showing of 'particularized need and relevance' plaintiffs may not compel discovery from related corporations **or even separate units of the same corporation**." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 954 (11th Cir. 1991). Another court put it this way:

> "[T]he most natural focus is upon the source of the complained of discrimination--the employing unit or work unit." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978). In order to expand discovery beyond that initial focus, the plaintiff must make some showing of particularized need and likely relevancy.

---

[1]  NALCO notes that despite plaintiff's national origin and age discrimination claim, the large majority of employees in the Puerto Rico office are of Puerto Rican descent and are over 40 years old.

*Johnson v. Metromedia Communications Corp.*, 1992 U.S. Dist. LEXIS 17641, 4-5 (N.D. Ill. 1992); see also *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246 (E.D.N.C. 2005) (discovery is limited to the employing unit unless the plaintiff provides a valid need to extend beyond that unit); *EEOC v. Lockheed Martin*, 2007 U.S. Dist. LEXIS 39342 (D. Haw. 2007) (same); *Chavez v. DaimlerChysler Corp.*, 206 F.R.D. 615 (S.D.Ind. 2008) (same). As such, the "*narrowly defined reference group*" plaintiff speaks of in Request no. 5 is still overly broad in that it goes beyond the plaintiff's work unit without any showing of particularized need for that information.

Moreover, plaintiff seeks information concerning employees who were promoted - but this is not a failure to promote case. Plaintiff has made no showing as to why decisions on promotion are relevant to either the alleged hostile environment the plaintiff supposedly endured or to his unjust termination claim.

Redrafted Interrogatories 12 - 18 all deal with data bases and computer information beyond the scope of Nalco's Puerto Rico office. Personnel files at NALCO are paper files. All documents related to an employee, including performance reviews and documentation relating to the termination decision are kept in the personnel files. As plaintiffs have already been advised, NALCO does have an electronic database where employee information is stored: the master HR database in located in Naperville, Illinois. Beyond that database, the plaintiff's requests for information regarding other, non-Puerto Rico ESI and

databases are, for the reasons discussed above, overbroad and not reasonably calculated to lead to admissible evidence.

Plaintiff's requests for production are also overly broad and seek information not reasonably calculated to lead to admissible evidence in this disparate treatment case. As an example, Request No. 1 seeks "All files identifying the nature of NALCO CHEMICAL, INC.'s operations, physical locations, and organizational structure, including agents, principals, officers, officials, directors, and any others who have or might have any responsibility for the development of NALCO CHEMICAL, INC. policy." Docket no. 41-8, p. 5. This request, read literally, would require Nalco to produce virtually every file in its possession worldwide. Needless to say, a production of this magnitude is justified neither by relevance to the plaintiff's claim nor by the importance of the issues at stake in the action or the importance of the discovery in resolving the issues.

The same objection is appropriate for the other requests for production. They seek information and documents that are more suited to a class action/disparate impact claim, rather than the plaintiff's actual disparate treatment claim and as such, they are not discoverable in this case.

## II.  THE PLAINTIFF'S ELECTRONICALLY STORED INFORMATION QUERIES ARE OVERBROAD.

Plaintiff makes much of the 2006 amendments to the federal rules concerning electronically stored information as placing an additional burden on NALCO. However, the 2006 amendments did not change the overall scope of discovery, as discussed above.

As NALCO has suggested to plaintiff, his Electronically Stored Information ("ESI") requests put the cart before the horse. Rather than identifying the appropriate scope of the information sought - regardless of the form of that information - plaintiff went straight to demanding voluminous categories of information regarding databases, systems and networks without regard as to whether those systems contained any discoverable information.

This Court has recently addressed a similar situation in an employment discrimination case. In *Rodríguez-Torres v. Governmnet Development Bank of Puerto Rico*, 2010 U.S. Dist LEXIS 3958 (D.Puerto Rico 2010), the Court was faced with discovery requests and requests for ESI. An example of one request in that case follows:

> For each year 2007, 2008, 2009, produce in native electronic format with its original metadata all e-mail communications and calendar entries describing, relating or referring to plaintiff Vicky Rodriguez, both inbound and outbound from co-defendant GDB's messaging system servers. Particular attention to the following definition of extract key-words needs to be exercised: a) identification of Rodriguez by different variations of her name; b) designation of pejorative and derogatory terms typically used to demean persons according to their age and gender (including but not limited to phrases such as: vieja, nena, arrugas, anos, edad, etc.); c) designation of phrases which could be referring to the current and past litigations, and which could suggest retaliatory animus or activities (including but not limited to phrases such as: demanda, caso, testigos, demandada, plaintiff, etc.); d) designation of record custodians to include all co-defendants, and other unnamed GDB employees known to tease, insult and taunt Rodriguez based on her physical appearance and age (a description of the process is further detailed in the ESI Specialist Report).

The Court ordered the parties to prepare a joint informative motion, with plaintiffs being ordered to explain what information they anticipated finding in the native format

documents and the basis for their belief that they would find such information and the parties being ordered to provide information on the cost and time it would take to produce the ESI requested by Plaintiffs. After the informative motion was filed (indicating that compliance with the plaintiff's ESI request would cost $35,000, not including the time or expense required to review all of the e-mails for privilege issues), the Court determined that the plaintiff's ESI request was not reasonably accessible and thus denied the plaintiff's motion to compel. The court was particularly influenced by the plaintiff's inability to articulate a good reason for their belief that the ESI contained relevant information. Of course, the plaintiffs in this case have made no showing at all as to what they expect to discover in their ESI requests. Absent such a showing, their ESI requests should be denied.

## CONCLUSION

For the foregoing reasons, NALCO respectfully requests that plaintiff's motion to compel be denied. Alternatively, NALCO has no objection to a conference before the Court in order to resolve this discovery issue.

**WHEREFORE**, codefendant Nalco Company f/k/a Nalco Chemical Company ("**NALCO**") and codefendant Ashok Paul Duggal respectfully request that the plaintiff's motion to compel be denied.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY**: That on this same date we electronically filed the present motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 28th day of January, 2010.

s/ James W. McCartney  
James W. McCartney  
USDC-PR No. 211511  
**CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**  
PO Box 364966  
San Juan, PR 00936-4966  
Tel. (787) 767-9625  
Fax  (787) 764-4430/622-2238  
jmccartney@cnrd.com

233763.2