**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DONATO APONTE NAVEDO, et al.<br>    Plaintiffs<br>          v.<br>NALCO CHEMICAL, INC., et al.<br>    Defendants | CIVIL No. 09-01232-JA<br><br>TITLE VII AGE & GENDER DISCRIMINATION,<br>ADA, NATIONAL ORIGIN, TORTS<br>TRIAL BY JURY |

## 2ND OMNIBUS MOTION FOR DISCOVERY ORDERS

Plaintiffs, Donato Aponte-Navedo and Belkis Isabel Santiago-Martínez, by and through their undersigned counsel, hereby move this Honorable Court as follows:

### I. PROCEDURAL BACKGROUND

1. Plaintiffs filed their first omnibus motion for discovery orders on March 25th, 2010. See: **ECF No. 53.**

2. Said motion was granted in part, and denied in part by this Honorable Court on May 20th, 2010. See: **ECF No. 57**, available at: **_Aponte-Navedo v. Nalco Chemical Co._, 268 F.R.D. 31 (2010).**

3. As to those parts of Plaintiffs' discovery requests addressed in their motion in **ECF No. 53** which were denied by the Court for excessive breath of scope, the Court stated that a proper scope for said request would be limited to: *"Nalco's Puerto Rico databases located in Naperville, Illinois."*. See: **Id., 268 F.R.D. 31, at* 38.**

4. Accordingly, Plaintiffs redrafted their interrogatories (<u>See</u>: **Exhibit 1, <u>Appendix at 1-10</u>**) and requests for production of documents (<u>See</u>: **Exhibit 2, <u>Appendix at 11-16</u>**), specifically further limiting their scope to: *"information residing in Nalco's Puerto Rico databases located in Naperville, Illinois",* and served them on Nalco on May 31st, 2010 (<u>See</u>: **Exhibit 3, <u>Appendix at 17-18</u>**).

5. Counsel on both sides conferred in person on June 1st, 2010, regarding, *inter alia,* the above re-drafted discovery requests, and agreed to a new 30 day period within which to serve responses, to expire on June 30th, 2010. At said meeting, Nalco did not make any further objections to the discovery requests, which were re-drafted according to the Order issued by the Court, as set forth in **ECF No. 57.**

6. On June 29th, 2010, Nalco informed Plaintiffs that they were taking a unilateral extension of time to serve their responses to the above re-drafted discovery requests (<u>See</u>: **Exhibit 4, <u>Appendix at 19</u>**). However, it was not until July 15th, 2010 (<u>See</u>: **Exhibit 5, <u>Appendix at 20-31</u>**), when they finally served their responses.

7. All through the time period starting on May 20th, 2010, when the Court's Order as set forth in **ECF No. 57** was issued, Plaintiffs attempted to confer with Nalco regarding their non-compliance with said Order (<u>See</u>: **Exhibit 6, <u>Appendix at 32-43</u>**). Due to Nalco's non-responsiveness to said attempts to confer, Plaintiffs served their

opposition to Nalco's responses on September 7th, 2010 (<u>See</u>: **Exhibit 7, <u>Appendix at 44-51</u>**). Further attempts to confer, have continued to be ignored (<u>See</u>: **Exhibit 8, <u>Appendix at 52-55</u>**).

8. On September 29th, 2010, with a pending trial date of November 15th, 2010, and several attempts by Nalco to continue said trial date, Plaintiffs moved the Court for leave to either: file this motion - in the event that the trial were to be continued - or file a motion for a finding of spoliation, in the event that the trial were to remain as scheduled. <u>See</u>: **ECF No. 70.**

9. On October 15th, 2010, the Court granted Plaintiffs leave to file the instant motion to compel, <u>See</u>: **ECF No. 74,** and left without effect the trial date of November 15th, 2010. <u>See</u>: **ECF No. 75.**

## II. <u>GENERAL REACTION TO DISCOVERY OBJECTIONS</u>

10. Answers to discovery requests served on Nalco on May 31st, 2010, have not been properly sworn and signed by Nalco or any of its authorized agents, neither as to interrogatories (<u>See</u>: **Exhibit 5, <u>Appendix at 25-26</u>**), nor as to requests for document production (<u>See</u>: **Exhibit 5, <u>Appendix at 30-31</u>**), and as such, they are deemed deficient, and to not have been responded to. <u>See</u>: ***<u>Morin v. Nationwide Federal Credit Union</u>, 229 F.R.D. 364, 369 (D.Conn., 2005)***. Nalco's continued unresponsiveness, in light of Plaintiffs' continued efforts to bring the issue to their attention, is grounds for having said responses stricken. <u>See</u>: **Fed. R. Civ. P. 26(g)(2).**

11. **Fed. R. Civ. P. 33(b)(4)**, and **Fed. R. Civ. P. 34(b)(2)(B)**, respectively, set time frame within which interrogatories and requests for production of documents must be answered by the served party. Any grounds for failing to properly and fully answer or produce, which are not stated in a timely objection, are deemed to have been waived. See: *Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 359 (D.Md., 2008)*; *Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 11 (1st Cir., 1991)*; *Brenford Environmental System, L.P. v. Pipeliners of Puerto Rico, Inc., 2010 WL 3001654 at \*3 (D.P.R., 2010)*.

