UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DONATO APONTE NAVEDO, *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NALCO CHEMICAL COMPANY, *et. al.*, <br><br> Defendants. | CIVIL NO. 09-01232 (JA) <br><br><br> TITLE VII VIOLATIONS, AGE, GENDER AND NATIONAL ORIGIN DISCRIMINATION, AMERICANS WITH DISABILITIES ACT AND TORTS <br><br> PLAINTIFFS DEMAND TRIAL BY JURY |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' SECOND OMNIBUS MOTION FOR DISCOVERY ORDERS**

Defendant Nalco Chemical Company ("Nalco" or "Defendant"), by and through its attorneys, and in response to Plaintiff's Second Omnibus Motion for Discovery Orders respectfully states, alleges and prays as follows:

**INTRODUCTION**

On October 25, 2010, Plaintiffs filed a Second Omnibus Motion for Discovery Orders (Docket No. 77). Essentially, Plaintiffs complain that Defendants' responses to Plaintiffs' discovery requests, which Plaintiffs purportedly redrafted in compliance with this Court's Opinion and Order of May 20, 2010 (Docket No. 57), remain deficient and incomplete. Despite the length and apparent complexity of Plaintiffs' motion, the facts at issue in this single-plaintiff case are simple and straightforward. Plaintiff Donato Aponte, a former

employee of Nalco's Puerto Rico office, claims he suffered a hostile work environment case based on his age, national origin, alleged disability and his alleged failure to comport to male stereotypes. Plaintiff further claims he was discriminatorily discharged on these same bases. Plaintiff was employed in Puerto Rico throughout his employment, claims he was treated differently than other employees in his immediate work unit in Puerto Rico, and the decision to discharge Aponte was made by his immediate supervisor in Puerto Rico.

Accordingly, and in response to a previous discovery dispute, the Court limited the scope of Plaintiffs' electronic discovery requests in this case to "Nalco's Puerto Rico databases in Naperville, Illinois." (*See* Docket No. 57). Following this Court's order, Plaintiffs ostensibly redrafted their discovery requests. Notwithstanding, Plaintiffs redrafted discovery requests remain overbroad, unduly burdensome and continue to seek information that is entirely irrelevant to the claims at issue in this case. For these reasons, Nalco again objected to many of Plaintiffs' requests while answering others.

In addition, and since the Court's order, Nalco deposed Aponte, who has testified at length about his claims in this lawsuit. Plaintiffs' own deposition testimony renders many of Plaintiffs' discovery requests immaterial and irrelevant since it defines and limits the relevant scope of Plaintiffs' claims in this lawsuit. For these reasons, and because Nalco has fully complied with its discovery obligations, Plaintiffs' motion must be denied in its entirety.

### I. Plaintiffs' Motion Should be Stricken Because It Does Not Comply with Local Rule 7(d).

At the outset, Plaintiffs continue their pattern of non-compliance with this Court's rules. Specifically, Local Rule 7(d) specifically limits the length of non-dispositive motions to 15 pages, unless prior leave of Court is obtained. It must be noted that Plaintiffs' motion is 28 pages long. Plaintiffs did not obtain prior leave of Court to file such a lengthy motion. Further, Plaintiffs' motion even exceeds the page limit for dispositive motions. Accordingly, the Court should strike Plaintiffs' motion for failure to comply with Local Rule 7(d).

### II. Plaintiffs Waived Their Untimely Objections to Nalco's Discovery Responses.

As noted in Plaintiffs' motion, Nalco served its "Objections and Responses to Plaintiff's First Set of Interrogatories and Request for Document Production - Redrafted as Set Forth in the Order at Docket No. 57" on July 15, 2010. Defendants did not receive a response from Plaintiffs until September 7, 2010, fifty-five (55) days later. During that time, on July 21, 2010, the parties attended a conference before the Court to discuss scheduling and discovery issues. At no time during the conference did Plaintiffs raise any objection to Nalco's discovery responses. Following the conference, the parties were in regular communications to discuss the scheduling of depositions and other matters and Plaintiffs did not once raise any concern with Nalco's discovery responses. In light of the total absence of any objection to its discovery responses, Nalco considered the issues concerning

written discovery to have been resolved.

