**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DONATO APONTE NAVEDO, BELKIS ISABEL SANTIAGO MARTÍNEZ, AND THEIR COMMUNITY OF ASSETS AND GAINS,<br><br>          Plaintiffs,<br><br>     v.<br><br>NALCO CHEMICAL COMPANY, JOSÉ SERRANO AND HIS WIFE JANE DOE (1), AND THEIR COMMUNITY OF ASSETS AND GAINS, JORGE CASTILLO AND HIS WIFE JANE DOE (2), AND THEIR COMMUNITY OF ASSETS AND GAINS, ASHOK PAUL DUGGAL AND HIS WIFE JANE DOE (3), AND THEIR COMMUNITY OF ASSETS AND GAINS AND ABC INSURANCE,<br><br>          Defendants. | Case No. 09-cv-01232-JA<br><br><br><br>Magistrate Judge Marcos E. López |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, Defendants Nalco Company ("Nalco") and Ashok Paul Duggal ("Duggal") (collectively "Defendants"), by and through their attorneys, submit this memorandum of law in support of their motion for summary judgment.

**INTRODUCTION**

From February 2007 through June 2008, Nalco counseled Plaintiff, Donato Aponte, numerous times regarding his job performance. Specifically, Aponte was advised that several key customers were dissatisfied with his service because Aponte failed to visit them on a consistent basis, failed to submit client reports or respond to client inquiries in a timely manner, and took an excessive amount of time to resolves issues. Aponte was also repeatedly late in submitting administrative and district reports. In addition, Aponte's sales were declining and he

was not meeting sales targets.  On account of these issues, Aponte was placed on a performance improvement plan.

Aponte's then direct supervisor and friend, Ashok Duggal, repeatedly counseled Aponte regarding these concerns and noted specifics areas for Aponte to improve on.  Despite being counseled on these issues on numerous occasions and provided specific suggestions on how to improve, Aponte failed to do so.  Indeed, Warner Chilcott, a $60,000 account for which Aponte had primary responsibility, cancelled its contract with Nalco in 2007.  In 2008, Aponte also had to be removed from the Amgen account after Amgen personnel complained that they were not getting from Aponte the "professional level of service at the high standard that Nalco was supposed to deliver," that they felt that they were only buying chemical products instead of service or solutions, and that Aponte was simply not "valuable" to Amgen.  Given Aponte's continued poor performance, and at Duggal's recommendation, Nalco terminated his employment.

Plaintiff instead claims he was discriminatorily discharged on account of his age, gender, national origin (Puerto Rican), and due to an alleged disability (diabetes).  Aponte also claims that for the least 7 years of his employment with Nalco, he suffered a hostile work environment case based on these bases and because he failed to comport to male stereotypes.

Aponte's claims for discrimination and harassment, however, necessarily fail.  First, Aponte is unable to show that his diabetes renders him a qualified individual with a disability.  Second, Aponte cannot establish a *prima facie* case of discrimination on any basis.  Given the multiple complaints Nalco received from customers regarding Aponte and the numerous performance issues that were addressed with him, Aponte cannot establish that he was meeting Nalco's legitimate expectations.  Aponte is also unable to identify a similarly-situated employee

2

outside of his protected class(es) with similar performance issues who was treated more favorably than he was.  Nor can Aponte show that he was replaced.  Moreover, Aponte cannot establish that Nalco's reason for discharging him--namely, his poor performance as evidenced by declining sales and customer complaints-- is pretextual.

Aponte's hostile work environment claims are likewise without merit.  None of the conduct of which Aponte complains of -- which he admits was generated solely by one supervisor who was based out of Colombia and only sporadically visited Puerto Rico -- rises to the level of actionable harassment. Aponte cannot show that this conduct was based on any protected characteristic, much less that it was sufficiently severe or pervasive.  Furthermore, despite being aware of Nalco's anti-harassment policy and having numerous remedies available to him to report any perceived harassment, Aponte admittedly failed to complain, even once, about any conduct which he deemed inappropriate.

## **ARGUMENT**

### I.      APONTE IS NOT A "QUALIFIED INDIVIDUAL WITH A DISABILITY" WITHIN THE MEANING OF THE ADA.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).  To establish that he is disabled, Aponte must establish that: (1) he suffers from a mental or physical impairment; (2) the life activity limited by the impairment qualifies as "major"; and (3) that his impairment substantially limits that major life activity.  *See Carreras v. Sajo Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010)(*citing Calero-Cerezo*, 355 F.3d at 20).  Aponte bears the burden of proof on this issue. *Id* at 32.