12. Plaintiffs submit to the Court, that at all times relevant to this motion, they have been in good-faith compliance with their obligation to cooperate with respect to planning and executing discovery or resolving discovery disputes, while at the same time identifying and pursuing only legitimate discovery needs, proportionate to what is at stake in the present litigation. See: *Mancia v. Mayflower Textile Services Co., 253 F.R.D. 354, 357-58 (D.Md., 2009)*.

13. The discovery requests at issue were served on May 31st, 2010. On June 2nd, 2010, the parties agreed that responses would be issued in 30 days, or by June 30th, 2010. Nalco's deficient attempt to serve untimely responses submitted on July 15th, 2010, and their continued

failure to answer 102 days later, effectively waived any objections, and therefore all discovery requests must be answered in full.

### III. <u>PLAINTIFFS' RIGHT TO ACCESS AND RELEVANCE</u>

14. The broad right of discovery is based on the general principle that litigants have a "right to every man's evidence," *<u>United States v. Bryan</u>, 339 U.S. 323, 331, (1950)*, and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.

15. Relevance, in the pre-trial discovery context has been elaborated as information which would have any possible relation to the subject matter of the action at issue, such evidence will include personnel files and similar documents. *<u>Ragge v. MCA/Universal</u>,  165 F.R.D. 601, 604 (D.Cal., 1995)*.

16. It therefore follows, that the primary means with which Plaintiffs can discredit Nalco's pretextual reasons for any adverse employment action is by showing that similarly situated employees were treated differently. Discoverable evidence, for this purpose, routinely includes documents pertaining to promotions or demotions, disciplinary proceedings, work performance reviews and evaluations, and complaints, which are potentially relevant, for among other things, to establish the employer's knowledge of a hostile work environment. To that effect, Federal courts routinely compel employers to provide evidence related to other employees, even the

entire personnel records of other employees. *Coughlin v. Lee, 946 F.2d 1152, 1159 (5ᵗʰ Cir., 1992).*

17. Greater latitude in discovery has been recognized, as the Supreme Court has acknowledged that, in Title VII cases, liberal civil discovery rules give plaintiffs broad access to document their claims. *Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657-58 (1989).*

18. Unnecessary limitations on discovery in Title VII should thus be avoided, as the proof required to demonstrate unlawful discrimination may often be indirect or circumstantial. *Miles v. Boeing Co., 154 F.R.D. 117, 119 (E.D.Pa., 1994); E.E.O.C. v. Lockheed Martin, 2007 WL 1576467 at *2 (D.Hawai'i, 2007).* Further, the effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact finder to disbelieve an employer's account of its own motives. *Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155 (8ᵗʰ Cir., 1990).*

19. The court in *McPeek v. Ashcroft, 212 F.R.D. 33 (D.D.C., 2003),* however, was able to make the connection that seems so elusive to Nalco as they pose their untimely objections, in another employment discrimination lawsuit. In considering what was the proper scope of discovery, the court based its assessment on the likelihood that information that was relevant to the lawsuit would be found. The

assessment of relevance, on the other hand, was based on the
relationship between documents and communications created by key-
individuals, and the time period during which the events triggering
the retaliatory behavior occurred. *Id., at *34*. ". . . *The
likelihood of finding relevant data has to be a function of the
application of the common sense principle that people generate data
referring to an event, whether e-mail or word processing documents,
contemporaneous with that event . . .". Id., at *35*.

### IV. <u>SPECIFIC REACTIONS TO DISCOVERY OBJECTIONS</u>

20. <u>Interrogatory No. 5</u> - From January 2007 until the present day, list for each
NALCO CHEMICAL, INC. employee who has received a promotion, or who's conditions
of employment have improved as compared to those conditions of others within the
following delimited and narrowly defined reference group: employees who have
been under the scope of authority, chain of command, area of responsibility,
reported to or been accountable in any way, formally or informally, on an
institutional or project basis, to any of the following named co-defendants:
José Serrano, Jorge Castillo and Ashok Paul Duggal, <u>**AND limited to information
residing in Nalco's Puerto Rico databases located in Naperville, Illinois**</u>:

a. name, gender, age, national origin, and date of promotion;

b. job promoted from, with  its corresponding salary grade and department;

c. job promoted into, with its corresponding job description and criteria,
selection devices and procedures, salary grade and department;

d. justifications and reasons why promotee was selected over others;

e. date and position of initial hire, with its corresponding salary grade and
department;

f. other positions held with employer, with their corresponding salary grade and
department;

g. supervisors and officials involved with promotion and the nature of their
involvement;

h. copy of personnel file and all documents related to the above promotions.