Plaintiffs' belated September 7th communication outlining its "reaction" or objections to Nalco's responses came as a surprise. The Court should not countenance Plaintiffs' untimely approach to objecting to Defendants' discovery responses and any objections to those responses should be deemed waived.

### III. Plaintiff's Motion Should be Stricken because Plaintiffs Failed to Meet and Confer with Nalco Prior to Filing this Motion.

As stated above, Nalco was not even aware that a discovery dispute existed until September 7th, since that was the first time that the Plaintiffs raised any objection to the discovery responses Nalco served on July 15th. The next day, Plaintiffs stated that they were available for a Local Rule 26 conference on September 10th. However, the undersigned was involved in a trial and was not available on that date. Plaintiffs next suggested September 16th or 17th for the conference; again, however the undersigned was not available and in addition, the conference needed to include Nalco's counsel in Chicago, who had only recently entered their appearance. Nalco then offered to hold the conference via telephone on September 21st but Plaintiffs did not respond in time to hold a conference that day. Finally the parties agreed to hold a meet and confer conference on September 24th between 4 and 6 PM. That same day, after the parties' conference was scheduled, counsel for Plaintiffs unilaterally and improperly conditioned the conference upon the requirement that Nalco submit a written response to Plaintiffs' objections in advance of the conference.

Defendants are unaware of any provision in the Federal or Local Rules of Procedure that requires that parties exchange written responses or reactions (beyond Defendant's objections and responses to discovery) prior to a meet and confer conference. Indeed, the purpose of the conference is precisely for the parties to discuss their positions regarding discovery disputes. For these reasons, Nalco properly declined to submit any additional written response to Plaintiffs' "reaction" to Nalco's objections in advance of the conference. At that point, and despite Nalco's continued willingness and availability to discuss Plaintiffs' concerns regarding discovery, Plaintiffs unilaterally cancelled the conference. *See* Exhibit A (E-mail chain regarding Local Rule 26 conference).

Plaintiff's unilateral and last minute cancellation of a conference convened precisely to address this discovery dispute plainly demonstrates that Plaintiffs did not fulfill their duty to confer prior to seeking Court intervention and bringing this discovery motion. Plaintiff's conclusory statement that they have "been in good faith compliance with their obligation to cooperate" is unavailing given their placement of unilateral preconditions on any conference and their ultimate refusal to discuss this discovery dispute in good faith prior to bringing their motion. Accordingly, and for this reason alone, Plaintiffs' motion should be stricken.

These same facts also belie Plaintiffs' assertion that Nalco has been "non-responsive" regarding this discovery dispute. Nothing could be further from the truth. Nalco attempted

-5-

repeatedly to schedule the conference at a mutually convenient time for all parties and remained willing to hold a conference for that purpose. It was Plaintiffs who imposed unilateral, unnecessary and unfounded conditions on the conference and who ultimately prevented it from being held.

### IV. Plaintiffs Discovery Requests Remain Overbroad and Irrelevant.

Nalco does not believe it is necessary to refute, point by point, every issue raised by Plaintiffs in their motion. Suffice it to say that there are two main reasons why the bulk of Plaintiff's discovery request, even when "redrafted", remain overbroad, unduly burdensome. irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this matter.

First, this Court already ruled what the proper scope of discovery should be in this case. Specifically, the Court ruled that:

> Discovery in disparate treatment cases has been limited to employees within certain work units *and who have suffered similar treatment as the plaintiff*. Thus, open ended reviews of corporate records are not allowed. *In order to avoid overly broad and unduly burdensome requests, discovery may be limited both geographically and temporally*.
>
> Plaintiffs' claims in this case were brought pursuant to 29 U.S.C. § 626, Section 7(b) of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, 42 U.S.C. § 12101, Americans with Disabilities Act "("ADA"), 42 U.S.C. § 2000, and Title VII of the Civil Rights Act of 1964 ("Title VII"). *However, nowhere is it alleged in the complaint that the discrimination claims are based on failure to promote.* Furthermore, if Mr. Aponte was terminated from his employment in Puerto Rico, discovery cannot go beyond his work unit without showing a valid need to do so.