Aponte claims that he is disabled because he was diagnosed with Type II diabetes on

August 26, 2005 (Facts ¶54)[1].  Yet, having diabetes, by itself, does not render Aponte disabled. *Id*. at 33 (*citing Albertsons's Inc v. Kirkingburg*, 527 U.S. 555, 566 (1999)).  Rather, the existence of a disability must be determined on a case by case basis and the inquiry is "fact intensive and individualized."  *Sepulveda v. Glickman*, 167 F. Supp 2d 186, 191 (D.P.R. 2001); *Albertsons's*, 527 U.S. at 566; *Bailey v. Georgia Pacific Corp.*, 306 F. 3d 1162, 1167 (1st Cir. 2002).[2]

Aponte does not even identify which major life activity, if any, is limited by his diabetes, much less establish that any alleged limitation on that life activity is substantial.  It is Aponte's burden to submit "evidence that the extent of the limitation caused by [his] impairment in terms of [his] own experience is substantial."  *Toyota*, 534 U.S. at 198, 122 S.Ct. 681. Rather, the undisputed evidence demonstrates that since he was diagnosed with diabetes, Aponte is able to get out of bed in the morning, brush his teeth, shower, shave and get dressed (Facts ¶56).  He is able to drive a car, vacuum, do laundry, make his bed, perform work around the house, buy groceries, prepare meals and work on his computer (Facts ¶56). Aponte is also able to play with his children and does so by taking them swimming, flying kites in El Morro, and riding bicycles (Facts ¶56).   He is able to work and grows Bonsai trees as a hobby (Facts ¶56).

Aponte's only allegations in this respect are that he sometimes gets tired and that he sometimes had to leave meetings because he had to eat (Facts ¶58).  Aponte testified that on other occasions, he ate food provided by Nalco at meetings, which he shouldn't eat (Facts ¶58). This testimony is plainly insufficient to show that Aponte was substantially limited in eating,

---

[1] Citations to Defendants' Statement Of Uncontested Facts n Support of Their Motion for Summary Judgment are referred to as "(Facts ¶__.)

[2] Notably, the ADA Amendments Act does not apply to Aponte's claims inasmuch as the amendment became effective January 1, 2009 and the First Circuit has held that they are not retroactive.  *See Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009).

4

working or any other major life activity.

It is also significant that to assess the degree of any limitation of a major life activity, courts take into consideration "the effectiveness, side effects and burdens of a plaintiff's mitigating measures." *See Id.* at 33.   Aponte takes medication every day and tests his blood sugar at least once daily (Facts ¶55).  Aponte testified that he successfully keeps his diabetes under control by following a diet, eating snacks and having sufficient rest  (Facts ¶53).

 Given these undisputed facts, Aponte cannot show that his diabetes substantially limits any major life activity.  *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483-484 (1999) (noting that a diabetic whose illness does not impair his or her daily activities and whose condition is controlled through treatment and, if so controlled, is not be considered a disabled); *Carreras,* 596 F.3d at 34 (plaintiff whose diabetes required dietary adjustments, medication, a fixed meal schedule and avoidance of certain foods was not disabled under ADA; *Sepulveda*, 167 F. Supp. 2d at 191 (internal citations omitted)(medical condition that requires medication, fixed meal schedule and timely snack breaks without more does not amount to a substantial limitation under ADA).

For the above stated reasons, Aponte cannot establish that he is disabled or is a qualified individual with a disability under the ADA in order to proceed with any disability discrimination or failure to accommodate claims.[3]

---

[3] Even assuming that Aponte were able to overcome this hurdle to show that he is a qualified individual with a disability under the ADA, he is still unable to establish a *prima facie* case of discrimination based on his disability for the reasons discussed in Section II *infra*.   To establish a prima face case of disability discrimination, Aponte must show that he was satisfactorily performing his job and was treated less favorably than similarly situated individuals outside his protected class.  *See Rosado v. Wackenhut Puerto Rico*, 2005 WL 3543891 (1st Cir. Dec. 29, 2005)(noting that absent direct evidence that Plaintiff "was discharged in whole or in part because of his disability," plaintiff must proceed under burden shifting method and show he was replaced by a non-disabled person or treated less favorably than non-disabled employees).