21. <u>Nalco's Objection to Interrogatory No. 5</u> - this interrogatory is vague,
overbroad, unduly burdensome and not likely to lead to the discovery of
admissible evidence. First, the time frame is overbroad. The plaintiff was
terminated effective July 23, 2008. As this case alleges discrimination in the
form of hostile work environment and wrongful termination, the plaintiffs
termination date marks the endpoint of any discovery related to the plaintiffs

causes of action. Second, this is not a failure to promote case. As such, information related to promotions is not relevant and not likely to lead to the discovery of admissible evidence. Third, the Court has already determined that the relevant scope of discovery in this case is limited to Nalco's Puerto Rico office, as such, inquiries regarding promotions of persons reporting to either Jose Serrano or Jorge Castillo, who did not work in the Puerto Rico office, are not relevant.

**22.** Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 5 –

Nalco's contention that plaintiffs termination date of July 23rd, 2008, marks the endpoint of any discovery related to the plaintiffs causes of action is unavailing.

Individual behavior before or after the relevant time frame set forth in a complaint, provides a reasonable basis on which to infer the state of mind, and the absence or presence of a discriminatory animus, of the named co-defendants listed in Interrogatory No. 5. Proximity of time and similarity of circumstances shared by the employees adversely affected by the same employer can be probative of an employers' intent to discriminate. See: *Whittaker v. Fayette County, 65 Fed. Appx. 387, 392 (3rd Cir., 2003)*. Further, relevant proximity of time has been found in cases removed between five (5) and ten (10) years from those acts complained of by a given Plaintiff. See: *Kozlowski v. Hampton School Board, 77 Fed. Appx. 133, 149 (4th Cir., 2003)*.

Nalco's contention that information related to promotions is not likely to lead to the discovery of admissible evidence is unavailing.
The information sought attempts to uncover other instances of discrimination, whether leveled against Plaintiff or other Nalco employees. Specifically, the information sought would reveal Nalco's history and trajectory of promoting or passing up for promotion certain

individuals, and whether or not the individuals who have been disproportionately affected are members of the protected groups to which Plaintiff belongs.

The Supreme Court has held that evidence of possible discrimination against other employees can be admissible, and that blanket rules excluding such testimony would be inappropriate. ***Sprint/United Management Co. v. Mendelsohn, 128 S.Ct. 1140, 1146-7 (2008)***. Even this circuit has found that varied background evidence of an employer's behavior may be critical for the assessment of whether said employer is more likely than not to have acted from an unlawful discriminatory motive. <u>See</u>: ***Brown v. Trustees of Boston University, 891 F.2d 337, 349 (1st Cir., 1989)***.

<u>Nalco's contention regarding the proper scope of discovery is patently false</u>.

A cursory reading of the re-drafted interrogatory suffices to ascertain that its scope is well within that defined and delimited by the Order as set forth in **ECF No. 57**.

23. <u>Interrogatory No. 12</u> - From January 2007 until the present day, and within the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: List all data bases which NALCO CHEMICAL, INC. maintains or has maintained, and which are in its possession, from which information can be obtained to determine, for individual employees or for applicants for employment, all or any part of the biographical data or conditions of employment listed below:
    a. age or date of birth;
    b. all seniority dates which may be used for purposes of progression, demotion, lay-off, recall;
    c. date of hire;
    d. date and reason for termination;

9

**e.** permanent or temporary job assignments, and the initial dates of such assignments;

**f.** rates of pay, and the initial dates of such rates;

**g.** dates of all layoffs, recalls, leaves of absence, or other extended absences from work;

**h.** relative standing or position, such as seniority;

**i.** dates of transfer between divisions, departments, groups, management structure, role based assignments, or any of their equivalents;

**j.** formal education, vocational training, specialized training or seminars, professional licenses or certifications;

**k.** prior to joining NALCO CHEMICAL, INC., previous work experience, training, or qualifications;

**l.** internal applications to job postings, requests or bids for promotion or transfer;

**m.** refusals to promote, transfer , or grant appointment to internal jobs;

**n.** gross earnings per year, payroll run or pay period.

**24.** <u>Nalco's Answer / Objection to Interrogatory No. 12</u> – Nalco maintains an SAP database for human resources in its corporate offices in Naperville, Illinois. It also maintains paper personnel files for its employees, including those in the Puerto Rico office.

**25.** <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 12</u>

Nalco does not even attempt to answer the interrogatory as presented. Such a failure would strongly suggest a violation of **Fed. R. Civ. P.26(g)**, if it weren't for Nalco's more extreme and egregious failure to sign or certify the responses tendered, as laid out in **¶ 10**, above. Such intentional concealment of evidence is tantamount to intentional spoliation of evidence, and exposes Nalco to discovery sanctions pursuant to **Fed. R. Civ. P.37**, as well as to responsibility for independent tort causes of action. <u>See</u>: ***Managed Care Solutions, Inc., v. Essent Healthcare, Inc.,*** 2010 WL 3368654 at *3 (S.D.Fla., Aug. 23, 2010); ***Pension Committee of University of Montreal Pension Plan v. Banc***

*of America*, 685 F.Supp.2d 456, 463 (S.D.N.Y., 2010); *Rimkus Consulting*

*Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 675 (S.D.Tex., 2010).

26. <u>Interrogatory No. 14</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: List names, titles, contact information, and job description duties for all individuals or organizations responsible for maintaining electronic processing systems, networks, servers, and data security measures.