> Plaintiffs claim that the information requested, which primarily consists of personnel files, is essential in order for them to prove their claims. This conclusory assertion is not enough to entitle plaintiffs to be handed entire files of employees, much less conduct discovery beyond Mr. Aponte's work unit. ***In short, plaintiffs fail to make a particularized showing that the information requested is in any way relevant to his claims***.
>
> …
>
> Accordingly, Plaintiff's discovery requests ***will be limited to Nalco's Puerto Rico databases located in Naperville, Illinois***.

*See* Docket No. 57 at pg. 13-15 (internal citations omitted)(emphasis added). Despite the Court's ruling, Plaintiffs' redrafted discovery requests continue to seek irrelevant information. The information sought by Plaintiff is precisely an "open ended review of corporate records" far "beyond Mr. Aponte's work unit", which this Court has already held is beyond the proper scope of discovery in this matter.

The following is just a sampling of the reasons why Plaintiffs discovery requests remain overbroad and irrelevant:

- **Interrogatory No. 5**: To summarize, Plaintiffs seek information concerning any Nalco employees who reported to José Serrano, Jorge Castillo or Ashok Duggal. First, any information regarding employees located outside of Puerto Rico is beyond the scope of discovery in this case. Moreover, as this Court has already explicitly recognized, this is not a failure to promote case. Whether any specific employee was promoted is simply not relevant to Plaintiffs' allegations in this case. Neither in his Complaint nor in his deposition, did Plaintiff claim he was passed over for promotion. Indeed, Plaintiff was asked at the conclusion of his deposition whether he had testified as to every fact that supports the allegations in his Complaint and he stated he had. For these reasons, this interrogatory seeks information that this Court has already expressly ruled is irrelevant to this case. To make matters worse, the vast majority of the remainder of Plaintiffs' interrogatories and requests are premised on "*the same delimited and narrowly defined reference group as laid for Interrogatory 5.*" As shown, this 'reference group' is neither 'delimited' nor 'narrowly defined' and is entirely irrelevant to the issues at stake in this litigation as it seeks

information concerning a nonexistent failure to promote claim.

- **Interrogatory No. 12**: Plaintiffs requested that Nalco list all databases which Nalco "maintains or has maintained, and which are in its possession, from which information can be obtained to determine, for individual employees or for applicants for employment" various biographical data such as age, seniority date, date of hire, date and reason for termination, job assignments etc. Nalco responded that it maintains an SAP database for human resources in its corporate offices in Naperville, Illinois and that it also maintains paper personnel files for its employees, including those in the Puerto Rico office. Nalco's response precisely answered the question asked by the Plaintiffs: What databases does Nalco maintain with the requested information? Despite the clarity and simplicity of this answer, Plaintiffs claim that "Nalco does not even attempt to answer the interrogatory as presented" and suggest that Nalco is intentionally concealing evidence. A mere review of Plaintiff' interrogatory and Nalco's response thereto shows that Nalco fully responded to Plaintiffs' interrogatory and that Plaintiffs did not actually seek the employee information contained in Nalco's databases.

- **Interrogatory Nos. 14, 15, 16, 17 and 18**: These interrogatories are in many respects unintelligible, but to the extent Defendant understands them, appear to request information concerning the same individuals defined in Interrogatory No. 5 (i.e. individuals promoted). As explained in response to Interrogatory no 5 above, this case has nothing to do with promotions and as such, these interrogatories are overbroad and irrelevant.

- **Document Request Nos. 1, 2**: Plaintiffs seek "all files" identifying the nature of Nalco's operations, organizational structure, officers, directors etc. and " all organizational charts, personnel charts, descriptions, list , tables, flow charts" etc. "in support of the organizations to which belong the same delimited and narrowly defined reference group as laid for Interrogatory 5" (i.e. individuals promoted). First, it is unclear what Plaintiff is requesting. Secondly, to the extent Plaintiff is referring to all files having to do with the individuals who have been promoted since 2007 or who are located outside of Puerto Rico, this request is clearly beyond the scope of discovery in this case.