II.   **APONTE CANNOT ESTABLISH A *PRIMA FACIE* CASE OF AGE, NATIONAL ORIGIN OR DISABILITY DISCRIMINATION AND CANNOT SHOW PRETEXT.**

Absent direct evidence of discrimination, Aponte must pursue his discrimination claims via the familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 802-805 (1972).  To establish a prima face case of discrimination, Aponte must show that: (1) he is within a protected class; (2) he was qualified for the position he held and was meeting Nalco's legitimate performance expectations at the time of his discharge; (3) he suffered an adverse employment action; and (4) Nalco sought someone of roughly equivalent qualifications to perform substantially the same work.  *See Gomez Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010).  The elements of the prima facie case in the context of an age based termination are slightly different in that Aponte must show that Nalco "subsequently filled the position, demonstrating a continuing need for the plaintiff's services." *Id. (citing Velez v. Thermo King de P.R. Inc.*, 585 F.3d 441, 447 (1st Cir. 2009)).  Aponte's prima face case fails because he cannot establish that he was meeting Nalco's legitimate expectations at the time of his discharge, that similarly situated employees outside of his protected class were treated more favorably, or that he was replaced.  Because Aponte cannot raise an issue of material fact as to these elements of his *prima facie* case and because he cannot show that Nalco's reasons for terminating his employment are pretextual, Aponte's discrimination claims fail.

A.   **Aponte Cannot Establish a *Prima Facie* Case of Discrimination.**

1.   **Aponte Was Not Meeting Nalco's Legitimate Performance Expectations.**

There can be no question as to whether Aponte was meeting Nalco's legitimate expectations at the time of his termination.  As a District Representative for Nalco, Aponte was

6

responsible for achieving sales targets (Facts ¶14).  To do this, Aponte had to service existing

clients to make sure they continued to buy products and services and did not go to a Nalco

competitor (Facts ¶¶14-15).  He also was responsible for growing the business by cultivating

new clients and establishing new accounts (Facts ¶16).  Aponte's performance was lacking in

both respects.

First, several of the clients whose accounts Aponte was responsible for reported they

were dissatisfied with his service that they were considering switching providers.  Despite being

counseled about these issues on numerous occasions, Aponte's poor performance persisted.

Specifically, for example:

- In February 2007, Duggal placed Aponte on probation after informing him that several customers had reported that they were dissatisfied with Aponte's level of service (Facts ¶25).

- In March, 2007, Duggal advised Aponte that Nalco was at "high risk" of losing the Chevron Phillips account and that he was concerned because many of Aponte's clients were weak (Facts ¶27).

- In May, 2007, Duggal counseled Aponte about that Warner Chilcott was not satisfied with the level of service and that he was counting on him to stabilize the account inasmuch as Warner Chilcott was being aggressively approached by Chemtreat, a Nalco competitor (Facts ¶30).

- On August 14, 2007, Duggal placed Aponte on a performance improvement plan (PIP) specifically concerning service deficiencies and overall client dissatisfaction with Baxter and Warner Chilcott, and Aponte's failure to meet his sales goals. Specifically, Duggal discussed with Aponte that Baxter was very close to terminating Nalco's contract and switching to Chemtreat and that Warner Chilcott reported similar deficiencies (Facts ¶¶33-35).

- On May 3, 2008, Duggal advised Aponte that Amgen was complaining of a decline in service and asked Aponte to take immediate action.  Duggal warned Aponte that it was critical for him to improve and to prevent the loss of customer accounts (Facts ¶37).

The complaints that Nalco received from Aponte's clients were strikingly similar in that

they reported that Aponte's visits were not consistent, that he did not submit reports on time, that

7

he failed to respond to their inquiries, and took excessively long to resolve certain issues (Facts ¶¶27, 30-32, 37). Duggal also counseled Aponte on numerous occasions due to his failure to submit expense reports, district reports and other administrative reports, on time (Facts ¶¶38, 40).

Second, and as noted in Aponte's PIP, Aponte was not meeting his sales targets (Facts ¶33). As of June 30, 2007, Aponte's year to date sales were down 11% or approximately $30,000 when compared to 2006 (Facts ¶¶33, 47). Indeed, Aponte concedes that his sales were down and that he had difficulty obtaining new business (Facts ¶47). Even though Aponte's PIP provided that he could not lose any clients during 2007, following the above counseling sessions in 2007, Warner Chilcott, one of the accounts for which Aponte was responsible, cancelled its contract with Nalco (Facts ¶¶35-36). A few months later, in June 2008, personnel from Amgen, another client account for which Aponte was responsible, reported that they did "not perceive from [Aponte] a professional level of service at the high standard that Nalco was supposed to deliver"; that they felt they were only buying chemical products from Nalco, instead of service or solutions; they did not feel like Aponte was "taking care of their equipment and systems," that his "communication and reporting ha[d] been very low to none;" that Aponte had failed to deliver a requested report (Facts ¶42). In sum, Amgen reported that Aponte's service was not valuable and that they had contacted Chemtreat, a Nalco competitor (Facts ¶42). In an effort to salvage the Amgen relationship, Aponte was removed from the account (Facts ¶43).