27. <u>Nalco's Objection to Interrogatory No. 14</u> – Numerous individuals in the HR department are responsible for updating information in the HR database.

28. <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 14</u>

<u>See</u>: ¶ 25, above.

29. <u>Interrogatory No. 15</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: List all network servers and workstations, identifying individuals or organizations responsible for the ongoing operations, maintenance, expansion, archiving and upkeep of each.

30. <u>Nalco's Answer to Interrogatory No. 15</u> – See response to interrogatory no. 12.

31. <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 15</u>

<u>See</u>: ¶ 25, above.

32. <u>Interrogatory No. 16</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: List all applications and other software residing on each network in use, including but not limited to electronic mail and applications.

33. <u>Nalco's Objection to Interrogatory No. 16</u> – Objection - this interrogatory is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and beyond the scope of discovery in this case as set forth by the Court.

34. <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 16</u>

This Court has already ruled as to the proper scope delimitation of this

interrogatory, which has been re-drafted accordingly. <u>See</u>: *268 F.R.D.*

*31, at* 38.

35. <u>Interrogatory No. 17</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: List all user identification numbers or names necessary for accessing the electronic processing systems or software applications requested in this document.

36. <u>Nalco's Objection to Interrogatory No. 17</u> – Objection - this interrogatory is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and beyond the scope of discovery in this case as set forth by the Court.

37. <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 17</u>

This Court has already ruled as to the proper scope delimitation of this interrogatory, which has been re-drafted accordingly. <u>See</u>: ***268 F.R.D. 31, at\* 38.***

38. <u>Interrogatory No. 18</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: List all computer security policies in place at all times relevant to this complaint, including named individuals and contact information of those  responsible for supervising security, and granting each applications security settings and administrative rights.

39. <u>Nalco's Objection to Interrogatory No. 18</u> – Objection - this interrogatory is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and beyond the scope of discovery in this case as set forth by the Court. Additionally, this interrogatory is vague, as Nalco has numerous policies concerning the security of its computerized information and its IT infrastructure. Without waiving said objections, Paul Barry, Vice-President for Global Infrastructure, has overall responsibility for computer assets and security at Nalco.

40. <u>Plaintiffs' Reaction to Nalco's Objection to Interrogatory No. 18</u>

This Court has already ruled as to the proper scope delimitation of this interrogatory, which has been re-drafted accordingly. <u>See</u>: ***268 F.R.D. 31, at\* 38***. Furthermore, the Court ordered Nalco to disclose this information. ***<u>Id.</u>***.

In any event, the information sought should have been voluntary disclosed by Nalco as part of their initial disclosures. <u>See</u>: **1 Jay E.**

Grenig and William C. Gleisner, III et al., <u>eDiscovery & Digital</u>

<u>Evidence § 6:15; § 6:15; § 7:10</u> (October, 2010).

Also: <u>See</u>: ¶ **25**, above.

41. <u>Document Request No. 1</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: All files identifying the nature of NALCO CHEMICAL, INC.'s operations, physical locations, and organizational structure, including agents, principals, officers, officials, directors, and any others who have or might have any responsibility for the development of NALCO CHEMICAL, INC. policy.
42. <u>Nalco's Objection to Document Request No. 1</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court.

43. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 1</u>

<u>See</u>: ¶ **40**, above.

44. <u>Document Request No. 2</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: All organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents that show the identities, titles or responsibilities of NALCO CHEMICAL, INC.'s agents, principals, officers, officials, directors, and any others who have or might have influence or authority over personnel, recruitment, hiring, selection, training, disciplining, demoting, terminating or accommodating any disability.
45. <u>Nalco's Objection to Document Request No. 2</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court.

46. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 2</u>

<u>See</u>: ¶ **40**, above.

47. <u>Document Request No. 6</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: NALCO CHEMICAL, INC.'s published official – or unpublished and unofficial - job postings, offers

of employment, vacancies and promotional openings and opportunities from January 2007 to the present date.

48. <u>Nalco's Objection to Document Request No. 6</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court. This is not a failure to hire case, and therefore documents related to job postings, vacancies and promotional openings are not relevant.

49. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 6</u>

<u>See</u>: ¶ 22, above. Just as Nalco's contention that information related to promotions is not likely to lead to the discovery of admissible evidence is unavailing, so is its contention here, as to recruiting and hiring practices. Also, critical to the determination of a discriminatory animus is the identity and demographic characteristics of the individual who replaced Plaintiff or assumed his role, and whether such individual is within the same protected class as Plaintiff.

50. <u>Document Request No. 7</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: All records maintained by NALCO CHEMICAL, INC. as required by federal law, including, but not limited to:
a. Title VII;
b. Executive Order 11246;
c. Age Discrimination in Employment Act;
d. Immigration Reform and Control Act;
e. Fair Labor Standards Act;
f. Rehabilitation Act of 1973;
g. Americans With Disabilities Act;
h. Family and Medical Leave Act.

51. <u>Nalco's Answer to Document Request No. 7</u> – See attached.