- **Document Request No. 6**: Plaintiffs seek information on all "job postings, offers of employment" etc. Defendant objected because "this is not a failure to hire case and therefore documents related to job postings, vacancies or promotional openings are not relevant." In their motion, Plaintiffs argue that information as to recruiting and hiring practices is critical to the determination "of the identity and demographic characteristics

of the individual who replaced Plaintiff or assumed his role." Yet, that is not what Plaintiff is requesting. Moreover, Plaintiff has already testified about the identity, demographic characteristics and protected classes of the individuals who allegedly replaced him in his position (*See* Section V below).

- **Document Request Nos. 8 and 9**: Plaintiff seeks the citizenship or visa status for all of Nalco's employees and contractors and all records related thereto. Significantly, Plaintiff does not claim discrimination due to citizenship, he claims discrimination based on his national origin (i.e. where he was born). Clearly, information and records concerning the citizenship status, visas or employment authorizations of numerous Nalco employees (again, defined with reference to the employees who were promoted as per Interrogatory No. 5) has absolutely no relevance to this case. In addition, Plaintiff testified as to the individuals who he claims were similarly situated to him. Accordingly, any discovery concerning individuals other that the individuals about whom Plaintiff testified, is beyond the scope of Plaintiffs' claim in this lawsuit. (*See* Section V below).

- **Document Request Nos. 12 and 13**: These requests seek documents breaking down Nalco's workforce and applicant pool by date of hire, rate of pay, gender and national origin. Again, these requests are irrelevant and not likely to lead to the discovery of admissible evidence as this is not a failure to hire case.

- **Second Document Request Nos. 1- 5**: Plaintiffs ask for all e-mail messages sent or received between January 1, 2007 until the present by 16 Nalco employees (some of whom are based outside Puerto Rico), and numerous other information relating to this same request. (*See* Docket No. 77 at pp. 18 - 24). This request does not materially differ from Plaintiffs' original request for this information and Nalco's objection remains the same. Plaintiffs' requests for every e-mail sent or received by these individuals in a four-year period without regard as to whether those e-mails have anything to do with the Plaintiff, his termination or his working environment, is indisputably overbroad, unduly burdensome and seeks irrelevant information. Plaintiffs' argument boils down to arguing that since these e-mails are electronically stored and are (in their opinion) easily retrieved, they do not need to show that they are otherwise relevant to this case. However, the ease or burden of production of documents or e-mails or other electronic files does not alter the scope of discovery. Fed.R.Civ.P. 26(b) permits parties to "obtain discovery regarding any non privileged matter that is relevant to a party's claim or defense." Plaintiffs' requests for every e-mail sent or received by these individuals, without regard for whether those e-mails even mention Plaintiffs or have anything to do with his allegations, is simply beyond the scope of discovery as provided for in the Federal Rules. Moreover, Nalco has already

informed Plaintiffs that, in accordance with Nalco's e-mail retention policy, all messages are deleted from their servers after 90 days. As such, there are currently no e-mails in Nalco's possession or control that are responsive to the Plaintiffs' request.

### V. Plaintiffs' Deposition Testimony Further Limits the Scope of Discovery In This Lawsuit.

As mentioned above, Plaintiff's own deposition testimony has significantly narrowed the legal and factual issues in this litigation and undercuts the purported relevance or necessity for many of Plaintiffs' discovery requests. During their depositions, taken on October 12-13, 2010, Plaintiffs testified as to all facts and circumstances which they believe support Aponte's wrongful termination, discrimination and hostile work environment claims.

Aponte testified that the only person who created the alleged hostile work environment he experienced was Jorge Castillo. Clearly, Plaintiffs do not need the excessive discovery they have sought to assert who created an allegedly hostile environment. Plaintiffs are fully aware of who allegedly created the purportedly hostile work environment and they testified as to the specific conversations and actions that contributed to their belief that Castillo's behavior was inappropriate or offensive.

With regard to the wrongful termination claim, Aponte also testified that he was replaced by Jaime Suarez. *See* Exhibit B (Aponte Dep. at pp. 188 - 193). Obviously, Plaintiffs are fully aware of who Aponte's replacement was. Accordingly, Plaintiffs do not need access to Nalco's myriad of databases or electronic data, to identify Suarez as Plaintiff's

replacement. To the extent Plaintiffs need additional information or documentation regarding Suarez, they can specifically ask for that. Yet, that is not what Plaintiffs have requested.