Based on these undisputed facts, Aponte cannot establish that he was meeting Nalco's legitimate performance expectations. On this basis alone, and because Aponte cannot meet his prima facie showing, Aponte's discrimination claims are doomed.

2. **No Similarly Situated Individuals Were Treated More Favorably.**

To make out a prima facie case of discrimination, Aponte must also show that similarly

8

situated employees who were not in his protected classes were treated more favorably.  *See Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002)(*citing Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 38 (1st Cir. 2001).  Aponte must show that that employees "similarly situated to [him] in all relevant respects were treated differently by the employer." *Garcia v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir. 2008)(*citing Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)).  Although the comparisons "need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." *Id.*

Aponte alleges that only two employees, Edward Bray and Francisco Casanova, both of whom are Puerto Rican, received more favorable treatment than he did (Facts ¶71).  Specifically, Aponte claims Bray and Casanova lost several accounts but Bray was permitted to resign from Nalco to form his own company (which currently provides services to Nalco) while Casanova is still employed  (Facts ¶71).  Yet, Aponte's speculation that these individuals lost client accounts, by itself, is insufficient to show that they were similarly situated to Aponte.  Indeed, Aponte admits he has no personal knowledge concerning any alleged problems Bray or Casanova had with clients (Facts ¶71). He also does not know, whether Bray or Casanova, like him, were ever on probation or placed on a performance improvement plan (Facts ¶71_).  Furthermore, Aponte admits that Casanova was very good at selling and getting new accounts (Facts ¶71).  Given that one of performance issues that led to Aponte's termination was his declining sales, failure to meet sales targets and inability to cultivate new business, this fact alone demonstrates that Casanova was not similarly situated to Aponte.

Significantly, Aponte fails to identify any employee of non Puerto Rican national origin, whom he claims was similarly situated and treated more favorably.  Indeed, at the time of

9

Aponte's termination and to this day, the vast majority of the representatives in the Puerto Rico district are Puerto Rican (Facts ¶¶70, 74). Accordingly, Aponte's discrimination claim on the basis on his national origin lacks the necessary predicate foundation. Likewise, Plaintiff provides no evidence as to whether Bray or Casanova were or were not disabled.

Also significantly, Aponte concedes that any differential treatment of these individuals is not related to his asserted bases for discrimination since he testified that he did not believe that Bray or Casanova were treated more favorably on account on their age or nationality. *See Rosado*, 312 F.3d at 534 (*citing Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999)("To have plausible differential treatment claim, [Plaintiff] must first show that males were similarly situated and that she was treated differently, and then that gender was the reason for that difference.")(internal citations omitted). Because Aponte has failed to establish that Bray or Casanova were similarly situated, he cannot establish an inference of discriminatory motive. *See Ortiz Garcia v. Toledo Fernandez,* 405 F.3d 21, 25 (1st Cir. 2005) (*citing Kauffman v. P.R. Tel. Co.*, 841 F.2d 1169, 1172 n. 5 (1st Cir. 1988).

### 3. Aponte Was Not Replaced.

Aponte claims that he was replaced by Jaime Suarez (Colombian). Nevertheless, Aponte is not aware of what position Suarez was hired into nor does he have any personal knowledge of Suarez' performance (Facts ¶72). Significantly, Suarez was hired on July 14, 2008, approximately two weeks <u>before</u> Aponte's termination, and he was hired as an Applications Engineer, not a District Representative like Aponte (Facts ¶73). Further, Aponte essentially concedes that Suarez did not have the same qualifications since he admits that, unlike Aponte, Suarez had a masters degree in mechanical engineering (Facts ¶72).

Suarez did not assume Aponte's duties. Rather, Aponte's duties were absorbed by the remaining district representatives in the region (Facts ¶73). It is undisputed that the vast majority

10

of these individuals were Puerto Rican (Facts ¶¶70 74). Simply put, Plaintiff provides no evidence, aside from his speculation and personal belief, that Suarez was hired to replace him.

### B.    Aponte Cannot Establish Pretext.

Setting aside the fact that Aponte cannot establish a *prima facie* case, his discrimination claims (on any basis) fail for the added reason that he cannot remotely establish pretext.  To establish pretext, Aponte must establish that Nalco's stated reason for discharging him --his deficient performance as evidenced by client complaints, failure to meet sales targets and loss of client accounts-- was "false and that discrimination was the real reason."  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2352 (2009); *Fontanez Nunez v. Janssen. Ortho*, 447 F.3d 50, 56 (1st Cir. 2006).