52. <u>Plaintiffs' Reaction to Nalco's Answer to Document Request No. 7</u>

Nalco only submits a two page report, purported to be for the EEOC, where it only discloses gender and race statistics, and only for the

years 2007 and 2008. <u>See</u>: **¶ 25**, above, regarding Nalco's failure to properly answer.

53. <u>Document Request No. 8</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: For all NALCO CHEMICAL, INC. personnel and external contractors working or on assignment, temporary or permanent, at the same geographic regions or locations as plaintiff  from January 2004 until the present date, provide all records held or examined to establish employment authorization and identity, such as: United States passport; Certificate of United States Citizenship; Certificate of naturalization; Unexpired foreign passport with unexpired Form I-551; Form I-94 with unexpired employment authorization stamp; Resident alien card; Temporary resident card; Employment authorization card.

54. <u>Nalco's Objection to Document Request No. 8</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court. The visa status and/or employment authorization of Nalco employees has no relevance to the issues in this case.

55. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 8</u>

<u>Nalco's claim of burden is unavailing</u>.

The requested documents are those Nalco is legally required to have readily available, and therefore there can be no burden associated with their production.

<u>Nalco's claim of irrelevance is unavailing</u>.

Nationality based discrimination is a basis for the instant complaint. <u>See</u>: **ECF No. 1**, at **¶¶ 9, 20, 22, 29 – 33, 35, 41, 43, 58**. Further, it is well settled that even white-collar employers dedicated to the delivery of professional services, due to significant cost benefits, regularly prefer workers without proper work-permit status. <u>See</u>: ***The Employer Preference For The Subservient Worker And The Making Of The***

15

*Brown Collar Workplace*; Saucedo, Leticia. 67 Ohio St. L.J. 961 (2006).

Proof of a preference for unauthorized alien workers over qualified United States citizens may be evidence of discriminatory animus. See:

*Juan Antonio Martinez v. Ray's Bar-B-Que*, 9 OCAHO 1120, 2005 WL 4911366 (December 19th, 2005).

56. <u>Document Request No. 9</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: For all individuals for which a record is produced in response to the request above, and who work or have worked under an employment visa, provide also their corresponding Labor Certification package and Visa application package.

57. <u>Nalco's Objection to Document Request No. 9</u> – See response to Request no. 8.

58. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 9</u>

See: ¶ 55, above.

59. <u>Document Request No. 10</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: Any and all documents which NALCO CHEMICAL, INC. is required to file or has filed with any state or federal agency dealing with race, color, gender, age, national origin, or disability of its employees.

60. <u>Nalco's Answer to Document Request No. 10</u> – See response to Request no. 7.

61. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 10</u>

See: ¶ 52, above.

62. <u>Document Request No. 11</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5**, above: All studies, reports, or analysis done by internal staff, consultants, government agencies, or others related to any and all of NALCO CHEMICAL, INC.'s employment practices, policies, procedures, or employee statistical breakdown.

63. <u>Nalco's Objection to Document Request No. 11</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court. Without waiving said objection, none.

**64.** <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 11</u>

 <u>See</u>: ¶ **49**, above.

**65.** <u>Document Request No. 12</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: All documents which indicate the breakdown of NALCO CHEMICAL, INC.'s workforce by each of the following characteristics: date of hire, rate of pay, date of birth, gender, and national origin at the present time and during plaintiff's employment with NALCO CHEMICAL, INC..

**66.** <u>Nalco's Objection to Document Request No. 12</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court. Without waiving said objection, none.

**67.** <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 12</u>

 <u>See</u>: ¶ **49**, above.

**68.** <u>Document Request No. 13</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: All documents which indicate the breakdown of NALCO CHEMICAL, INC.'s applicant pool by each of the following characteristics: qualifications, date of application, position applied for and its rate of pay, date of birth, national origin and gender, and the final disposition of the application, at the present time and during plaintiff's employment with NALCO CHEMICAL, INC..

**69.** <u>Nalco's Objection to Document Request No. 13</u> – Objection - this request is overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence and is beyond the scope of discovery in this case as set forth by the Court. Further, this request is not relevant, as this is not a failure to hire case.

**70.** <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 13</u>

 <u>See</u>: ¶ **49**, above.

**71.** <u>Document Request No. 23</u> – From January 2007 until the present day, and in support of the organizations to which belong the same delimited and narrowly defined reference group as laid out for **Interrogatory 5,** above: All documents which constitute, comment on, or reflect the facts and circumstances of any comparison made between the training, experience, abilities, job duties and job performance of plaintiff, and other similarly situated NALCO CHEMICAL, INC. employees                or applicants.

72. <u>Nalco's Answer to Document Request No. 23</u> — Any such documents are contained within the plaintiff's personnel file or the personnel file of any such employee that has been the subject of such a comparison, if any such comparison has been made. The plaintiff's personnel file has previously been produced.

73. <u>Plaintiffs' Reaction to Nalco's Objection to Document Request No. 23</u>

  The documents sought have not been disclosed by Nalco.