During his deposition, Aponte also identified the Nalco employees whom he alleges were treated more favorably than he was. Specifically, Aponte identified Edward Bray and Francisco Casanova as potentially similarly situated employees. *See* Exhibit B (Aponte Dep. at pp. 198-207). Although Aponte's testimony did not suggest that either of these individuals received preferential treatment due to any protected employment class, the fact remains that Plaintiffs need not engage in a fishing expedition of electronic data to discover the circumstances surrounding these individuals' employment or to determine whether these specific individuals received any preferential treatment when compared to Plaintiff. Again, to the extent Plaintiffs need additional information or documentation regarding Bray and/or Casanova, they should tailor and limit their requests accordingly.

In sum, Aponte's deposition testimony belies the argument that Plaintiffs remotely require or should be entitled to obtain the overly broad, irrelevant discovery they are seeking in order to prove their case. To the contrary, Plaintiffs' deposition testimony supports what Nalco has been saying since the inception of this case - that **this is a simple case of a man who worked in Nalco's Puerto Rico office for a period of 8 years and now claims to have been harassed, discriminatorily terminated and somehow treated**

**differently than other employees in his immediate work unit in Puerto Rico**. Plaintiffs' discovery should be focused on the existence or non-existence of the alleged hostile working environment and the bases for Aponte's termination. Nothing else is relevant. The only rational conclusion to be drawn from the Plaintiffs' insistence on their overbroad fishing expedition is that they hope to drive up Nalco's transactional costs in defending this case in order to achieve a favorable settlement since this other data is not admissible in this case to prove any fact at issue. This Court should not reward those unwarranted litigation tactics.

### VI.  Plaintiffs Waived Their Right To Take a Rule 30(b)(6) Deposition of Nalco.

At Plaintiffs' request, the parties made arrangements for Nalco to produce a Rule 30(b)(6) designee on IT issues in the Chicago area. The parties exchanged numerous communications in an attempt to schedule this deposition. After a tentative date of September 20, 2010 for the deposition had to be cancelled, Nalco asked that Plaintiffs provide alternate dates for the deposition. By email dated September 1, 2010, Nalco followed up on its request that Plaintiffs suggest alternate dates. *See* Exhibit C (E-mail of September 1, 2010). On September 3, 2010, Plaintiffs informed Nalco that they would not take the Rule 30(b)(6) deposition. *See* Exhibit D (E-mail of September 3, 2010). At no time since that date have Plaintiffs provided alternate dates for the deposition or otherwise suggested that they have any interest in taking this deposition. Accordingly, Plaintiffs

waived their right to a Rule 30(b)(6) deposition.[1]

**WHEREFORE**, Nalco respectfully requests that Plaintiffs' Second Omnibus Motion for Discovery Orders be denied in its entirety.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of November 2010.

**WE HEREBY CERTIFY**: That on this same date we electronically filed this motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

> s/ James W. McCartney
> James W. McCartney
> USDC-PR No. 211511
> **CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**
> PO Box 364966
> San Juan, PR 00936-4966
> Tel. (787) 767-9625
> Fax  (787) 764-4430/622-2238
> jmccartney@cnrd.com
>
> Mark Lies III (admitted *pro hac vice*)
> Natascha B. Riesco-Farinas (USDC-PR No. 222112)
> **SEYFARTH SHAW LLP**
> 131 S. Dearborn Street, Suite 2400
> Chicago, IL  60603
> (312) 460-5000

---

[1] Plaintiffs continue to complain that Nalco did not provide them with a CV for the witness previously designated as the Rule 30(b)(6) witness. First, nothing in Rule 30(b)(6) requires that the witness (who is a fact witness and not an expert) provide a CV in advance of the deposition. Second, the individual designated by Nalco at that time did not have a CV. There is surely nothing in the Federal or Local Rules that requires Nalco to produce a document that does not exist. Finally, given Plaintiffs' statement that the Rule 30(b)(6) deposition would not be taken, Nalco believed this issue to be moot.