"At summary judgment this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of [his protected category.]"  *See Davila v. Corp. de P.R. para la Difusion Publica*, 498 F.3d 9, 16 (1st Cir. 2007).  To show pretext, plaintiff "must ordinarily do more than impugn the legitimacy of the employer's asserted justification; he must also adduce evidence of the employer's discriminatory animus."  *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir. 1993); *see also Mesnick v. Gen. Elec. Co.*,  950 F.2d 816, 827-828 (1st Cir. 1991).  For instance, "in a wrongful discharge case under the ADEA, the plaintiff bears the ultimate burden of proving that he would not have been fired but for his age."  *Vega*, 3 F.3d at 478 (internal citation and quotation marks omitted).

Aponte cannot set forth any evidence to suggest that Nalco discharged him for any reason other than his longstanding and well documented poor performance.  Indeed, Aponte admits that on the day of his termination he was told and understood that he was being terminated for performance reasons including losing client business, not following up on client requests and

failing to timely submit reports  (Facts ¶46).  Aponte likewise admits that prior to his termination, he had been counseled on multiple occasions concerning clients' dissatisfaction with his level of service for these reasons (Facts ¶46).  Indeed, Aponte concedes that he had difficulty generating sales and that he was not meeting sales targets, and that these were responsibilities associated with being a District Representative for Nalco (Facts ¶47).

Aponte's only answer to these undisputed facts is that Nalco was wrong to terminate him. That Plaintiff may disagree with Nalco's decision is irrelevant and insufficient to establish pretext.  The relevant inquiry is whether Nalco subjected Aponte to adverse employment actions on the basis of his national origin, age or disability, not whether the decision was objective, wise, fair, or correct.  It is well established that it is not the Court's role to determine whether the employer was wrong about Plaintiff's actions or performance.  *Mesnick*, 950 F. 2d at 825 ("Courts may not sit as super-personnel departments, assessing the merits- or even the rationality- of employers' nondiscriminatory business decisions.").

The only evidence relevant to the question of pretext is whether Nalco believed that Aponte had poor work performance.  In determining pretext, the court's "focus must be on the perception of the decision maker" that is, whether the employer believed its stated reason to be credible.  *See Mesnick*, 950 F.2d at 824.  There is no evidence whatsoever to suggest that Duggal, the decision maker in this case, did not legitimately believe that Aponte's performance was poor, much less that he instead based the decision to end Aponte's employment on any protected characteristic.  To the contrary, the undisputed facts reveal that several clients reported to Duggal that they were dissatisfied with Aponte's level of service and that Duggal believed that Aponte was not performing to the level of a Nalco district representative (Facts ¶¶25-44).  In short, Aponte has no evidence to suggest that Duggal did not believe Aponte's performance to be

poor and to warrant his termination.

Aside from providing his personal opinion, unsupported speculation and belief that Nalco discharged him because of his age, national origin and alleged disability, Aponte has set forth no evidence from which a reasonable jury could find that Nalco's reasoning was false or a pretext for unlawful discrimination.  Aponte only points to a few isolated incidents and remarks claiming they somehow reveal ageist, disability or gender based animosity.  As a preliminary matter, it is "far from clear that any of the alleged remarks bespeak age [national origin, gender, or disability] based animus at all."  *Gonzales*, 304. F.3d at 70.  Indeed, all the alleged remarks were made by Castillo, and there is no record evidence as to whether Castillo was involved in the decision to terminate Aponte (Facts ¶¶59, 62, 63-65).  Such comments made by non decision makers who were not involved in the decisional process are not probative of discrimination. *Melendez v. Auto Germana, Inc,* 622 F.3d 46, 54 (1st Cir. 2010).  At best, these are stray workplace remarks which are insufficient, standing alone, to establish discriminatory animus. *See Gonzales v. El Dia, Inc.,* 304. F.3d 63, 69 (1st Cir. 2002); *Ortiz Rivera v. Astra Zeneca*, 363 Fed. Appx. 45, 47-48 (1st Cir, 2010).  Indeed, Aponte concedes that Duggal, the decision maker in this case, did not make any offensive remarks to Aponte (Facts ¶49). The record is simply devoid of any evidence that anyone in a decision making role with respect to Aponte's termination bore any discriminatory animus whatsoever.

Based on these facts, Aponte has set forth no evidence from which a reasonable jury could conclude that his discharge was the result of anything other than his poor performance, much less that Nalco's decisions were premised on or motivated by Aponte's age, national origin, alleged disability or failure to comport to male stereotypes.