74. <u>Second Document Request No. 1</u> — From January 1st, 2007, until the present date, AND limited to information residing in Nalco's Puerto Rico databases located in Naperville, Illinois: produce all versions of all Lotus Notes (or any other format of email store containing message units, including, but not limited to, EDB, OST, PST, and NSF)container files, mail stores, mailboxes and calendars, from which the following named individuals initiated, originated, sent, received or performed any electronic messages or transactions:
  a. José Serrano;
  b. Jorge Castillo;
  c. Ashok Paul Duggal;
  d. Jorge Ortiz-Soldevilla;
  e. Stephanie Glashagel;
  f. Alenda Young;
  g. Deborah S Davis;
  h. Dennis J Lopez;
  i. Miriam Vera Vega;
  j. Antonio Chapina;
  k. Pedro Lara;
  l. Angel Urena;
  m. Rudy Rosales;
  n. Ruddy A Guerrero;
  o. Crispín Hernandez;
  p. Manuel Rivera-Ramos.

75. <u>Nalco's Objection to Second Document Request No. 1</u> — Objection - this request is overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence. First, the time frame is overbroad. The plaintiff was terminated effective July 23, 2008. As this case claims discrimination in the form of hostile work environment and wrongful termination, the plaintiff's termination date marks the endpoint of any discovery related to the plaintiff's causes of action. Second, the request essentially seeks every e-mail message sent or received by 16 different individuals, without regard for whether such e-mails have anything to do with the plaintiff's job performance or work environment. Such a request is overbroad and beyond the scope of discovery.

Without waiving said objections, Nalco's e-mail retention policy is that all messages are deleted from its servers after 90 days. As such, e-mails from July 23, 2008 or earlier would no longer be available on Nalco's e-mail servers.

**76.** Plaintiffs' Reaction to Nalco's Objection to Second Document Request No. 1

Nalco's definition of the relevant time period is unavailing –
The relevant time period defined by Plaintiffs as one (1) year before the adverse employment action, and eighteen (18) months after said employment action is reasonably delimited, as a basis in which to determine a discriminatory animus, as to how plaintiff Aponte was treated in relation with similarly situated individuals outside of his protected class. Circumstantial evidence supporting an inference of discriminatory animus can be found in the communications between the named individuals, by how they subsequently refer to an already terminated employee such as Aponte, and by how they refer to other similarly situated individuals afterwards.

Nalco's characterization that request is overbroad is purposely misleading –
Nalco's electronic native format for e-mail communications is the Lotus Notes' *.NSF* file format. *.NSF* files internally are complicated databases stored and retrievable at the computer operating system level (such as a with the "Windows Explorer" file and folder viewing capability) as a single file, and represent the smallest unit of storage and retrieval containers for this native electronic file format. See: ***The Sedona Conference Glossary for E-Discovery and Digital Information Management (Third Edition, September 2010), at *36***. (Available at:

19

http://www.thesedonaconference.org, last visited on October 22nd, at 8:05 PM.). *.NSF* implements the most basic, universal, low-level database operations — such as, creating a database, creating a note, adding an item to a note, and so on. <u>See</u>: ***Inside Notes: The Architecture of Notes and the Domino server*** (**Exhibit 9,** <u>**Appendix at 62**</u>; <u>Available at</u>: http://www-12.lotus.com, last visited on October 22nd, at 8:19 PM.).

In effect, *.NSF* files are mailbox archives which are capable of storing a portable snapshot of the individuals user's mailbox, which is composed of all individual e-mail communications, sent or received by each corresponding user. <u>See</u>: **1 Jay E. Grenig and William C. Gleisner, III et al., <u>eDiscovery & Digital Evidence § 15:8</u> (October, 2010)**. As a single file at the operating system level, they are capable of being accessed and copied through just a couple of keystrokes. <u>See</u>: ***Covad Communications Co. v. Revonet, Inc., 254 F.R.D. 147, 150 (D.D.C., 2008)***. *.NSF* is designed based on standard database technology, from which individual discrete e-mail messages cannot be retrieved, without them losing all their context, meaning and referential integrity. <u>See</u>: ***Inside Notes*** (**Exhibit 9,** <u>**Appendix at 63-66**</u>), *supra*. As a database, *.NSF* is a structured collection of records or information organized according to a framework called a *"data model"* or *"schema"*, which serves as the sole repository of the disparate records or informational objects which compose the discrete e-mail messages. E-mail messages, therefore, do not exist as discreet, individual informational objects in *.NSF* as would

appear to the naked-eye of an end-user, but rather as individual informational database objects, assembled *"on the fly"*, each time they are accessed or viewed by a human operator. <u>See</u>: *__Glossary__, at * 13, supra*; *__E-DISCOVERY: RIGHT...FROM THE START__, ALI-ABA Course of Study July 23 - 25, 2009 (SR010 ALI-ABA 193 at * 215-216).*

Further, **Fed. R. Civ. P. 34(b)(2)(E)(i)** requires Nalco as the responding party to produce the documents as they are kept in the usual course of business, or in *.NSF* format.