**III.    APONTE'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS MATTER OF LAW.**

**A.    Untimely acts**

A plaintiff who brings a hostile work environment claim must first file an administrative charge with the EEOC within 300 days of an act of discrimination.  *See Frederique- Alexandre v. Dep't of Natural and Environmental Resources of Puerto Rico,* 478 F.3d 433, 437 (1ˢᵗ Cir. 2007); *Provencher,* 145 F.3d at 13. The limitations period serves to "protect[ ] employers from the burden of defending claims arising from employment decisions that are long past." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 47 (1st Cir. 1999) (q*uoting Delaware State College v. Ricks,* 449 U.S. 250, 256-57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

The Supreme Court has held that "failure to file within the time period means a potential employee loses the ability to recover for the alleged discrimination." *See Id.* (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002))(internal citations omitted). Accordingly, a Plaintiff cannot generally litigate claims based on conduct falling outside of that period. *See Provencher*, 145 F.3d at 13.

Here, Aponte did not file his charge of discrimination with the EEOC until December 9, 2008 (Facts ¶50).  Accordingly, Aponte may not recover for any conduct that predated February 13, 2008, or 300 days before he filed his charge.

**B.    Aponte Cannot Establish A Claim for Harassment**

To establish a hostile work environment claim, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based upon his protected status; (3) the harassment was based upon her gender, race, national origin, or disability; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) the objectionable conduct was both

14

objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and the victim did perceive it to be so; and (6) some basis for employer liability has been established. *See Douglas v. J.C. Penney*, 474 F.3d 10, 15 (1st Cir. 2007) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001); see also *Rodríguez Velázquez v. A.M.A.*, 502 F.Supp.2d 200, 209 (D.P.R. 2007) (explaining that "[i]t has been held that, similar to Title VII discrimination actions, ADA-covered individuals may assert hostile work environment claims premised on disability-based harassment"). In assessing whether there is a hostile environment in the workplace, Courts look to the "totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *See Rodriguez-Robles v. Pfizer Pharm.*, LLC, 561 F.Supp.2d 180, 184-85 (D.P.R.2008) (*citing Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993)). Courts have consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." *Mojica v. El Conquistador Resort & Golden Door Spa*, 714 F.Supp.2d 241, 260 (D.P.R. 2010) (*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); s*ee also Crespo-Vargas v. U.S. Gov't*, 573 F.Supp.2d 532, 551-52 (D.P.R. 2008). Likewise, the "mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 20. Simply put, "[t]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins." *Rosario v. Dep't of Army*, 607 F.3d 241, 247 (1st Cir. 2010) (*quoting Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir. 2002)).

Aponte's harassment claim is based upon the conduct of only one individual, Jorge Castillo (Facts ¶59). Castillo, who was based out of Colombia, was not Aponte' direct supervisor

(Facts ¶21).

Aponte's hostile work environment claim is premised on the following allegations:

- Aponte testified that Castillo occasionally asked him about his health, whether he had lost weight, and told him that he did not have energy or drive.  Castillo asked all district representatives about their weight because he wanted Nalco district representatives to have a certain image and like all other Nalco district representatives, wanted Aponte to always maintain a positive attitude and appearance so as to encourage clients to buy products and services from Nalco.  Indeed, Castillo was concerned about district representative health and once brought in an employee to give a seminar about cholesterol in relation to being overweight  (Facts ¶62)

- Aponte claims that whenever he asked Aponte whether he had lost weight, Castillo touched Aponte's belly for 4 to 5 seconds (Facts ¶62).

- On one occasion, Castillo asked Aponte about his age, telling him that even though he was older than Aponte, he (Castillo) had more energy that Aponte did (Facts ¶64).

- On approximately seven occasions over a 4 to 5 year period, Castillo used the phrases "no seas hueva" or "eres una hueva" when adressing Aponte.  Aponte interpreted these phrases to mean "don't be an asshole."  Aponte testified that Castillo used these phrases with everyone whenever someone would not do something that he wanted.  Eventually, several other employees in Puerto Rico began using these phrases with the entire group (Facts ¶63).

- Aponte testified that Castillo occasionally asked him if a "hot girl put it in his face, would he eat it up," to which Aponte replied that he was not interested and changed the topic (Facts ¶65).

- Aponte claims that Castillo expected him to drink and told him that he wanted him to be more of a part of the organization and network with other people.  Aponte concedes, however, that no one ever ordered him to drink.  Once, at a May 2007 event, someone said no one should have an empty glass and that everyone's glasses should be filled with rum the entire night.  It was Aponte's choice whether or not to drink, what type of beverage to consume and how much of it to consume.  Indeed, Aponte testified he rarely drank (Facts ¶64).