As to the sixteen (16) named mailbox container custodians, Plaintiffs have adequately documented their relevance to claims and defenses in the instant case. <u>See</u>: **ECF No. 51, at ¶15**. Regarding the number of custodians named in the request, said amount is reasonably and sufficiently narrowly defined. Plaintiffs submit that courts have routinely compelled production of searches performed against mailboxes well in excess of the sixteen (16) sought here. For instance, in: *__Barrera v. Boughton__, 2010 WL 3926070 at * 2 (D. Conn., September 30th, 2010),* forty (40) mailboxes; *__Harkabi v. SanDisk Corp.__, 2010 WL 3377338 at *3 (S.D.N.Y., August 23rd, 2010),* nineteen (19) mailboxes; *__Helmert v. Butterball, LLC__, 2010 WL 2179180 at * 1-2 (E.D.Ark., July 22nd , 2010),* thirty-three (33) mailboxes; Mt. *__Hawley Ins. Co. v. Felman Production, Inc.__, 2010 WL 1990555 at * 11 (S.D.W.Va., May 18th, 2010),* twenty-nine (29) mailboxes.

Nalco further claims that the e-mail communications sought are no longer available, due to its 90-day retention policy, whereby messages are permanently deleted from its servers. Firstly, such a pretension has been held to be a display of disingenuous *"chutzpa",* bordering on bad faith, as defined in ***Disability Rights Council of Greater Washington v. Washington Metropolitan Transit, 242 F.R.D. 139, 147 (D.D.C., 2007)***: '*that quality enshrined in a man who, having killed his mother and his father, throws himself on the mercy of the court because he is an orphan.'*. Secondly, it is disingenuous as to a Lotus Notes environment, which has advanced backup and replication capabilities to guard against the accidental or deliberate destruction of data. See: ***Quinby v. WestLB AG, 2005 WL 3453908 at * 2 (S.D.N.Y., 2005)***; ***Inside Notes*** (**Exhibit 9, Appendix at 67-76**), *supra.*

77. <u>Second Document Request No. 2</u> – For each Lotus Notes or equivalent container file produced, identify:
   **a.** Custodian, or named individual and organization, having control of all underlying network, database management system, computer or specific electronic files associated to the container produced;
   **b.** Lotus Notes or Lotus Domino Server or equivalent hosting the container produced, including the geographic location of the Server, and that of any other redundant or back-up system utilized to support the on-going operations of Nalco Chemical, Inc..
78. <u>Nalco's Objection to Second Document Request No. 2</u> – See objection to Request No. 1.

79. <u>Plaintiffs' Reaction to Nalco's Objection to Second Document Request No. 2</u>

The above request goes to establish the maintenance a of a proper audit trail and chain of custody with which to establish evidence

authenticity, which has been recognized of even more vital importance when it pertains to evidence in electronic format. See: *In re Vee Vinhnee, 336 B.R. 437 (9th Cir., BAP Cal., 2005)*; *Pueblo of Laguna v. U.S., 60 Fed.Cl. 133, 141 (Fed.Cl., 2004)*; 1 Jay E. Grenig and William C. Gleisner, III et al., eDiscovery & Digital Evidence § 8:10; § 15:4; § 15:5 (October, 2010).

80. Second Document Request No. 3 – For each Lotus Notes or equivalent container file produced, include:
   a. all external electronic mail address or Internet email address utilized, regardless of the underlying email protocol and address format, fully identifying the user and domain names, together with any and all "aliases" used internally by Nalco Chemical, Inc.;
   b. all electronic communications, transactions, events, messages, that have been sent, stored, processed, received, or accessed through each corresponding container file;
   c. the above production must contain all items as described, regardless of whether they have been deleted or not;
   d. the above production must contain for each discrete, single item produced, all original metadata, including, but not limited to: identification of creating application; author and originator, all recipients, including blind copy addressees; delivered, received, read dates; etc.

81. Nalco's Objection to Second Document Request No. 3 – See objection to Request No. 1.

82. Plaintiffs' Reaction to Nalco's Objection to Second Document Request No. 3

See: ¶ 79, above.

83. Second Document Request No. 4 – For each Lotus Notes or equivalent container file produced, identify:
   a. individual and organization name, date, time and physical location where data collection occurred;
   b. all chain of custody forms used in the collection process, together with a statement supporting whether or not the forms are considered by Nalco Chemical, Inc. reliable enough to become business records;

    **c.** all physical and automated records produced by the collection process, including chronological and logistical information regarding the source of the data;

    **d.** all media utilized in the collection process, attached computer where media hardware was mounted, and for each computer identify: location, drive identifiers, type (laptop, desktop, notebook, server), manufacturer, model, serial number, asset/inventory tag, name of backup file , network drive copied to;

    **e.** all computer servers utilized in the collection process, and for each computer server identify: machine name, domain name, operating system version and service pack, backup software and ver ion, location, drive identifiers, manufacturer, model, serial number, asset/inventory tag;

    **f.** for each computer and location identified in **4.d** and **4.e**, above, identify all logical and physical access controls, including, but not limited to: presence of manned security guard, key-card, access codes or passwords, biometrics, etc..

**84.** Nalco's Objection to Second Document Request No. 4 – See objection to Request No. 1.

**85.** Plaintiffs' Reaction to Nalco's Objection to Second Document Request No. 4

See: ¶ 79, above.