- During a 2005 or 2006 Nalco event, Aponte claims he was forced to dance in the middle of a circle for approximately 10 seconds.  Everyone was dancing in a circle and people would get in the middle of the circle and clown around.  Everyone was having a good time and clapping and someone told Aponte that Castillo would not like it if he didn't dance. Aponte testified that he enjoys dancing and that he had danced voluntarily at other Nalco events. (Facts ¶67)

16

Neither individually nor collectively does this alleged conduct support a claim for hostile work environment. First, Aponte cannot establish that any of the above comments or conduct were directed at him based on a protected category (be it his age, national origin, gender or alleged disability).¶[4] *See Quiles-Quiles v. Henderson*, 439 F.3d 1, 7(1st Cir. 2006)(a plaintiff must demonstrate that the hostile conduct was directed at her because of a protected characteristic); *Soto-Velez v. El Conquistador Resort The Waldorf Astoria*, 2011 WL 1261541, *7 (D.P.R., March 31, 2011) (plaintiff's ADEA hostile work environment claim failed where he failed to show that the alleged behavior was related to an age-based animus); *Acevedo–Padilla v. Novartis Ex Lax*, 740 F.Supp.2d 293, 2010 WL 3785689 at *26 (D.P.R. Sept. 30, 2010) (age based harassment claims failed where Plaintiff failed to show age based animus); *Rodriguez–Torres*, 704 F.Supp.2d at 102 (comments that do not support an inference of discrimination are insufficient to support hostile work environment claim).

Indeed, Aponte admits that Castillo commented on everyone's weight and he likewise used the phrases "no seas hueva" or "eres una hueva" with everyone. As to these latter comments, Plaintiff provides nothing beyond his own speculation to suggest that they were somehow based on his gender or any male stereotypes. Indeed, Plaintiff admits that Castillo used these phrases whenever someone would not do something that he wanted and that eventually, several employees began using these phrases with the entire group. (Facts ¶63) In any event, and even if Plaintiff could somehow show that any of these comments were directed at him because of his age or gender, the alleged comments were at best stray remarks, made by a

---

[4] Any hostile work environment claim based on an alleged disability nevertheless fails because, as previously discussed, Aponte cannot establish that he is a qualified individual with a disability. *See Maldonando v. Cooperativa De Ahorro*, 685 F.Supp.2d 264, 274 (D.P.R. 2010)(holding that since Plaintiff was not a qualified individual with a disability under ADA, he was unable to succeed on a claim of disability-based harassment).

non-decision maker and not in any way related to the decision surrounding Aponte's performance assessment or termination, such that they are not probative of pretext and insufficient to establish a hostile work environment claim. *See Thompson v. Coca-Cola Co.,* 522 F.3d 168, 178 (1st Cir. 2008)(comment made by individual who did not directly supervise plaintiff, was not decision maker and had no role in Plaintiff's termination cannot support an inference of pretext); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir.1990) ("the biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case").

Second, and even though some of Castillo's remarks may have been in bad taste, the conduct Aponte complains is neither sufficiently severe or pervasive.  It is undisputed that Castillo only traveled to Puerto Rico approximately 5 times a year (Facts ¶60).  Aponte testified that Castillo's visit to Puerto Rico typically lasted one week, out of which he would spend time with Aponte on four days and that he would typically spend two to three hours with Aponte.  In other words and at most, Aponte spent approximately 60 hours with Castillo each year (Facts ¶60).  And admittedly, many of Aponte's interactions with Castillo revolved solely around business or family, and did not include any conduct which Aponte considered inappropriate(Facts ¶69).

Indeed, courts have rejected claims of harassment in cases where the alleged conduct was far more severe and frequent than that alleged by Aponte.  *See Franco v. Glaxosmithkline*, 2009 WL 702221 at *27 (D.P.R.2009) (plaintiff who was subjected to remark that he was an 'old man' 3 to 4 times per day "are insufficient in an isolated fashion to establish discriminatory animus."); *Villegas-Reyes v. Universidad Interamericana de P.R.*, 476 F.Supp.2d 84, 92 (D.P.R.2007) (plaintiff who was called old on a daily basis could not state claim of hostile environment.)

Simply put, Aponte is unable to prove that he was the conduct he complains of "was enough to "create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Soler v. Tyco Electronics, Inc.*, 268 F.Supp.2d 97, 112  (DPR 2003). Because Aponte cannot show that his work environment was "permeated with sufficiently severe or pervasive discriminatory intimidations, ridicule, and insult to alter the conditions of his employment and create and abusive work environment,"  he cannot state a claim for hostile work environment. *See Soto-Velez* 2011 WL 1261541 at  *8. (*citing Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21, (1993)).