**86.** Second Document Request No. 5 – All of the above production must be produced in the original, native electronic file format. All lists, identifiers, statements and explanatory material compiled and prepared to support the above production may be produced in Acrobat PDF format.

**87.** Nalco's Objection to Second Document Request No. 5 – See objection to Request No. 1.

**88.** Plaintiffs' Reaction to Nalco's Objection to Second Document Request No. 5

Production of records sought in their original, native electronic file format is required by **Fed. R. Civ. P. 34**. Nalco's production in a downgraded format, emulating a printed-image format, is not a reasonably usable format available to them, and is therefore an unacceptable format of production for Plaintiffs. See: _**Williams v. Sprint/United Mgmt. Co.**_,

*230 F.R.D. 640, 652 (D. Kan., 2005)*; *Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc., 248 F.R.D. 556, 559 (N.D. Ill., 2008)*.

## V. ESI Inquiries

89. The Court ordered Nalco to provide to Plaintiffs, for each document disclosed or produced, soft-copy in its native format in order and original metadata. See: *Aponte-Navedo v. Nalco Chemical Co. 268 F.R.D. 31, 39 (D.Puerto Rico, 2010)*. To this date, Nalco has not produced any further documents to Plaintiffs, and therefore continues to be disobeying said order.

## VI. Corporate Representative Deposition

90. The Court ordered the parties to agree to the time and place where the deposition would be taken, and further ordered Nalco to provide Plaintiffs the curriculum vitae of Nalco's designated corporate representative within 14 days upon the entry of said order on May 20th, 2010. See: Id., at * 42.

91. The Parties tentatively scheduled the above deposition for July 23rd, 2010. See: ECF No. 59, at ¶ 7. However, on June 29th, 2010, Nalco flatly refused to provide the corporate representatives curriculum vitae, based, *inter alia,* in that the rules do not provide for such a requirement (See: **Exhibit 10, Appendix at 77**).

92. To this date, Nalco has not produced the corporate representative's *curriculum vitae* to Plaintiffs, and therefore continues to be disobeying said order.

VII. **Leave to Propound Additional Discovery Requests / Search Protocol**

93. Nalco's refusal to confer in good faith and work cooperatively with Plaintiffs in all matters regarding discovery, has hindered Plaintiffs' efforts to secure meaningful discoverable information with which the parties could have engaged in meaningful settlement negotiations, or be better prepared to litigate the instant case in its merits. At the outset, Plaintiffs sought to gain an understanding of Nalco's Information Technology landscape, in order to properly limit the scope of their discovery requests, to no avail.

94. Consequently, Plaintiffs seek leave of court to expand slightly its discovery requests to include other types of documents not previously sought, and to propose a discovery protocol with which all pending discovery requests can be met. Notwithstanding the above, the general scope of discovery remains the same, and continues to be limited to: Nalco databases supporting the Puerto Rico operation, whether said databases reside in Puerto Rico, or in Naperville, Illinois.

95. Plaintiffs' discovery protocol and plan is included herewithin as **Appendix II.**

### VIII. Conclusion and Relief Sought

96. Order Nalco to answer in full all discovery request served on them on May 31st, 2010;

97. Order Nalco to comply in full with the Court's Order, as set forth in **ECF No. 57**, and as laid out above in **¶¶ 89** and **92**.

98. Order Nalco to pay for all reasonable expenses incurred by Plaintiffs to take the **Fed. R. Civ. P.30(b)(6)** corporate representative deposition, including travel and lodging for all attorneys appearing for Plaintiffs in Nalco's headquarters in Naperville, Illinois;

99. Order Nalco to pay all reasonable expenses and attorney's fees, in relation to drafting the instant motion;

100. Order Nalco to refrain from filing any opposition to the instant motion, without first attempting to confer in good faith with Plaintiffs in order to reach an agreement to further define the elements of the protocol proposed in **Appendix II,** including but not limited to the definition of search and retrieval key-words, and any discovery phased approach recognized under **Fed. R. Civ. P.26(b)(2)(B),** and under the guidelines of *The Electronic Discovery Reference Model*;

101. Hold in abeyance the consideration of any dispositive motions, until thirty (30) days after Nalco has complied with the discovery here sought.

**WHEREBY,** for all of the above, Plaintiffs pray this Honorable Court:

Take **NOTICE** of all of the above;

**GRANT** the instant motion in all its respects.

**Respectfully submitted in New York, New York, this 25th day of October, 2010.**

<u>S/William Meléndez-Menéndez</u>
William Meléndez-Menéndez
USDC-PR No. 226902

Cuadros & Cuadros
410 Park Ave. Suite # 1223, New York, New York 10022
We.Melendez@e-Lex.us
(718)725-7387

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on October 25th, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing all parties of interest.

**In New York, New York, this 25th day of October, 2010.**

**<u>S/William Meléndez-Menéndez</u>**
William Meléndez-Menéndez
USDC-PR No. 226902
Cuadros & Cuadros
410 Park Ave. Suite # 1223, New York, New York 10022
We.Melendez@e-Lex.us
(718)725-7387

**28**