**B.**    **Nalco is Entitled to the *Faragher-Ellerth* Defense.**

Even if Aponte were somehow able to state an actionable claim for harassment (he cannot), Nalco is entitled to the Faragher Ellerth defense because it has an established sexual harassment policy which Aponte unreasonably failed to utilize to address his alleged complaints.

The Supreme Court has held that an employer cannot be strictly liable for a hostile work environment created by a supervisor when the employer did not know nor reasonably should have known of the alleged misconduct.  *See Chahoult v. Interstate Brand*s, 540 F.3d 64, 73(1st Cir. 2008)(*citing Meritor Sav. Bank, FSB v. Vinsons*, 477 U.S. 57, 70-72 (1986); s*ee also Fontanez Nunez v. Janssen Ortho*, 447 F.3d 50, 56 (1st Cir. 2006); *Lee Crespo v. Schering Plough Del Caribe Inc.*, 354 F.3d 34, 46 (1st Cir. 2003).  An employer may defend itself against liability when:  1) the employer exercised reasonable care to avoid harassment and to eliminate it when it might occur; and 2) the complaining employee "failed to act with reasonable care to take advantage of the employer's safeguards to prevent harms that could have been avoided". *See Id.* (*citing Faragher v. City of Boca Raton*,  524 U.S. 775, 805 (1998); *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742(1998)). Here, it is undisputed that the Nalco maintains a harassment policy designed to prevent and address harassment (Facts ¶51).  Aponte was fully aware of this policy

and had access to it during his employment (Facts ¶52).   The policy sets forth a mechanism for employees who perceive they have been discriminated or harassed to complain (Facts ¶51).  *See Chahoult* (plaintiff conceded  that employer had an acceptable sexual harassment policy and complaint process in place, had trained its employees regarding policies and plaintiff was aware of policies, therefore employer met first prong of *Faragher-Ellerth* test in showing it took reasonable steps to avoid harassment).  It is further undisputed that not once, over the course of the six or seven years during which Aponte had contact with Castillo and claims he felt discriminated and harassed, did Plaintiff raise a complaint of discrimination or harassment pursuant to Nalco's policy (Facts ¶53).  Accordingly, Aponte failed to act with reasonable care and Nalco cannot be liable for the alleged harassment.

## IV.   PLAINTIFF'S CLAIMS AGAINST DUGGAL IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED.

Title VII defines "employer" as" a person engaged in an industry affecting commerce who had fifteen or more employees… and any agent of such person." *See* 42 U.S.C. §2000e(b).  The First Circuit has followed the majority of other circuits, holding that no personal liability can be attached to agents under Title V11. *See Fantini v.  Salem State Colleg*e, 557 F.3d 22. 30-31(1st Cir. 2009)(dismissing Title VII claims against individual employee defendants). Accordingly here, that claims against Ashok Duggal in his personal capacity must be dismissed.

## CONCLUSION

For the reasons set forth, Defendants, Nalco Chemical Company ("Nalco") and Ashok Paul Duggal ("Duggal") respectfully requests that the Court grant their joint motion for summary judgment and dismiss Plaintiff's complaint in its entirety.

**DATED:  June 21, 2011**

Respectfully submitted,
NALCO COMPANY, ASHOK DUGGAL


By: _____s/ Natascha B. Riesco_____
        One of Their Attorneys



*Attorneys for Defendants*

Arturo Diaz-Angueira
James W. McCartney (USDC-PR No. 211511)
**CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**
PO BOX 364966
San Juan, PR  00936-4966
(787) 767-9625

Mark Lies III (admitted *pro hac vice*)
Natascha B. Riesco-Farinas (USDC-PR No. 222112)
**SEYFARTH SHAW LLP**
131 S. Dearborn Street, Suite 2400
Chicago, IL   60603
(312) 460-5000

13000708v.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that he caused a true and correct copy of the foregoing

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY**

**JUDGMENT** to be served upon the following attorneys via the CM/ECF filing system on this 21st

day of June, 2011.


Miguel A. Cuadros-Pesquera                    William E. Melendez-Menendez
Cuadros & Cuadros                             410 Park Avenue
701 Ponce de Leon Ave.                        15th Floor #1223
Suite 215                                     New York, NY 10022
Miramar                                       718-725-7387
San Juan, PR 00907                            Email: we.melendez@e-lex.us
787-725-2652
Fax: 787-724-3820
Email: macuadros@cuad-law.com


_____ s/ Natascha B. Riesco_____ _____