# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DONATO APONTE NAVEDO, BELKIS ISABEL SANTIAGO MARTÍNEZ, AND THEIR COMMUNITY OF ASSETS AND GAINS, | |
| Plaintiffs, | Case No. 09-cv-01232-MEL |
| v. | |
| NALCO CHEMICAL COMPANY, JOSÉ SERRANO AND HIS WIFE JANE DOE (1), AND THEIR COMMUNITY OF ASSETS AND GAINS, JORGE CASTILLO AND HIS WIFE JANE DOE (2), AND THEIR COMMUNITY OF ASSETS AND GAINS, ASHOK PAUL DUGGAL AND HIS WIFE JANE DOE (3), AND THEIR COMMUNITY OF ASSETS AND GAINS AND ABC INSURANCE, | Magistrate Judge Marcos E. López |
| Defendants. | |

## JOINT PROPOSED PRE-TRIAL ORDER

14050616v.6

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................4

II.    Counsel for the Parties..........................................................................................4

    A.    Plaintiff: ....................................................................................................4

    B.    Defendants: ...............................................................................................4

III.    Brief Statement of Claims and Defenses ...............................................................5

    A.    Plaintiff: ....................................................................................................5

    B.    Defendants: ...............................................................................................6

IV.    Factual Background ...............................................................................................7

    A.    Plaintiff: ....................................................................................................7

    B.    Defendants: .............................................................................................17

V.    Damages Claimed ...............................................................................................21

    A.    Plaintiff: ..................................................................................................21

    B.    Defendants: .............................................................................................22

VI.    Legal Controversies and Defenses ......................................................................22

    A.    Plaintiff: ..................................................................................................22

    B.    Defendants: .............................................................................................30

VII.    Stipulations of Fact ............................................................................................43

    A.    Joint: ......................................................................................................43

    B.    Plaintiff: ..................................................................................................45

    C.    Defendants: .............................................................................................46

VIII.    Trial Witnesses ..................................................................................................48

    A.    Plaintiff: ..................................................................................................48

    B.    Defendants .............................................................................................53

IX.    Expert Witnesses ...............................................................................................54

    A.    Plaintiff: ..................................................................................................54

14050616v.6

|  |  | B. | Defendants: | 55 |

| X. | Proposed Exhibits/ Documentary Evidence | 55 |
|  | A. | Plaintiff: | 55 |
|  | B. | Defendants: | 78 |

| XI. | Claims or Defenses Deemed Waived or Abandoned | 83 |
|  | A. | Plaintiff: | 83 |
|  | B. | Defendants: | 83 |

| XII. | Pending Motions | 84 |
|  | A. | Plaintiff: | 84 |
|  | B. | Defendants: | 84 |

| XIII. | Estimated Length of Trial | 85 |
|  | A. | Plaintiff: | 85 |
|  | B. | Defendants: | 85 |

| XIV. | Suggested Dates for Commencement of Trial | 85 |
|  | A. | Plaintiff: | 85 |
|  | B. | Defendants: | 85 |

| XV. | Other Matters | 85 |
|  | A. | Plaintiff: | 85 |
|  | B. | Defendants: | 88 |

TO THE HONORABLE COURT:

The captioned parties ("the parties"), through their counsel of record, and pursuant to the Order issued by this Court on December 6, 2011 (Docket No. 163), and in compliance with Local Rule 16 respectfully submit their Joint Proposed Pre-Trial Order as follows:

## I.     Introduction

The complaint alleges that Plaintiff was illegally discriminated against on the basis of his age, alleged disability and national origin.  Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., as amended, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., as amended, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq. Plaintiff further alleges that he was subjected to a hostile work environment on these bases and on account of his failure to comport to male stereotypes.  Plaintiff has also filed supplemental claims under Act No. 100 of June 30, 1959 ("Law 100"), as amended; P.R. Laws Ann. tit. 29, §§185 et seq. ("Law 80"); and Article 1802 of the Puerto Rico Civil Code ("Article 1802") and related violations of the constitutional rights of Plaintiff.  Defendants deny all of Plaintiffs' claims and have filed a Motion for Summary Judgment.

## II.    Counsel for the Parties

A.     Plaintiff:

Plaintiffs, Donato Aponte ("Aponte") and Belkis Santiago ("Santiago") (collectively ("Plaintiffs") are represented by:

> Juan José Martinez-Rodriguez (USDC-PR No. 128706)
> PMB-570, Ave. Luis Vigoreaux 1353
> Guaynabo, PR 00966
> (787) 368-0310
> Email: jjmartrod@prtc.net

B.     Defendants:

Defendants Nalco Chemical Company ("Nalco") and Ashok Paul Duggal ("Duggal") (collectively "Defendants"), are represented by:

> Mark Lies III (admitted *pro hac vice*)
> Natascha B. Riesco-Farinas (USDC-PR No. 222112)
> **SEYFARTH SHAW LLP**
> 131 S. Dearborn Street, Suite 2400
> Chicago, IL   60603
> (312) 460-5000
> Email: mlies@seyfarth.com
>            nriesco@seyfarth.com

> Arturo Diaz-Angueira
> James W. McCartney (USDC-PR No. 211511)
> **CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**
> PO BOX 364966
> San Juan, PR  00936-4966
> (787) 767-9625
> Email: adiaz@cnrd.com
>            jmcccartney@cnrd.com

## III.    Brief Statement of Claims and Defenses

### A.    Plaintiff:

This is an action for employment discrimination and related violations of the constitutional rights of Plaintiff by defendants. The claims, filed on behalf of Mr. Donato Aponte-Navedo (also occasionally referred to as Plaintiff, Donato Aponte or Aponte) and at the time spouse, now ex-wife, Belkis Isabel Santiago Martínez (also occasionally referred to as co-Plaintiff, Belkis Santiago or Santiago) arise from the acts and omissions by defendants, when starting on or around the year 2001, and all throughout the year 2008, until or around July 23rd, 2008, subjected Plaintiff Aponte to: a hostile work environment through discrimination and privacy violations and adverse employment conditions. This included repeated actions and/or omissions led by Jose Castillo, Colombian, and Ashok Duggal, Canadian, both Aponte's superiors, and other Nalco officers, subjecting Aponte to physical and psychological stress, all as the related component of Nalco's discrimination against Plaintiff on account of his diabetic

5

condition, or of his national origin, or of his age and.or of his refusal to submit to Nalco's expected conduct for male stereotypes, or a combination of the above stated bases for discrimination. This conduct by Nalco included Nalco's failure to accommodate Aponte's diabetic condition and other health issues that merited such accommodation, and subjecting Aponte to a work schedule and environment that kept him in under physical and psychological stress. Nalco was fully aware of Aponte's needs and failed to respond to his repeated requests for attention to them. Nalco, aware of Aponte's willingness to share his expertise with fellow workers, concocted a plan to fabricate a pretext to justify a record for the decision to terminate him, this, leading to his eventual unjustified termination. Defendant Nalco further refused to pay Plaintiff Aponte severance pay, as required by the separation pay statutes of the Commonwealth of Puerto Rico.

The deleterious effects of Nalco's conduct, which included a component of constituting an abusive attack on Aponte's honor, dignity, values, and to his rights to a private and family life and intimacy, caused harm and injury both to as well as to Aponte's then spouse co-plaintiff Santiago and impinged negatively into Aponte' s private family life.

B.    Defendants:

Plaintiff, Donato Aponte ('Aponte") claims that he was terminated on account of his age, national origin and on account of an alleged disability. Aponte further claims that he was harassed throughout his employment based on these characteristic and because he failed to comport to male stereotypes. However, Aponte's discrimination claims fail because he is unable to establish a *prima facie* case of discrimination on any basis. At the outset, Aponte is unable to show that his diabetes renders him a qualified individual with a disability. Aponte prima facie case also fails because he cannot establish: 1) that he was meeting Nalco's legitimate expectations; 2) that similarly-situated employees outside of his protected class(es)

6

were treated more favorably; or (3) that he was replaced.  Furthermore, and even if Aponte, were able to make a prima facie case of discrimination (he cannot), his claims fail because ultimately he cannot show that Nalco's reason for discharging him- namely, his well documented performance problems, as evidenced by declining sales, untimely reports, loss of customer accounts and numerous complaints from his clients-- is a pretext for discrimination.

Aponte's hostile work environment claims are likewise without merit because none of the conduct of which Aponte complains of rises to the level of actionable harassment.  Aponte cannot show that any of the conduct he complains of was based on any protected characteristic. Nor can Aponte demonstrate that any such conduct was sufficiently severe or pervasive.  Indeed, Aponte admits that the conduct he found objectionable was generated solely by one supervisor who was based out of Colombia and only sporadically visited Puerto Rico.  Furthermore, despite being aware of Nalco's anti-harassment policy and having numerous remedies available to him to report any perceived harassment, Aponte failed to complain, even once, about any conduct which he deemed inappropriate.

## IV.    Factual Background

### A.    Plaintiff:

1.    Starting on January 2005, Aponte began reporting to Ashok Duggal (Canadian), Area Manager. Duggal, in turn, responded to Jorge Castillo (Colombian), Sales Manager, who was based in Colombia. Defendants  José Serrano (Serrano) , Jorge Castillo (Castillo), and Ashok Paul Duggal (Duggal) at all times relevant, throughout the year 2008 either collaborated with, or failed in their duty to prevent, Plaintiff Aponte from being the object of disparaging, demeaning and ridiculing remarks. Plaintiffs also file this action against all codefendants, whom they allege were deliberately indifferent to their rights, and caused the damages to plaintiffs, due to their failure to adequately supervise and discipline yet unidentified

7

other persons, employees and agents of Nalco, whose actions and omissions were taken in deliberate indifference to Plaintiffs' rights and proximately caused their injuries. Plaintiffs' claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

2.       Plaintiff Aponte is a citizen of the Commonwealth of Puerto Rico and former employee of Nalco. Plaintiff qualifies as a protected individual under the statutes cited in the paragraphs above, as he is: Over 40 years old (**ADEA**); A Type II diabetic (**ADA**); and of Puerto Rican national origin (**Title VII**).

### *Nalco Officers*

3.       Mr. José Serrano, General Manager. – Serrano was at all times relevant to the complaint, an officer of Nalco, more specifically General Manager and Jorge Castillo's superior.

4.       Mr. Jorge Castillo, Sales Manager. – Castillo was at all times relevant to the complaint, an officer of Nalco, more specifically Sales Manager, answered to Serrano and a superior to Duggal, Area Supervisor.

5.       Mr. Ashok Paul Duggal, Area Supervisor. – Duggal was at all times relevant to the complaint, an officer of Nalco, more specifically Area Supervisor and answered to Castillo and a superior to plaintiff Aponte.

6.       Defendants Serrano, Castillo and Duggal were at all times relevant to the complaint officers of Nalco.

7.       On December 10, 2008, Plaintiff timely submitted a charge of discrimination against Nalco and the above-named individuals with the Equal Employment Opportunity Commission ("**EEOC**") on the basis of national origin, disability, gender, age and both gender and age.

14050616v.6

8. On January 28, 2009, plaintiff received a "notice of right to sue within 90 days" from the **EEOC**.

9. At all times relevant to this Complaint, Nalco was engaged in an industry affecting commerce as defined in **Section 11(h)** of the **ADEA, 29 U.S.C. § 630**.

10. At all times relevant to this Complaint, Nalco has employed 20 or more employees for each working day in each of 20 or more calendar weeks in the preceding calendar year.

11. Nalco was and is, therefore, an employer within the Commonwealth of Puerto Rico and within the jurisdictional coverage of **Section 11(b)** of the **ADEA, 29 U.S.C.A. § 630, ADA, 42 U.S.C. § 12101** and **Title VII** of the Civil Rights Act, **42 U.S.C. §2000**.

12. Defendants Serrano, Castillo and Duggal were at all times relevant to this complaint employers within the Commonwealth of Puerto Rico and within the jurisdictional coverage of **ADEA, 29 U.S.C.A. § 630, ADA, 42 U.S.C. § 12101** and **42 U.S.C. §2000**, and accountable for the action of Nalco's agents and its supervisors.

13. The aforementioned defendants directly caused the injuries and violation to Plaintiffs' civil rights by their actions, and by their omissions in failing to prevent others from injuring Plaintiffs.

14. Defendants Serrano, Castillo and Duggal, where at all times relevant to this complaint respectively General Manager, Sales Manager, and Area Supervisor of Nalco, and thus charged with the responsibility of supervising the actions of all Nalco agents and employees. These Nalco officers failed in their duty to supervise, evaluate, monitor and assign Nalco agents and employees, or otherwise assure that they would not represent a risk of injury to Plaintiffs, proximately causing the injuries alleged herein.

9

15.     Discriminatory acts of defendants and their refusal to follow company standards and procedures for dismissal and termination decisions were taken on behalf of Nalco and named defendants, as well as other unnamed Nalco Directors, Officers, Officials and Management.

16.     Nalco Directors, Officers, Officials and Management have long been aware of the habitually discriminatory conduct by defendants against Plaintiff.

17.     Furthermore, Nalco Directors, Officers, Officials and Management knew or should have known that defendants granted more favorable treatment to employee's who are either:  non – Puerto Rico nationals; non disabled; conform to male, gender based stereotypes imposed by defendant Castillo; younger than Plaintiff, or a combination of the above unlawful basis for discrimination.

18.     Despite this knowledge, Nalco Directors, Officers, Officials and Management failed to take any steps to rectify the situation, and instead permitted Plaintiff's work conditions and environment to progressively deteriorate.

19.     The failure of Nalco Directors, Officers, Officials and Management to take remedial action indicates that the national origin, disability, age and gender discrimination animus that pervades in Nalco is endorsed by its highest levels of authority.

### *Aponte's Tenure at Nalco -Positions, Compensation and Dismissal in 2008*

20.     Plaintiff Aponte began his career in Nalco at the entry position of Application Engineer on or around June'1996, and was subsequently terminated on or around July 23rd, 2008.

21.     Aponte was promoted in 1997 to District Representative, earning commissions above base salary.

14050616v.6

22.    Aponte returned in 2000 to his original position of Application Engineer and at the end of 2006, he again assumed the duties of District Representative, again earning commissions above salary, with the following clients in his list of direct sales responsibility: Amgen Manufacturing, Smurfit Stone, Baxter Healthcare, Chevron Phillips, Lilly del Caribe PR2, Lilly del Caribe PR5, Lilly del Caribe PR6, and Warner Chilcott.

23.    Plaintiff's Position at time of dismissal was of District Representative, and in addition Nalco used Aponte's valuable technical expertise in providing support for difficult problem solving tasks using techniques such as 3DTRASAR, PAC1, PAC2, PAC3 and Vantage program, all used to solve problems in some or all of these: cooling tower system problems; boiler problems; waste water treatment plant problems; potable water treatment plant problems and statistical process control for all the systems.

24.    At time of dismissal Aponte was providing support, in addition to his own client list, to: Cervecería India; Serralles; Pfizer Vega Baja; Pfizer Barceloneta; McNeil; Schering Plough; El Conquistador; Three Sandals Hotels in Santa Lucia and other Nalco clients in St. Kitts, Barbados.  Aponte, sometime in 2008 was asked not to visit Amgen anymore. Aponte has a perfectly reasonable explanation for Nalco's claims as to problems or complaints with Aponte's clients, such as Baxter, Warner Chilcott and Amgen. Aponte explains Nalco's way of handling the alleged complaints as part of the pretext used by Nalco to try to justify its unjustified and without cause dismissal of Aponte.

25.    At the time of dismissal, Aponte, also was providing regional technical support, both by phone and email, and by personal presentations for other Nalco offices in his areas of expertise. Aponte had supported from Puerto Rico, or visited during the three years immediately before his dismissal, the following countries to serve as Nalco trainer (Nalco technology champion): Dominican Republic, Mexico, Costa Rica, Guatemala, Colombia,

11

Venezuela, St. Kitts, Santa Lucia, Barbados, Grand Cayman Islands and also to the State of Florida.

26.     Aponte's compensation at time dismissal and for two years and prior to his dismissal his gross weekly salary amounted to $1,916.25, his gross monthly salary $8,303.75 and his gross annual salary $99,645.00.

27.     Aponte's dismissal. Aponte was subjected to a hostile work environment by Castillo starting on or around 2001, until the end of his employment with Nalco, due to his ADA protected condition of Type II diabetes.

28.     At all times relevant to this complaint Plaintiff was subject to a demonstrated discriminatory animus and was submitted to continuous insults, disparaging remarks and ridicule, at a sufficient degree to constitute an abusive attack on his honor, dignity, personal integrity, reputation and private and family life.

### Aponte's Diabetes and Nalco's Reaction to His Condition

29.     On the same day, August 26, 2005, that Plaintiff was diagnosed with diabetes Type II, he was working in the Cerveceria India's Waste Water Treatment Plant (WWTP) when he began to feel very sick. The EHS (Environmental, Health and Safety) department personnel took him to the dispensary to receive medical treatment.

30.     At the dispensary, his tests showed that his blood sugar was extremely high, and then they sent Aponte to the hospital.

31.     Aponte called Duggal and told him of his medical situation.  Mr. Duggal told Aponte that they were "relating" with PREPA personnel in a Nalco seminar in Caguas, and that he could relax because he was with Ortiz and that they would be leaving the "relating" soon to pick Aponte up, because he couldn't drive due to being nearly blind as a result of the elevated blood sugar medical crisis.

12

32.     At this time Aponte was all alone in Mayaguez and after Duggal assuring that arrangements would be made to pick him up, Aponte eventually had to drive under adverse conditions to his home in Toa Baja because of Duggal's failure to deliver his promised assistance to the ailing Aponte.

33.     Aponte felt very angry, anxious, sad, scared and helpless, because ne was very far from his home with the blurred vision and Duggal and Ortiz had told him very clearly that they were going to help him reach his home and Aponte believed in their word, to his eventual dismay and disappointment.

34.     Aponte then found out that it was more important to them the "relating" with the PREPA customers than the health and safety of an employee.

35.     Cervecería India, where Aponte suffered the insulin related collapse, wasn't even one of his clients since this client belonged to Ortiz's clients list.

36.     Aponte was at the Cervecería India plant doing a WWTP assessment and with this assessment, Ortiz would directly benefit by selling more for the next year in the Cervecería India account thus increasing his commissions, yet Aponte's health was unimportant for Nalco Officers, and under their influence, direction or lack of supervision, to other co-workers.

37.     Aponte has been diagnosed and living with Diabetes Type II, since August 26, 2005.  Castillo and Duggal knew that Aponte needed to take his medication and meals on time. At different meetings that he had with Castillo and Duggal, Aponte told them that he was working 12 hours per day, six and sometimes seven days per week, and that he needed to rest and a proper accommodation.  Their response was to say "Welcome to Nalco".

38.     Also Aponte made it clear that the monthly meetings were too long because the people didn't respect the schedule, thus usually starting the meetings late.  Most of

13

the times, Aponte would be forced to leave the meeting in order to take his meals on time. Aponte recalls that Castillo always, upon seeing him, began to ask about how much weight he had lost since their last meeting and when Aponte answered the question, Castillo always began to make jokes about it.

39.     Aponte's Chiropractor told Aponte words to the effect that 'driving for long hours is killing your back' and 'that job (referring to Nalco) is going to kill you'. Aponte had repeatedly informed the Nalco management, in particular Mr. Ashok Duggal and Mr. Jorge Ortiz by phone and in person, about his health problems. Aponte informed he couldn't be on the road driving everyday between 4 to 6 hours from Toa Baja to Guayama, to Carolina, to Las Piedras. Aponte referred that Nalco had customers in Barceloneta and Vega Baja that were closer to his home, and he could instead have those accounts to limit his time driving on the road.

40.     Nalco's facetious reaction to Aponte's legitimate needs was: "Welcome to Nalco".

### Customer Complaint Justification- Sheer Pretext

41.     Aponte was hired by Nalco aware of Aponte's technical background and technical "edge".

42.     Nalco benefitted from and exploited Aponte's technical background and superior technical expertise.

43.     When Nalco decided to dismiss Aponte without cause it concocted a "record" of alleged customer complaints.

44.     Aponte has answered under penalty of perjury each and every one of Nalco's pretexts, exposing their true nature by explaining the reality behind Aponte's excellent and dedicated provision of service to Nalco's clients being serviced by Aponte.

### Other Acts of Harassment Triggered by Aponte's Diabetes

14

14050616v.6

45.     Aponte was subjected to a hostile work environment by Castillo starting on or around 2001, until the end of his employment with Nalco, due to his ADA protected condition of Type II diabetes.

46.     Specific instances of Castillo's conduct include: Insistent disparaging remarks about Plaintiff's diabetes-induced weight and girth; Directing demeaning and ridiculing comments towards Aponte for failing to physically "keep-up", due to his medical condition; Refusing to provide Aponte with a minimum reasonable accommodation, such that he could be properly nourished, medicated and rested to fulfill his duties; Imposing on Aponte working conditions which endangered his health and wellbeing by preventing him from adequately monitoring and reacting to his chronic condition.

47.     Aponte was subjected to a sexual and gender based hostile work environment by Castillo starting on or around 2001, until the end of his employment with Nalco.

48.     Specific instances of Castillo's conduct include: Persistent harassment insisting that Aponte participate in binge-drinking in Nalco sponsored employee and client outings; Persistent harassment insisting that Aponte participate in philandering, womanizing and sex-procurement in Nalco sponsored employee and client outings; Subjecting Aponte to ridicule and disparaging remarks in the presence of his colleagues, for refusing to engage in the above behavior; Subjecting Aponte to ridicule and disparaging remarks for failing to conform to Castillo's stereotype of acceptable male behavior.

49.     Aponte, as well as all other fellow employees of Puerto Rican national descent, were subjected to a hostile work environment by Nalco management, including but not limited to, the individuals named in this complaint.

15

14050616v.6

50.    All individuals perpetrating or allowing and promoting the national-origin based discriminatory acts are non-Puerto Rican, foreign nationals, motivated by their hostility towards Puerto Ricans.

51.    Aponte endured the national-origin based discriminatory acts starting on or around 1998, and all throughout the date of his termination on or around July 23rd, 2008. This coincided with the arrival of Mr. Jose Medina (Medina) as Sales Manager, Medina being a Venezuelan national. Medina, soon after his arrival, fired four employees of more than 40 years of age, two of them being diabetics all of which is of Aponte's personal knowledge.

52.    Specific instances of conduct by Nalco management which suggest a national-origin based discriminatory animus include: persistent derogatory comments towards Puerto Rican work ethics and habits; demotions aimed specifically to Puerto Ricans, under threat of termination, while less qualified foreign nationals were brought in as new hires.

53.    Aponte's discharge from Nalco was made in favor of a less-qualified, younger (under 40 years of age), non-Puerto Rican foreign national (Colombian like Castillo), who  subsequently filled Plaintiff's role and duties, and assumed Plaintiff Aponte's client base at the time of dismissal.

54.    All throughout the period from 1996, until July 23rd, 2008, Aponte proved himself as a qualified employee and professional, for which he repeatedly received accolades from colleagues, clients and Nalco management outside of the Puerto Rico operation.

55.    Nalco, on the other hand, continued to have client demand for Aponte's skill set, as he was replaced by a less qualified, less experienced younger foreign national, without apparent need for medical issues accommodation.

56.    Aponte - without cause or justification - was further subjected to arbitrary and discriminatory decisions to exclude him from: training and continued education

16

opportunities; work tools and equipment replacement programs; Nalco official communications and e-mail distributions; internal and customer meetings in which his participation would be otherwise essential.

57.     Defendants acted within the scope of their employment as agents of Nalco, under the supervisory control of all named defendants and other Nalco Directors, Officers, Officials and Management.

58.     Defendant's discriminatory conduct leading to the eventual termination of Aponte, created a work environment extremely detrimental to Aponte's emotional and physical health, interfered with his work performance, and caused Plaintiff acute emotional distress necessitating medical treatment and consequent medical expenses, which have only become aggravated since the date of termination.

59.     All injuries suffered by Plaintiff are as a direct and proximate result of the grossly negligent and culpable actions and omissions of all the defendants, which were taken in reckless disregard of and in deliberate indifference to Plaintiff's constitutional rights.

B.     Defendants:

Aponte was hired as an Applications Engineer for Nalco in June 1996.  Aponte's duties as an Applications Engineer were technical and did not directly involve sales.  Indeed, none of Aponte's prior work experience involved the sales of products or services, and his responsibilities were of a technical nature.  Aponte understood, however, that employees who began working as Applications Engineers could become District Representatives, who in addition to providing technical assistance to customers, are responsible for generating sales.

On or about 1997, Aponte became a District Representative for Nalco.  As such, Aponte was responsible for "ensur[ing] order and revenue growth of Company products and services to

17

assigned customer and prospect accounts by analyzing and meeting customer needs." Aponte's responsibilities included:

- calling on existing customers and maintaining good client service and relationships so that the client would not go to a competitor;

- servicing assigned accounts by analyzing needs and requirements and recommending solutions;

- establishing selling strategy and tactics;

- cultivating new clients and establishing new accounts;

- achieving annual sales targets.

- responding to client requests for information about Nalco products and services .

- timely preparing various different types of reports, including reports summarizing his findings following client visits and other reports to keep management informed of his activities .

When Aponte became a District representative in 1997, he had an annual sales target of approximately $350,000. At the time, Aponte was responsible for the Pfizer- Barceloneta and Abbott accounts. On or about 1999, while Aponte was the District Representative for the Abbot account, Abbott ceased to be a Nalco customer.

In 2000, Aponte transferred back to a technical role within Nalco to a position as an Applications Engineer. In this capacity, Aponte was no longer responsible for selling or meeting sales targets and was no longer eligible for commissions. Starting in January 2005, Aponte began reporting to Ashok Duggal, Area Manager. Duggal, who had begun working for Nalco at the same time as Aponte and whom Aponte had met years before, was also Aponte's friend. Duggal, reported to Jorge Castillo (Colombian), Sales Manager, who was based in Colombia.

In late 2006, Aponte returned to the position of District Representative and was again responsible for generating sales. In 2007, Aponte's sales goals included increasing annual sales by approximately 11 to 12%. The accounts he was responsible for were the Lilly PR-2, Lilly

PR-5; Lilly PR-6, Smurfit-Stone, Amgen, Warner Chilcott, Baxter-Guayama, and Chevron Phillips.

Not long after Aponte's return to the District Representative position, however, Nalco began to receive customer complaints about Aponte's performance.   Specifically, Aponte's clients complained that his visits were inconsistent, that he did not submit reports on time, that he failed to respond to their inquiries, and that he took excessively long to resolve certain issues. Duggal counseled Aponte repeatedly about these issues. Specifically:

- In February 2007, Duggal advised Aponte that several customers, specifically Baxter,  had reported that they were dissatisfied with Aponte's level of service.

- Also in February 17, 2007, Duggal notified Aponte that he had not received the monthly reports for January and that it was imperative that Aponte submit monthly reports no later than the 3rd day of every month.  Duggal told Aponte he was on probation.

- In March, 2007, Duggal advised Aponte that Chevron Phillips was very displeased with Nalco's services citing a lack of consistency, the failure to submit timely reports and a lack of attention to special projects. Duggal asked Aponte to stabilize the account noting that Nalco was at "high risk" of losing the account. Duggal also told Aponte he was concerned because many of Aponte's clients were weak.

- In May, 2007, Duggal counseled Aponte that Warner Chilcott was not satisfied with the level of service it was receiving and that he was counting on him to stabilize the account, particularly since Warner Chilcott was being aggressively approached by Chemtreat, a Nalco competitor.

- On August 14, 2007, Duggal  discussed with Aponte overall client satisfaction issues and his failure to meet sales targets and ultimately placed Aponte on a Performance Improvement Plan (PIP). Duggal specifically discussed with Aponte service deficiencies at Baxter and Warner Chilcott. As part of the Performance Improvement Plan, Duggal counseled Aponte to conduct business reviews for all his clients within 45 days and send customer feedback surveys to all his clients and follow up on their completion.  Duggal advised Aponte that his year to date sales we down 11% when compared to the prior year and that  Aponte had to meet a minimum 10% net sales growth for 2007 and could not lose any accounts. Duggal further counseled Aponte to improve client rapport and service by adapting to client needs and responding to their requests in a timely fashion; and to submit all monthly administration, expense and other reports on time.

- Despite the provision of  Aponte's PIP, Warner Chilcott cancelled its contract with Nalco in 2007.

14050616v.6

- On May 3, 2008, Duggal advised Aponte that Amgen, too, was complaining of a decline in service and asked Aponte to take immediate action. Duggal warned Aponte that it was critical for him to improve and to prevent the loss of more customer accounts.

- In May and June, 2008, Duggal sent Aponte various emails inquiring as to his failure to submit monthly and other client and administrative reports in a timely manner.

- On June 20, 2008 Duggal advised Aponte that he was very displeased with his performance and that he was not performing to the level that was expected of a Nalco sales representative of his experience. Duggal noted that despite having sent Aponte various emails requesting an action plan detailing how Aponte would improve his quality of service, he had failed to receive a response from Aponte.

Then, in June 2008, personnel from Amgen reported to Nalco that they did "not perceive from [Aponte] a professional level of service at the high standard that Nalco was supposed to deliver"; that they felt they were only buying chemical products from Nalco, instead of service or solutions; they did not feel like Aponte was "taking care of their equipment and systems," that his "communication and reporting ha[d] been very low to none;" that Aponte had failed to deliver a requested report . In sum, Amgen reported that Aponte's service was not valuable and that they had contacted Chemtreat, a Nalco competitor. In an effort to salvage the client relationship, Aponte was removed from the Amgen account.

It was a result of these well documented performance deficiencies and Aponte's failure to improve that Duggal recommended that Aponte be discharged. On July 23, 2008, Duggal and Ortiz met with Aponte and informed him that his employment was terminated, due his poor performance including losing client business, not following up or responding to client requests for information, and not submitting reports in a timely fashion. Indeed, Aponte testified that on the day of his termination he understood he was being let go for performance reasons including losing client business, putting half a million dollars in business at risk, not following up on client requests and failing to timely submit reports.

14050616v.6

## V.    Damages Claimed

A.    <u>Plaintiff:</u>

1.    *Law No. 80 Statutory Damages*:  Aponte had worked at NALCO for the previous 12 years from his dismissal. Aponte is entitled, therefore for a compensation ("mesada") equal to three months of his gross monthly salary, i.e., the sum of $24,911.25, plus an additional compensation of his compensation equivalent to two weeks, multiplied by the number of years he worked at NALCO, i.e., an additional compensation of $45,990, for a total of $70,901.25 under his Act. 80 dismissal claim.

2.    *Unpaid Wages and Other Compensation*:  Unpaid wages and other Compensation by Week to date based on a weekly entitlement for wages and other compensation of $1,916.25, for 176 weeks that have transpired since employee dismissal for a total of unpaid wages and other compensation of $337,260.00.

3.    *Back Pay*:  Full back pay of not less than $500,000.00 and/or loss of earnings in the amount of $1,004,299.00 as substantiated by income data and the report by economist's Leroy Lopez' of Advanced Research Center, Inc.

4.    *Compensatory Damages*: Compensatory damages in the amount of $50,000.00 for medical expenses.

5.    *Pain and Suffering*:  In the amount of not less than $250,000.00 for the pain and suffering of Donato Aponte and $150,000.00 for the pain and suffering of Belkis Santiago

6.    *Puerto Rico Law Tort*:  Civil liability under Puerto Rico's Act 100 of June 30, 1959, P.R. Laws Ann. Tit. 29 § 146, et seq., in the sum of not less than $141, 802.50 ($70,901.25 x 2).

21

7.     *Puerto Rico Law Tort: Constitutional Tort* for violating the dignity and privacy of Plaintiffs under the Puerto Rico Constitution, under Art. II Secs. 1 & 8 and applicable jurisprudence. See, cases cited at Section VI A  ¶27, in the sum of not less than $250,000.00 for the pain and suffering of Donato Aponte and $150,000.00 for the pain and suffering of Belkis Santiago.

8.     *Attorney's Fees*: Attorney's fees and the other costs of this action under 42 U.S.C. § 1988, Civil Rights Attorney's Fee Act and the costs and disbursements of this action.

B.     Defendants:

1.     None.

2.     Defendants dispute that Plaintiff is entitled to damages on any basis. Furthermore, Defendants note that Plaintiff's damages calculations are incorrect.  At the time of his separation from employment, Aponte had an annual salary of $59,093.00, not $99,645.00 as Plaintiff alleges.

## VI.     Legal Controversies and Defenses

A.     Plaintiff:

### Factual Controversies

Plaintiffs request the court to take note of the following controversies which are clearly factual in nature:

### Whether Nalco Clients Logged Complaints Against Aponte:

1.     Nalco contends that its clients logged several complaints regarding Aponte's performance, namely Warner Chilcott and Amgen Pharmaceutical.

2.     Aponte disputes this contention pointing to Nalco's own documentary evidence, which is absolutely barren of any communication, formal or informal, authored, originated, or created by any of the complainants, and which implicates that Aponte indeed was

exhibiting performance issues. The only communications to be found within Nalco's documentary evidence which reflect negatively on Aponte are those authored, originated, created, and issued by the very perpetrators of the unlawful discriminatory acts committed against Aponte, namely Ashok Duggal, Jorge Castillo, and Jorge Ortiz. This documentary evidence purports to contain statements made by Nalco's clients, revealed to either Castillo or Ortiz, who in turn conveyed the communication to Duggal, who then purportedly issued the documentary evidence to Human Resources representatives. Said documentary evidence, besides constituting Hearsay not subject to exception inadmissible at trial, creates a negative inference against its proponent, as it suggests to the trier of fact that no such client complaints exist, or ever existed, simply because they never happened.

3.      Aponte also points to a "smoking gun" e-mail of sorts, sent by Duggal to Human Resources on July 1st, 2008.

4.      <u>First</u>, it opens with: **"As per your request, I am sending here a summary of the reasons why we still need to terminate Donato Aponte's employment with Nalco.",** clearly indicating that Duggal's desire to get rid of Aponte predated any supporting documentation which would justify such employment action, and that he sought guidance from Human Resources as to what type of "paper stuffer" documentation he would need to get his way. For normal human beings, operating in normal organizations, without unlawful discriminatory agendas to conceal, the documentation, reasons, and justification for employee termination predate the termination decision, such that they are readily available in the employee's file at issue, making an inquiry such as Duggal's unnecessary. Under such a scenario, Duggal's communication to Human Resources would be something to the effect of: **"having reviewed the employee's file, what course of action would you recommend.",** or something to that effect.

14050616v.6

5.      Second, the first performance incident relied on by Duggal occurred on May 21st, 2007, more than a full year before the e-mail. If Aponte's performance was so deficient that it warranted termination, why didn't Duggal act promptly, and in its stead remained silent about his objection and belatedly raised it in haste to get rid of Aponte? Duggal's failure to make a timely assertion constitutes waiver and forfeiture of Nalco's right to terminate Aponte legitimately. Aponte will also show that his "hastily thrown together" termination package responded to the fact that Duggal had already secured his replacement in an individual who is not in any of the statutorily protected classes on which the instant claim is based.

6.      Third, the e-mail claims: "Several clients he was responsible for, have already sent in the past few months, email with complaints and asking what has happened with Nalco's service.", while, as pointed out above, Nalco has failed to produce any communication issued by any of the complainants, while simultaneously stating in its stead that: **"Jorge Ortiz sent an email describing what happened on 6/24"**, again, a perpetrator vouching for a statement purportedly made by a third party.

### *Whether Aponte Failed to Submit Timely Reports*:

7.      Nalco contends that Aponte failed to submit timely expense reports, making reference to the **"delinquency reports"** issued by the **"Eagls"** system maintained independently by third-party processor Bank of America, which flagged Aponte as the main offender.

8.      Aponte disputes this contention pointing to Nalco's own documentary evidence, which is absolutely devoid of any reports coming out of **Eagls.**

9.      Aponte also points to Nalco's own documentary evidence, specifically to e-mails of April 24th, 2008, and June 9th, 2008, where several Nalco employees were chastised by Duggal for not having timely submitted the same report, in a rather intemperate tone and

24

language. None of those other employees, who repeatedly warranted such lack of courtesy from their supervisor was eventually terminated, as was Aponte.

   10. Aponte also points to Nalco's own documentary evidence, specifically his response on April 25th, 2008, to Duggal's e-mail of April 24th, 2008, where he advises Duggal that he looks after his clients' interests even on weekends and late nights, as well as Duggal's reply acknowledging Aponte's dedication, and accepting as valid Aponte's justification for having submitted reports after the established deadline.

### *Whether Aponte's Revenue Metrics Were Declining*:

   11. Nalco contends that Aponte's revenue metrics were declining, and that Nalco has lost substantial amount of business on account of Aponte.

   12. Aponte disputes this contention pointing to Nalco's own documentary evidence, which does not contain a single financial statement, customer account sub-ledger, or any Nalco official business record which supports such a contention. Nalco's own lack of said disclosure requires an adverse inference from a fact finder, as it would suggest that business documents readily available to Nalco should be able to support such a contention, and that their absence only responds to the fact that they would be unfavorable to Nalco's position here asserted.

### *Whether Aponte Was Replaced*:

   13. Nalco contends that Aponte was not replaced.

   14. Aponte disputes this contention and points to his own testimony via deposition that he in fact was replaced with a younger, lesser trained and less experienced Colombian, a Mr. Jaime Suarez. That Suarez and Aponte's tenure overlapped does not belie such a contention, as Aponte acknowledges that Suarez was making the same client calls as he was, in an obvious attempt to smooth-out the transition from his eventual termination.

14050616v.6

***Whether Aponte's Performance Caused His Discharge***:

15.     Nalco contends that only Aponte's performance issues are to blame for his discharge. Aponte disputes this contention by pointing to an overwhelming amount of evidence that such reasons are pretextual. Aponte further disputes this contention with an overwhelming amount of evidence that shows that Nalco reacted unfavorably to the onset of his diabetic condition, and that such reaction exacerbated to an overt harassment on account of his nationality and his not conforming to his superiors gender stereotype.

***Whether Aponte's Diabetes Triggered Overt Gender and Racial Discrimination***:

16.     Nalco contends that Aponte was not subjected to gender and racial based discrimination. Aponte disputes that contention by pointing to evidence demonstrative that as soon as he suffered the onset of diabetes, he became the subject of disparaging remarks ridicule on account of his nationality and his not conforming to his superiors gender stereotype, as well as being subjected to worsened and more adverse working conditions.

### *Legal Controversies*

### *Law 80*

17.     Law 80 requires companies to adhere strictly to the concept of seniority, being obligated to retain with preference those employees with the greatest seniority, as long as there are vacant positions which the employee can perform, or those which are occupied by employees of less seniority in employment, within the same job classification. **29 LPRA §185c.** The only exception to this rule of seniority retention is extremely limited — when there is a "clear difference" in terms of "efficiency or capacity" of the employee, in which case seniority can be bypassed. **Id**. In effect, the Company must present clear evidence, which demonstrates why the less senior employee was favored.

18.     If these rules are not followed, then the court must determine that there is no "just cause" for the dismissal. This determination has the effect of conclusively deciding against the employer for Law 80 purposes and of activating the presumption of discrimination for Law 3, Law 100 and Law 69 purposes. *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico*, 152 *F.3d 17, 27-28 (1st Cir. 1998).*

### *Plaintiff's Mixed Factual and Legal Controversies*

### *Whether Aponte was the Victim of Racial and Gender Discrimination:*

19.     Aponte contends and Nalco disputes that he was the victim of racial and gender discrimination, in response and as part of the discrimination he suffered on account of his diabetes at Nalco, by being subjected to a hostile work environment leading to his eventual dismissal, all of which is prohibited by both federal and Puerto Rico law, **29 LPRA §469 et seq.**, *as well as **Title VII, 42 U.S.C. §2000e et seq.**, and **42 U.S.C. §1981**.* Chadwick v. Wellpoint, 561 *F.3d 38 (1st Cir. 2009);* Franceschi v. Hyatt Corp., *747 F.Supp. 138, 143 (D.Puerto Rico, Perez-Gimenez, J. 1990).*

### *Whether Nalco Can Demonstrate "Just Cause" For the Employment Actions Against Aponte.*

20.     Aponte asserts that his discharge was unjust as defined in Law 80. Pursuant to Law 80, Nalco has the burden of proof on this issue. A determination that there was no just cause for the termination entitles Aponte to the statutory separation pay, and entitles him to a rebuttable presumption of discrimination.

21.     Nalco will not be able to meet their burdens under Puerto Rico law of demonstrating that they had just cause for the discharge, both with respect to the anti-discrimination statutes and with respect to the alternative Law 80 claim. Nalco's only theory is that termination was justified for performance issues.

27

14050616v.6

22.    Aponte contends that defendants cannot demonstrate that there was "just cause" for the discharge, as defined in the applicable local law statutes. First, there was not, in fact, a performance based termination. Second, Aponte was substituted with a younger, lesser trained and less experienced Colombian, simultaneously and as soon as Aponte was fired.

### Whether Nalco Can Demonstrate a Legitimate Basis for Their Employment Decisions Pursuant to Federal Law.

23.    Aponte's position is that Nalco cannot justify its adverse employment actions under federal law, which prohibits disability, gender based, and racial/national origin discrimination. As noted above, their explanations are contradictory and unsupported. Aponte contends that the true reason for dismissing him was his onset of diabetes, together with, and exacerbated by, his racial/national origin, and non-conformance with imposed gender stereotypes.

### Whether the Purported Legitimate Business Reasons are Mere Pretexts:

24.    Nalco's claim of just cause is mere pretext, given the factual inconsistencies in their explanations of their decisions, their mendacity, and their lack of proof. *Reeves v. Sanderson*, 530 U.S. 133 (2000). The inference of pretext is bolstered by all of the inconsistencies, lack of logic and prevarications amply discussed in Aponte's factual section above. Pretext and discrimination can be inferred upon a showing that the employer's proffered "explanation is unworthy of credence" **Id, at 147**, due to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons". *Santiago-Ramos v. Centennial*, 217 F.3d 46, 56 (1st Cir. 2000). As to many of these justifications, moreover, Aponte will demonstrate that Nalco's "nondiscriminatory reasons were after the- fact justifications" **Id**.

14050616v.6

25.     Also relevant to the ultimate issue is proof relating to the discrimination itself, such as discriminatory comments or behavior on the part of decision-makers or a "general atmosphere of discrimination", which "may be considered along with other evidence bearing on motive in deciding whether a Title VII plaintiff has met thr burden of showing that the defendants' reasons are pretexts." **Id., at 55**. All of these elements are present in the case at bar.

### *Whether Aponte Made Out a Tort Injury*:

26.     Although this injury is subsumed in other claims, Plaintiffs have suffered an injury in tort, pursuant to Articles 1801 and 1802 of the Civil Code, Civil Code, **31 L.P.R.A. sec 5141**. There is broad tort liability under Puerto Rico law. The Supreme Court has characterized the "fault" concept of Article 1802, as "infinitely all-embracing, so comprehensive as the human conduct" that "does not admit of limitations or exceptions of any nature", "of great breadth", "including all type of human transgression, be it in the legal or the moral order". *Santini v. Serv Air Inc.,* *137 D.P.R. 1, 8-9 (1994)* (internal cites omitted and translation supplied). The concept of fault is as broad as the conduct of human beings and any "fault" which causes or produces damage. *Colón v. Romero Barceló, 112 D.P.R. 718 (1982).*

27.     Moreover, the right to dignity and privacy under the Puerto Rico Constitution constitutes a constitutional tort under the **Puerto Rico Constitution, Art. II secs 1 & 8**. This right of privacy/dignity has been amply discussed by the Puerto Rico Supreme Court, which has characterized it as one of "supremacy", of the "highest hierarchy" in the Puerto Rico constitutional order, a "cornerstone" of the legal system, and one which "constitutes a crucial dimension in human rights". *Arroyo v. Rattan Specialties, 117 P.R.R. 43 (1986); Garcia Santiago v. Acosta, 104 D.P.R. 328 (1983); Figueroa Ferrer v. ELA, 107 D.P.R. 250 (1978).*

28.     The Puerto Rico Supreme Court has consistently applied the privacy/dignity to acts committed by private individuals and corporations, including those

29

occurring in the employment context. Both the First Circuit and this court have fully embraced these doctrines embodying intimacy and privacy rights, as well as protections against abusive attacks to one's personal dignity, integrity, honor and reputation. *Negron v. Caleb Brett,* 212 *F.3d 666, 670 (1st Cir. 2000); Robles-Vazquez v. Tirado Garcia, 110 F.3d 204, 207-209 (1st Cir. 1997); Kerr-Selgas v. American Airlines, 69 F.3d 1205, 1213 (1st Cir. 1995); Rivera-Flores v. PRTC, 64 F.3d 742 (1st Cir 1995); Machin v. Leo Burnett, 376 F.Supp. 2d 188 (D.Puerto Rico, 2005).*

29.     Moreover, in the context of labor disputes, when independent torts of constitutional breadth coincide with adverse employment actions, it is uncontested that an independent cause of action exists against the employer and/or its supervisors, directors, or other agents or representatives. Arroyo, *supra; Segarra Hernandez v. Royal Bank, 145 D.P.R. 178 (1998); Kerr-Selgas; Machin; Solla-Figueroa.*

30.     The situation faced by Aponte at Nalco was an assault on his dignity. Puerto Rico tort law is certainly sufficiently broad to address conduct of this nature.

B.     Defendants:

Defendants have asserted the following defenses:

1.     Plaintiff cannot state a claim for disability discrimination or failure to accommodate because he cannot show that his diabetes rendered him a qualified individual with a disability.
2.     Plaintiff cannot state a claim of discrimination on any basis against co-Defendant Ashok Duggal in his personal capacity because neither the ADEA, ADA nor Title VII provide for individual liability.
3.     Plaintiff cannot establish a prima facie case of age, national origin or disability discrimination (or discrimination on any basis) because he was not meeting Nalco's legitimate performance expectations as a District Representative.
4.     Plaintiff cannot establish a prima facie case discrimination (on any basis) because there are no similarly situated employees who received more favorable treatment.
5.     Plaintiff cannot establish a prima facie case of age discrimination because he was not replaced in his position as District Representative.

30

6.      Defendants have proffered legitimate nondiscriminatory reasons to explain Plaintiff's termination.

7.      Plaintiff cannot show that Defendant's legitimate non-discriminatory reasons are a pretext for discrimination based on his age, national origin, or alleged disability.

8.      Plaintiff was not subject to any harassing conduct based on any protected characteristic.

9.      Defendants' conduct was not sufficiently severe or pervasive so as to constitute harassment.

10.     Plaintiff failed to reasonably avail himself of Nalco's policies against discrimination and harassment (Faragher-Ellerth defense).

11.     Plaintiff cannot establish a prima facie case of either  discrimination under Law 100.

12.     Defendants had "just cause" to terminate Plaintiff's employment.

13.     Plaintiff failed to mitigate his damages.

The evidence in this case will show that Aponte's termination from his employment with Nalco was the result of a pattern of well-documented performance issues, and had nothing to do with his age, gender, national origin or the fact that Aponte had diabetes.  Indeed, Aponte's sales revenue was well below the expected amount and decreasing, he consistently failed to submit reports in a timely manner, and numerous Nalco clients complained about Aponte's level of service.  The evidence will also show that Aponte was not subject to a hostile work environment.

## ADEA, ADA and Title VII Standard

Under Title VII and the ADEA, Plaintiff has the burden of establishing that Nalco intentionally discriminated against him on account of his, age, national origin or alleged disability. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 143 (2000); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).[1]  Plaintiff may attempt to prove discrimination by presenting direct evidence of discrimination. Lacking direct evidence of discrimination, however, Plaintiff must proceed pursuant to the familiar burden shifting

---

[1] Plaintiff is also unable to state a claim of discrimination against co-Defendant Ashok Duggal in his personal capacity because neither the ADEA, ADA nor Title VII provide for individual liability. Likewise, Plaintiff's supplemental state law claims for discrimination under Law 100 fail for the same reasons as Plaintiff's federal claims.

14050616v.6

framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff must establish a *prima facie* case of discrimination by proving: (1) that he belongs to a protected class (on account of his, age, national origin and/or alleged disability); (2) that his job performance met or exceeded Nalco's legitimate expectations; (3) that he suffered an actual adverse employment action; and (4) that Nalco sought someone of roughly similar skills or qualifications to perform substantially the same work.  *See Gomez Gonzalez v. Rural opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010); *Torrech Hernandez v. General Electric Co.*, 519 F.3d 41, 48 (1st Cir. 2008); *Davila v. Corporacion de P.R. para la Difusion Publica*, 498 F.3d 9, 15 (1st Cir. 2007). The elements of the prima facie case in the context of an age based termination are slightly different in that Aponte must show that Nalco "subsequently filled the position, demonstrating a continuing need for the plaintiff's services." *Id. (citing Velez v. Thermo King de P.R. Inc.*, 585 F.3d 441, 447 (1st Cir. 2009)).  Upon a sufficient *prima facie* showing, the burden shifts to the employer which must only articulate a "legitimate non-discriminatory basis for its adverse employment action." *Torrech-Hernandez*, 519 F.3d at 48 (*citing Hoffman v. Applicators Sales & Serv. Inc.,* 439 F.3d 9, 17 (1st Cir. 2006)).  Once the employer articulates a "facially adequate explanation" for the challenged actions, plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is pretextual and that the real reason was discrimination. *Davila*, 498 F.3d at 16; *Velazquez Fernandez*, 476 F.3d at 11.  In this third stage, the plaintiff must show that the "reason given by the employer for the discharge is pretextual, and moreover, that it is pretext for age [national origin or disability] discrimination." *Davila,* 498 F.3d at 16.

14050616v.6

**Aponte Cannot Establish a Prima Facie Case of Discrimination On Any Basis**

**Aponte Is Not a Qualified Individual with a Disability**

At the outset, Aponte's disability discrimination based claims and his alleged failure to accommodate claims fail because he cannot show that he is a "qualified individual with a disability." To do so, he must show that: (1) he suffers from a mental or physical impairment; (2) the life activity limited by the impairment qualifies as "major"; and (3) that his impairment substantially limits that major life activity. *See Carreras v. Sajo Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010)(*citing Calero-Cerezo*, 355 F.3d at 20). Aponte bears the burden of proof on this issue. *Id* at 32.

It is undisputed that Aponte reported he was diagnosed with Type II diabetes on August 26, 2005. But, having diabetes, by itself, does not render Aponte disabled. *Id.* at 33 (*citing Albertsons's Inc v. Kirkingburg*, 527 U.S. 555, 566 (1999)). The existence of a disability must be determined on a case by case basis and the inquiry is "fact intensive and individualized." *Sepulveda v. Glickman*, 167 F. Supp 2d 186, 191 (D.P.R. 2001); *Albertsons's*, 527 U.S. at 566; *Bailey v. Georgia Pacific Corp.*, 306 F. 3d 1162, 1167 (1st Cir. 2002).[2]

Aponte claims that he is substantially limited in the major life activity of eating but he cannot show that he is substantially limited. To do so, it is Aponte's burden to submit "evidence that the extent of the limitation caused by [his] impairment in terms of [his] own experience is substantial." *Toyota*, 534 U.S. at 198, 122 S.Ct. 681. Aponte testified that he leads a normal life without any significant limitations: he is able to get out of bed, brush his teeth, shower, shave, get dressed, drive a car, vacuum, do laundry, make his bed, perform work around the

---

[2] Notably, the ADA Amendments Act does not apply to Aponte's claims inasmuch as the amendment became effective January 1, 2009 and the First Circuit has held that they are not retroactive. *See Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009).

14050616v.6

house, buy groceries, prepare meals, work, play with his children, take them swimming, fly kites with them, ride bicycles and that he even pursues the hobby of growing Bonsai trees. Aponte's sole alleged limitations are that he sometimes gets tired. Aponte claims that during his employment he sometimes had to leave meetings because he had to eat and on other occasions, chose to ate food that he should not be eating because that was what was provided by Nalco at meetings. Yet, these allegation hardly show that Aponte is substantially limited in the major life activity of eating.

Furthermore and significantly, to assess the degree of any limitation of a major life activity, courts take into consideration "the effectiveness, side effects and burdens of a plaintiff's mitigating measures." *See Id.* at 33. Aponte takes medication every day and tests his blood sugar at least once daily and he successfully keeps his diabetes under control by following a diet, eating snacks and having sufficient rest. Accordingly, Aponte cannot show that his diabetes substantially limits any major life activity. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483-484 (1999) (noting that a diabetic whose illness does not impair his or her daily activities and whose condition is controlled through treatment and, if so controlled, is not be considered a disabled); *Carreras,* 596 F.3d at 34 (plaintiff whose diabetes required dietary adjustments, medication, a fixed meal schedule and avoidance of certain foods was not disabled under ADA; *Sepulveda,* 167 F. Supp. 2d at 191 (internal citations omitted)(medical condition that requires medication, fixed meal schedule and timely snack breaks without more does not amount to a substantial limitation under ADA).

### Aponte Was Not Meeting Nalco's Legitimate Performance Expectations.

Aponte will not be able to demonstrate that he was meeting Nalco's legitimate expectations at the time of his termination. As a District Representative for Nalco, Aponte was responsible for achieving sales targets. To do this, Aponte had to service existing clients to make

34

sure they continued to buy products and services and did not go to a Nalco competitor. He also was responsible for growing the business by cultivating new clients and establishing new accounts. Aponte's performance was lacking in both respects.

First, several of the clients whose accounts Aponte was responsible for reported they were dissatisfied with his service that they were considering switching providers. Despite being counseled about these issues on numerous occasions, Aponte's poor performance persisted. Specifically:

- In February 2007, Duggal placed Aponte on probation after informing him that several customers had reported that they were dissatisfied with Aponte's level of service .

- In March, 2007, Duggal advised Aponte that Nalco was at "high risk" of losing the Chevron Phillips account and that he was concerned because many of Aponte's clients were weak .

- In May, 2007, Duggal counseled Aponte about that Warner Chilcott was not satisfied with the level of service and that he was counting on him to stabilize the account inasmuch as Warner Chilcott was being aggressively approached by Chemtreat, a Nalco competitor.

- On August 14, 2007, Duggal placed Aponte on a performance improvement plan (PIP) specifically concerning service deficiencies and overall client dissatisfaction with Baxter and Warner Chilcott, and Aponte's failure to meet his sales goals. Specifically, Duggal discussed with Aponte that Baxter was very close to terminating Nalco's contract and switching to Chemtreat and that Warner Chilcott reported similar deficiencies .

- On May 3, 2008, Duggal advised Aponte that Amgen was complaining of a decline in service and asked Aponte to take immediate action. Duggal warned Aponte that it was critical for him to improve and to prevent the loss of customer accounts .

The complaints that Nalco received from Aponte's clients were strikingly similar in that they reported that Aponte's visits were not consistent, that he did not submit reports on time, that he failed to respond to their inquiries, and took excessively long to resolve certain issues. Duggal also counseled Aponte on numerous occasions due to his failure to submit expense reports, district reports and other administrative reports, on time .

14050616v.6

Aponte was also failing to meet his sales targets; as of June 30, 2007, Aponte's year to date sales were down 11% or approximately $30,000 when compared to 2006.  Even though Aponte's PIP provided that he could not lose any clients during 2007,  that year Aponte lost the Warner Chilcott account.  A few months later, in June 2008, personnel from Amgen, another client account for which Aponte was responsible, reported that they did "not perceive from [Aponte] a professional level of service at the high standard that Nalco was supposed to deliver"; that they felt they were only buying chemical products from Nalco, instead of service or solutions; they did not feel like Aponte was "taking care of their equipment and systems," that his "communication and reporting ha[d] been very low to none;" that Aponte had failed to deliver a requested report .  In an effort to salvage the Amgen relationship, Aponte was removed from the account.

Based on these undisputed facts, Aponte will not be able to show that he was meeting Nalco's legitimate performance expectations and will remain unable to make his prima facie showing.  That Aponte may claim that provide numerous excuses for his deficient performance and his conclusory assertions that he was en expert in certain areas, and that he always complied is irrelevant , particularly since Aponte admits that he was repeatedly counseled about his poor performance, admits that he was late submitting reports and admits that he was not meeting sales targets.  Aponte's own assessment of his performance is irrelevant and Aponte cannot show that Duggal did not honestly believe that Aponte's performance was deficient.

### No Similarly Situated Individuals Were Treated More Favorably.

Aponte will also be unable to show that any similarly situated employees outside of his protected classes were treated more favorably .  *See Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002)(*citing Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 38 (1st Cir. 2001).  To do so, Aponte must show that that employees "similarly situated to [him] in all relevant

36

14050616v.6

respects were treated differently by the employer." *Garcia v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir. 2008)(*citing Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)). Although the comparisons "need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." *Id.*

Aponte only claims that two employees, Edward Bray and Francisco Casanova, both of whom are Puerto Rican, received more favorable treatment than he did.   Specifically, he claims that Bray and Casanova lost several accounts but neither was terminated. Instead, he claims, Bray was permitted to resign from Nalco to form his own company (which currently provides services to Nalco) and Casanova is still employed.  Aponte, however, has no personal knowledge concerning any alleged problems Bray or Casanova had with clients. He also does not know, whether Bray or Casanova, like him, were ever on probation or placed on a performance improvement plan.  Furthermore, Aponte admits that Casanova was very good at selling and getting new accounts.  Accordingly, he cannot show that wither one of these employees is similarly situated to him.  Moreover, Aponte's claims of national origin discrimination are foreclosed, since he fails to identify even one non Puerto Rican employee whom he claims was treated better. That is so because at the time of Aponte's termination and even to this day, the vast majority of Nalco's district  representatives at Aponte's former office are Puerto Rican.

### **Aponte Was Not Replaced.**

While Aponte will allege that he was replaced by Jaime Suarez (Colombian), the evidence will show that Aponte's duties were absorbed by the remaining district representatives in the region.  Suarez, who was hired approximately two weeks <u>before</u> Aponte's termination, was as an hired as an Applications Engineer, not a District Representative, such that he did not replace Aponte.

14050616v.6

**Aponte Cannot Establish Pretext.**

Even if Aponte were somehow able to overcome his *prima facie* burden, his claims still fail because he has absolutely no evidence to show that Nalco's stated reason for terminating his employment--his deficient performance as evidenced by client complaints, failure to meet sales targets and loss of client accounts-- was pretextual. To do so, he must show that the reason is "false and that discrimination was the real reason." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2352 (2009); *Fontanez Nunez v. Janssen. Ortho*, 447 F.3d 50, 56 (1st Cir. 2006).

There is no evidence, other than Aponte's peculation and belief, to suggest that Nalco discharged him for any reason other than his well documented poor performance. Indeed, Aponte admits that on the day of his termination he was told and understood that he was being terminated for performance reasons including losing client business, not following up on client requests and failing to timely submit reports. Aponte likewise admits that prior to his termination, he had been counseled on multiple occasions concerning clients' dissatisfaction with his level of service for these reasons. Indeed, Aponte concedes that he had difficulty generating sales and that he was not meeting sales targets, and that these were responsibilities associated with being a District Representative for Nalco.

That Aponte may disagree with Nalco's decision is not probative of pretext. The relevant inquiry is whether Nalco subjected Aponte to adverse employment actions on the basis of his national origin, age or disability, not whether the decision was objective, wise, fair, or correct. In determining pretext, the court's "focus must be on the perception of the decision maker" that is, whether the employer believed its stated reason to be credible. *See Mesnick*, 950 F.2d at 824. There is no evidence whatsoever to suggest that Duggal, the decision maker in this case, did not

legitimately believe that Aponte's performance was poor, much less that he instead based the decision to end Aponte's employment on any protected characteristic.

Aponte may point to a few isolated incidents and remarks claiming they somehow reveal ageist, disability or gender based animosity. However, all the alleged remarks were made by Castillo, and there is no record evidence that Castillo was involved in the decision to terminate Aponte. Comments made by non decision makers who were not involved in the decisional process are not probative of discrimination. *Melendez v. Auto Germana, Inc,* 622 F.3d 46, 54 (1st Cir. 2010). At best, they are stray workplace remarks which are insufficient to establish discriminatory animus. *See Gonzales v. El Dia, Inc.,* 304. F.3d 63, 69 (1st Cir. 2002); *Ortiz Rivera v. Astra Zeneca,* 363 Fed. Appx. 45, 47-48 (1st Cir, 2010).

### Aponte Was Not Harassed

Likewise, the evidence will not support any Aponte's hostile work environment claim. Critically, all the conduct of which Aponte complains was allegedly perpetrated by one individual, Castillo. Castillo did not even work in the same office as Aponte, but was rather based in Colombia. To establish a hostile work environment claim, Aponte must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based upon his protected status; (3) the harassment was based upon her gender, race, national origin, or disability; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and the victim did perceive it to be so; and (6) some basis for employer liability has been established. *See Douglas v. J.C. Penney,* 474 F.3d 10, 15 (1st Cir. 2007) (quoting *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001); see also *Rodríguez Velázquez v. A.M.A.,* 502 F.Supp.2d 200, 209 (D.P.R. 2007) (explaining that "[i]t has been held that, similar to Title

14050616v.6

VII discrimination actions, ADA-covered individuals may assert hostile work environment claims premised on disability-based harassment"). In assessing whether there is a hostile environment in the workplace, courts look to the "totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *See Rodriguez-Robles v. Pfizer Pharm.*, LLC, 561 F.Supp.2d 180, 184-85 (D.P.R.2008) (*citing Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993)). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." *Mojica v. El Conquistador Resort & Golden Door Spa*, 714 F.Supp.2d 241, 260 (D.P.R. 2010) (*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Crespo-Vargas v. U.S. Gov't*, 573 F.Supp.2d 532, 551-52 (D.P.R. 2008). Likewise, the "mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 20. Simply put, "[t]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins." *Rosario v. Dep't of Army*, 607 F.3d 241, 247 (1st Cir. 2010) (*quoting Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir. 2002)).

Aponte's hostile work environment claim is premised on the following allegations:

- That Castillo occasionally asked him about his health, whether he had lost weight, and told him that he did not have energy or drive. Castillo, however, asked all district representatives about their weight because he wanted Nalco district representatives to have a certain image and like all other Nalco district representatives, wanted Aponte to always maintain a positive attitude and appearance so as to encourage clients to buy products and services from Nalco. Indeed, Castillo was concerned about district representative health and once brought in an employee to give a seminar about cholesterol in relation to being overweight

- Whenever he asked Aponte whether he had lost weight, Castillo allegedly touched Aponte's belly for 4 to 5 seconds.

- On one occasion, Castillo asked Aponte about his age, telling him that even

though he was older than Aponte, he (Castillo) had more energy that Aponte did.

- On approximately seven occasions over a 4 to 5 year period, Castillo used the phrases "no seas hueva" or "eres una hueva" when addressing Aponte, which Aponte interpreted to mean "don't be an asshole." However, Castillo used these phrases with everyone whenever someone would not do something that he wanted.

- Castillo occasionally asked Aponte that if a "hot girl put it in his face, would he eat it up," to which Aponte replied that he was not interested and changed the topic.

- Aponte will claim that Castillo expected him to drink but concedes that no one ever ordered him to drink. It was Aponte's choice whether or not to drink, what type of beverage to consume and how much of it to consume.

- During a 2005 or 2006 Nalco event, Aponte, who enjoys dancing and had danced voluntarily at other Nalco events, alleges he was forced to dance in the middle of a circle for approximately 10 seconds. Everyone was dancing in a circle and people would get in the middle of the circle and clown around. Everyone was having a good time and clapping and someone told Aponte that Castillo would not like it if he didn't dance, so he felt pressured to dance even though he did not want to.

Regardless of whether it is considered individually or collectively, this conduct does support a claim for hostile work environment. First, there is no evidence that any of this conduct was directed at Aponte based on a protected category (be it his age, national origin, gender or alleged disability). *See Quiles-Quiles v. Henderson*, 439 F.3d 1, 7(1st Cir. 2006)(a plaintiff must demonstrate that the hostile conduct was directed at her because of a protected characteristic); *Soto-Velez v. El Conquistador Resort The Waldorf Astoria*, 2011 WL 1261541, *7 (D.P.R., March 31, 2011) (plaintiff's ADEA hostile work environment claim failed where he failed to show that the alleged behavior was related to an age-based animus).

Second, this conduct is neither sufficiently severe or pervasive. Indeed, Castillo only traveled to Puerto Rico approximately 5 times a year for about a week at a time. At most, he would spend 3 to 4 four days of his visit with Aponte, and only 2 to 3 hours a day. In other words and at most, Aponte spent approximately 60 hours with Castillo each year. In addition, many of Aponte's interactions with Castillo revolved solely around business or family, and did not

41

include any conduct which Aponte considered inappropriate.  Because Aponte will not be able to

show that his work environment was "permeated with sufficiently severe or pervasive

discriminatory intimidations, ridicule, and insult to alter the conditions of his employment and

create and abusive work environment," his hostile work environment claim fails. *See Soto-Velez*

2011 WL 1261541 at  *8. (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, (1993)).

### Nalco is Entitled to the *Faragher-Ellerth* Defense.

Furthermore, Nalco is entitled to the Faragher Ellerth defense because it has an

established sexual harassment policy which Aponte unreasonably failed to utilize to address his

alleged complaints.  An employer cannot be strictly liable for a hostile work environment created

by a supervisor when the employer did not know nor reasonably should have known of the

alleged misconduct. *See Chahoult v. Interstate Brands*, 540 F.3d 64, 73(1st Cir. 2008)(*citing*

*Meritor Sav. Bank, FSB v. Vinsons*, 477 U.S. 57, 70-72 (1986); *see also Fontanez Nunez v.*

*Janssen Ortho*, 447 F.3d 50, 56 (1st Cir. 2006); *Lee Crespo v. Schering Plough Del Caribe Inc.*,

354 F.3d 34, 46 (1st Cir. 2003).  An employer may defend itself against liability when: 1) the

employer exercised reasonable care to avoid harassment and to eliminate it when it might occur;

and 2) the complaining employee "failed to act with reasonable care to take advantage of the

employer's safeguards to prevent harms that could have been avoided". *See Id.* (*citing Faragher*

*v. City of Boca Raton*,  524 U.S. 775, 805 (1998); *Burlington Indus. Inc. v. Ellerth*, 524 U.S.

742(1998)). Here, it is undisputed that the Nalco maintains a harassment policy designed to

prevent and address harassment.  Aponte was fully aware of this policy and had access to it

during his employment.   The policy sets forth a mechanism for employees who perceive they

have been discriminated or harassed to complain. *See Chahoult* (plaintiff conceded  that

employer had an acceptable sexual harassment policy and complaint process in place, had trained

its employees regarding policies and plaintiff was aware of policies, therefore employer met first

prong of *Faragher-Ellerth* test in showing it took reasonable steps to avoid harassment). It is further undisputed that not once, over the course of the six or seven years during which Aponte had contact with Castillo and claims he felt discriminated and harassed, did Plaintiff raise a complaint of discrimination or harassment pursuant to Nalco's policy. Accordingly, Aponte failed to act with reasonable care and Nalco cannot be liable for the alleged harassment.

### Plaintiff's Supplemental State Law Claims Necessarily Fail

Plaintiff has also asserted supplemental state law claims under Law 100, Law 80 and Article 1802. To proceed on either of these claims, however, Aponte must prove that he can successfully state a claim under either the ADA, Title VII or the ADEA. Plaintiff cannot do so, such that his supplemental claims under Puerto Rico law also fail and must be dismissed.

## VII.   Stipulations of Fact

A.   Joint:

1. Aponte was born on November 17, 1964 in Bayamon, Puerto Rico.
2. Aponte attended the University of Puerto Rico Mayaguez Campus from 1982 to 1988 and obtained a Bachelor of Science in Chemical Engineering.
3. Upon graduating from college, Aponte obtained a job in Data Entry for Utical. During his employment at Utical, Aponte did not have any responsibility for selling products.
4. Nalco Chemical (Nalco) is a corporation organized under the laws of Delaware and registered to do business in the Commonwealth of Puerto Rico.
5. Nalco is in the business of selling water treatment chemicals and providing technical service and solutions to its clients in a highly competitive industry.
6. Aponte was hired as an Applications Engineer for Nalco in June 1996.
7. Aponte understood that employees who began working as Applications Engineers could become District Representatives who, in addition to providing technical assistance to customers, are responsible for generating sales of company products.
8. On or about 1997, Aponte became a District Representative for Nalco.
9. In 1997, Aponte had an annual sales target of approximately $350,000.
10. In 1997, Aponte was responsible for the Pfizer- Barceloneta and Abbott accounts.
11. In the year 2000, Aponte accepted a demotion in position from District Representative to Application Engineer.

43

12. Aponte reported to Nalco that he was diagnosed with Type II diabetes on August 26, 2001.

13. Sometime in 2006, Aponte returned to the position of District Representative.

14. Aponte was responsible for ensuring order and revenue growth of Company products and services to assigned customer and prospect accounts by analyzing and meeting customer needs.

15. Aponte's responsibilities included calling on existing customers, servicing assigned accounts by analyzing needs and requirements and recommending solutions, establishing selling strategy and tactics, establishing new accounts and achieving annual sales targets.

16. Aponte understood that he was responsible for maintaining good client service and relationships so that the client would not go to a competitor.

17. Aponte understood that he was responsible for cultivating new clients and establishing new accounts.

18. Aponte was responsible for responding to clients' requests for information about Nalco products and services.

19. Aponte was also responsible for preparing various different types of reports, including reports summarizing his findings following client visits and other reports to keep management informed of his activities.

20. Regular client reports were usually due within several days or, at most, one week after client visits.

21. In January, 2005, Ashok Duggal (Canadian) was promoted to Area Manager. In January 2005, Aponte began reporting directly to Duggal.

22. Duggal, in turn, reported to Jorge Castillo, Sales Manager (Colombian). Castillo was based in Colombia.

23. In 2007, Aponte's sales goals included increasing annual sales by approximately 11 - 12%.

24. On July 23, 2008, Duggal and Jorge Ortiz-Soldevilla (Ortiz), met with Aponte and informed him that his employment was terminated.

25. During the termination meeting, neither Duggal nor Ortiz said anything to Aponte about his age, national origin, any health conditions or about any male stereotypes.

26. On or about December 9, 2008, Aponte filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). As part of his charge, Aponte alleged, sex, national origin, age and disability discrimination.

27. On or about 1999, Abbott ceased to be a Nalco customer.

28. Aponte was the District Representative for the Abbott account when Abbott ceased to be a Nalco customer.

29. In 2007, Aponte was the District Representative responsible for the Lilly PR-2, Lilly PR-5; Lilly PR-6, Smurfit-Stone, Amgen, Warner Chilcott, Baxter-Guayama, and Chevron Phillips client accounts.

30. On or about February 2007, Aponte met with Duggal to discuss Aponte's performance at Baxter.

31. On August 14, 2007, Duggal met with Aponte to discuss Aponte's placement on a performance improvement plan.

44

32.   Aponte was placed on a performance improvement plan on August 14, 2007

33.   In 2007, Warner Chilcott cancelled Nalco's contract. The Warner Chilcott account was worth approximately $60,000.

34.   Castillo travelled to Puerto Rico every two to three months or approximately five times a year and his visits typically lasted about one week.

B.   Plaintiff:

1.   In 1998, Nalco transferred José Medina as Sales Manager to Puerto Rico.

2.   José Medina is of Venezuelan nationality.

3.   José Serrano was General Manager for Nalco Chemical Company for the relevant time period, and is of Mexican nationality.

4.   Jorge Castillo was Sales Manager for Nalco for the relevant time period, and is of Colombian nationality.

5.   Jorge Castillo began supervising sales for the Puerto Rican market on or around 2001.

6.   Ashok Paul Duggal (Duggal) was Area Supervisor for Nalco for the relevant time period, and is of Canadian nationality.

7.   On or around 2006-2007, Aponte began working as District Representative (Sales) for Nalco, while at the same time still gave technical support to his clients and to clients of other sales personnel.

8.   Donato Aponte became the expert on the 3DTRASAR technology for Nalco on the year 2007 for the region and Latin America.

9.   As the 3DTRASAR expert for Nalco, Aponte gave seminars and presentations on the subject and other systems for industrial water treatment operations such as R.O.S. (Reverse Osmosis System) system; water clarification systems; cooling towers systems; high pressure boilers systems and was the point person for any consultations for such technology and associated equipment for Puerto Rico, Dominican Republic, Mexico, Central America, Colombia and Venezuela, Caribbean Islands and the State of Florida.

10.   After approximately one year Aponte obtained a job with the Puerto Rico Aqueducts and Sewer Authority (PRASA). Aponte's job at PRASA was of a technical nature in the pretreatment program and did not involve sale of products and services because he was involved in compliance with pretreatment permits.

11.   Aponte asked Duggal to postpone the termination until after Aponte's wife, who was eight months pregnant, delivered the baby. Duggal told him that neither Ortiz nor himself could do anything about the termination because a decision had already been made.

12.   Aponte alleges Castillo was responsible for creating a hostile work environment and that he began to feel discriminated against when Jorge Castillo arrived in 2001.

14050616v.6

C.     Defendants:

1.     Aponte's job with the Puerto Rico Aqueduct and Sewer Authority
       (PRASA) was of a technical nature and did not involve the sale of
       products or services.

2.     Aponte's job with Puerto Rico Electric Power Authority (PREPA) was of
       a technical nature and did not involve the sale of products or services.

3.     When Aponte was hired, the other Applications Engineers were Ashok
       Duggal (Canadian) and Jorge Ortiz (Puerto Rican).

4.     Applications Engineers for Nalco are not responsible for meeting sales
       targets and they are not eligible for commission.

5.     Aponte received an email from Duggal dated February 17, 2007 where
       Duggal advised Aponte that he was on probation.

6.     Aponte received an email from Duggal dated March 24, 2007 concerning
       a Chevron Phillips survey.

7.     Aponte received an email from Duggal dated May 21, 2007 concerning a
       meeting he had with Warner Chilcott.

8.     Aponte's sales as of June 2007, were approximately $30,000 or 11% down
       when compared to prior year

9.     Aponte received a document from Duggal dated August 14, 2007
       concerning his placement on a Performance Improvement Plan.

10.     In 2007, Warner Chilcott cancelled Nalco's contract. The Warner Chilcott
       account was worth approximately $60,000.

11.    Aponte received an email from Duggal dated May 3, 2008 concerning a
       visit to Amgen.

12.    Aponte received an email from Duggal dated May 23, 2008, concerning
       the submission of client reports.

13.    Aponte received an email from Duggal dated May 30, 2008, concerning a
       special report for Wyeth.

14.    Aponte received an email from Duggal dated June 8, 2008, concerning
       late reports.

15.    Aponte received an email from Duggal dated June 12, 2008, concerning a
       service report for Alpla Barbados.

16.    Aponte received another email from Duggal dated June 12, 2008,
       concerning compliance with reports.

17.    Aponte received an email from Duggal dated June 21, 2008, concerning
       his performance.

18.    On or about June, 2008, Ortiz told Aponte not to visit Amgen anymore.

19.    Nalco maintains an Equal Employment Opportunity and Harassment
       policy which prohibits unequal treatment of employees on the basis or
       their age, race, national origin, disability or any other protected
       characteristic.  The policy provides that any employee who feels that he or
       she has been the subject of discrimination or harassment "should report
       the behavior to his or her immediate supervisor, the appropriate EEO/HR
       contact or any Nalco officer."

20.    Aponte received a copy of Nalco's Equal Employment Opportunity and
       Harassment policy.

46

21.    Aponte did not submit any report of discrimination or harassment to Nalco during his employment.

22.    Castillo was concerned about employees being overweight.

23.    Castillo once brought an employee to give a talk to employees about cholesterol.

24.    In 2007, the Nalco District Representatives were in the Puerto Rico market were Jorge Ortiz, Edward Bray, Francisco Casanova, Pedro Lara, Donato Aponte and Dennis Lopez.  All of them are Puerto Rican.

25.    Jaime Suarez (Colombian) was hired on July 14, 2008 as an Applications Engineer.

14050616v.6

## VIII.  Trial Witnesses

### A.  Plaintiff:

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| 1.  Donato Aponte | Plaintiff will testify on his own behalf and personal knowledge to tell of his experience at **Nalco**, of the injuries he was caused and why he considers that he was subjected to unwarranted conduct from defendants that caused him to be discriminated and submitted to continuous insults, disparaging remarks and ridicule, and eventually to his termination without cause, and at a sufficient degree to constitute an abusive attack on his honor, dignity, personal integrity, reputation and private and family life that led him to file this complaint and seek reparation for his damages | **LACK OF FOUNDATION** <br><br> **HEARSAY**[3] |
| 2.  Belkis Santiago | Will testify as to her knowledge of the extensive hours Plaintiff Aponte worked while at Nalco, the amount of time Plaintiff Aponte dedicated to the confection of reports, to work related trips, to the receiving and managing emergency calls, the interruptions to Plaintiff Aponte's vacation time, and overtime work after hours, Saturdays and Sundays. Santiago was Aponte's spouse and has witnessed the emotional and physical effect that defendants acts and omissions have had on Aponte's health, and state of mind.  Consequently, she has suffered emotional distress, and her marriage life was adversely affected, ending in divorce.  She has full knowledge and information of dispute. Tel. 787-635-6185; Address: Urb. Estancias de la Fuente, Calle Ducado CC-3, Toa Alta, P.R. 00953; Currently works | **RELEVANCE**[4] <br><br> **LACK OF FOUNDATION** <br><br> **LACK OF PERSONAL KNOWLEDGE**[5] <br><br> **HEARSAY** |

---

[3] Defendants' objections on the basis of hearsay refer to Federal Rules of Evidence 801, 802 and 803.

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| | for the State's Deparment of Family Services (*Departamento de la Familia*). | |
| 3.  Jorge Ortiz Soldevilla | Nalco employee. Has knowledge of the extensive work hours invested and incurred by Plaintiff Aponte during the time he worked for Nalco in trips, emergency calls, vacation interruptions, overtime work outside normal business hours including Saturdays and Sundays, special work tasks and reports, problem solution with WWTP, boilers, cooling towers and 3D Tracing, and support to PREPA. He assisted plaintiff in recovering personal items after his dismissal. Tel: 787-746-3500 or 787-385-9350; Address: Urb. Santa Juana II, J-1 Street 12, Caguas, P.R. 00725; Works for Nalco Company. | |
| 4.  Pedro Lara | Nalco employee. Has knowledge and is expected to testify of the extensive work hours invested and incurred by Plaintiff Aponte during the time he worked for Nalco in trips, emergency calls, vacation interruptions, overtime work outside normal business hours including Saturdays and Sundays, special work tasks and reports, problem solution with WWTP, boilers, cooling towers and 3D Tracing, and support to PREPA. Plaintiff also discussed the termination agreement proposal made by **Nalco** and refused by plaintiff. Tel: 787-746-3500 or 787-385-9350; Address: Urb. Santa Juana II, J-1 Street 12, Caguas, P.R. 00725; Works for Nalco Company. (Qualifies as a hostile witness as to which plaintiffs have made reservations in Section XVI). | **RELEVANCE** **LACK OF FOUNDATION** **HEARSAY** **LACK OF PERSONAL KNOWLEDGE** |

---

[4] Defendants' objections on the basis of relevance refer to FRE 401, 402 and 403

[5] Defendants' objections for Lack of Personal Knowledge refer to FRE 602.

14050616v.6

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| 5.     Crispin Hernandez | Nalco employee. Has knowledge and is expected to testify of the extensive work hours invested and incurred by Plaintiff Aponte during the time he worked for Nalco in trips, emergency calls, vacation interruptions, overtime work outside normal business hours including Saturdays and Sundays, special work tasks and reports, problem solution with WWTP, boilers, cooling towers and 3D Tracing, and support to PREPA. Has knowledge and is expected to testify of all the work done by Plaintiff Aponte for Amgen of which he knows. Tel: 787-746-3500 or 787-385-9350; Address: Urb. Santa Juana II, J-1 Street 12, Caguas, P.R. 00725; Works for Nalco Company. | **RELEVANCE** <br><br> **LACK OF FOUNDATION** <br><br> **HEARSAY** <br><br> **LACK OF PERSONAL KNOWLEDGE** |
| 6.     Jorge Omar Vazquez | Process Engineer at Amgen. Mr. Vazquez has knowledge about and should be able to declare about Aponte's service visits to Amgen and that many times he would comply with his duties even though he was alone and sick. He also should be able to provide testimony about the special work he was commissioned to perform at Amgen because of his expertise. He will confirm that Aponte visited Amgen several times a week, during weekends and when it was required until the early hours of the morning and that in most cases he would be performing these visits alone and without any support form his superiors or co-workers at Nalco. Amgen Manufacturing Ltd., P.R., St. Rd. 31, Km. 24.6, Juncos, P.R. 00777. | **RELEVANCE** <br><br> **LACK OF FOUNDATION** <br><br> **HEARSAY** <br><br> **LACK OF PERSONAL KNOWLEDGE** |
| 7.     Julio Moreno | As Executive Director for Information Systems for Amgen has been served a subpoena *ad testificandum* with attached Subpoena to Produce Documents and is expected to testify as to any or all documents, in hard copy or electronic storage containing of Amgen records or | **RELEVANCE** <br><br> **LACK OF FOUNDATION** <br><br> **HEARSAY** <br><br> **LACK OF PERSONAL** |

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| | files which contain any complaint from Amgen to Nalco as to service by Nalco, or mentioning Donato Aponte; or related to any search conducted under any previous or the subpoena he has been served ad testificandum in this litigation; any written documentation of the search method; or if any such search was or results negative, a certification of the negative results; as well as any other document on file, of hard copy records of communications between Amgen and Nalco referring to or mentioning Donato Aponte, that is, plaintiff in this case, between January 1, 2007 and the date of production, all as per this subpoena. Amgen Manufacturing Ltd., P.R., St. Rd. 31, Km. 24.6, Juncos, P.R. 00777 | **KNOWLEDGE** |
| 8.    Esteban Santos | As Vice President and General Manager for Amgen Manufacturing Ltd PR or designated knowledgeable person as per subpoena issued, is expected to testify as to any or all documents, in hard copy or electronic storage containing of Amgen records or files which contain any complaint from Amgen to Nalco as to service by Nalco, or mentioning Donato Aponte; or related to any search conducted under any previous or the subpoena he will be served ad testificandum in this litigation; any written documentation of the search method; or if any such search was or results negative, a certification of the negative results; as well as any other document on file, of hard copy records of communications between Amgen and Nalco referring to or mentioning Donato Aponte, that is, plaintiff in this case, between January 1, 2007 and the date of production, all as per this subpoena. Amgen Manufacturing Ltd., P.R., St. Rd. 31, Km. 24.6, Juncos, P.R. 00777 | **RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**HEARSAY**<br><br>**LACK OF PERSONAL KNOWLEDGE** |

| | Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|---|
| 9. | Ashok Duggal | Duggal will be examined as to the contents, search, retrieval, and presentation of all of Nalco's disclosures. (Qualifies as a hostile witness as to which Plaintiffs have made reservations in Section XVI) | RELEVANCE<br><br>LACK OF PERSONAL KNOWLEDGE |
| 10. | Dr. Juan Menchaca | Treating medical physician of Plaintiff Donato Aponte Navedo, and will testify in connection with medical records that he can authenticate and testify as to his own knowledge, regarding Plaintiff's damages and medical condition. Calle Parana 1701, Rio Piedras Heights, San Juan, PR 00926; Tel: 787-767-1120. | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>HEARSAY<br><br>FRE 701; NOT DISCLOSED AS EXPERT |
| 11. | Dr. Carlos Gil | Treating medical physician of Plaintiff Donato Aponte Navedo, and therefore will testify in connection with medical records that he can authenticate and testify as to his own knowledge, regarding Plaintiff's damages and medical condition. Calle Georgetti #45, Barceloneta PR 00617; Tel: 787-846-3145. | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>HEARSAY<br><br>FRE 701; NOT DISCLOSED AS EXPERT |
| 12. | Yesenia Garcia | Psychologist that Aponte consulted through his employer's assistance services at Cerveceria India and as such will testify as to her knowledge of her records and regarding Plaintiff's psychological condition as treating psychologist. Servicios Prestados por medio de la firma Lucy Lopez Roig, EAP, Inc. Con oficinas en la Calle Domenech 400, Suite 701 Hato Rey, PR. Tel. 787-763-6708. | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>HEARSAY<br><br>FRE 701; NOT DISCLOSED AS EXPERT |

14050616v.6

B.    Defendants

| Deponent's Name and Title | Anticipated Testimony | Plaintiff's Objections |
|---|---|---|
| 1.  Ashok Duggal | Mr. Duggal will testify as to Aponte's employment and work performance, the complaints received from various Nalco client concerning Aponte's performance and the reasons for Aponte's termination. | Relevance;[6]<br><br>Lack of Foundation;<br><br>Hearsay not subject to exception;<br><br>Subject to Preclusion. |
| 2.  Jorge Ortiz Soldevilla | Mr. Ortiz will testify as to Aponte's employment and work performance, the complaints received from various Nalco clients concerning Aponte's performance and the reasons for Aponte's termination. | Hearsay not subject to exception;<br><br>Lack of Foundation. |
| 3. Stephanie Glasshagel Nalco HR Business Partner | Ms. Glasshagel will testify as to Nalco's policies and her communications with  Duggal concerning Aponte's termination. | Lack of Foundation;<br><br>Hearsay not subject to exception;<br><br>Subject to Preclusion. |
| 4. Kenneth Colon Amgen | Mr. Colon will testify as to Aponte's service to Amgen, a June 2008 meeting with Nalco personnel and Amgen's communications to Nalco concerning Aponte's performance deficiencies. | Lack of Foundation;<br><br>Hearsay not subject to exception;<br><br>Subject to Preclusion. |
| 5. Roberto Picou Amgen | Mr. Picou will testify as to Aponte's service to Amgen, a June 2008 meeting with Nalco personnel and Amgen's communications to Nalco concerning Aponte's performance deficiencies. | Hearsay not subject to exception;<br><br>Lack of Foundation;<br><br>Subject to Preclusion. |

---

[6] Plaintiffs refer to FRE 801, 802, 803 (Hearsay); FRE 901 (Authentication, Identification); FRE 401. 402 (Relevance); FRE 602 (Lack of Personal Knowledge)

| Deponent's Name and Title | Anticipated Testimony | Plaintiff's Objections |
|---|---|---|
| 6. Pedro Lara | Mr. Lara will testify as to his knowledge of Nalco's customer relationships, how accounts were handled and the services provided by Nalco to its clients. | Qualified Objection<br><br>As to Any Testimony Outside of His own Personal Knowledge<br><br>Hearsay not subject to exception |
| 7. Crispin Hernandez | Mr. Hernandez will testify as to his knowledge of Nalco's customer relationships, how accounts were handled and the services provided by Nalco to its clients. | Qualified Objection<br><br>As to Any Testimony Outside of His own Personal Knowledge<br><br>Hearsay not subject to exception |

IX.     **Expert Witnesses**

    A.     Plaintiff:

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| 1.   Dr. Jose A. Franceshini Carlo | Has evaluated Mr. Donato Aponte's current mental condition, and will testify about the emotional harm upon Mr. Aponte as a result of the hostile work environment, discrimination, and dismissal from Nalco. Dr. Franceschini has concluded that Aponte, as of the date of his report, is going through a very difficult process in his life that has caused him emotional harm due to his occupational problems at Nalco. The report concludes that Aponte's symptoms of depression and anxiety ("Adjustment Disorder with depressive mood") with poor sleep patter are a consequence of his termination at Nalco.  For more details regarding his testimony, please see Dr. Franceschini's psychiatric report provided to Defendants on October 28, 2009. | LACK OF FOUNDATION<br><br>HEARSAY<br><br>FRE 702 AND 703 |

14050616v.6

| Deponent's Name and Title | Anticipated Testimony | Defendants' Objections |
|---|---|---|
| 2.   Dr. Leroy Lopez Morales | Has evaluated and determined the loss of earnings experienced by Plaintiff as a consequence of employment termination due to alleged age, gender and national origin discrimination. Mr. López Morales has computed Aponte's loss of earnings as a result of his projected diminution in earnings, as a present value of $1,004,299.00.  For more details regarding his testimony, please see Mr. Lopez' report on his Evaluation of Loss of Earnings of Mr. Donato Aponte, provided to Defendants on October 28, 2009 | **LACK OF FOUNDATION**<br><br>**HEARSAY**<br><br>**FRE 702 AND 703** |

B.    Defendants:

1.    None.

## X.    Proposed Exhibits/ Documentary Evidence

A.    Plaintiff:

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 1) | 3DTRASAR Optimizer Report for prospect in St Lucia.<br><br>CLIENT FILES_Page_003 to 009 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to shows his proficiency and Nalco's tools to a prospect in St Lucia during the sales process.  He used this tool to simulate the different cooling tower water treatment scenarios and design the correct water treatment for the system. | 003-009 | **RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**MULTIPLE DOCUMENTS** |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 2) | 3DTRASAR Optimizer Report for Cooling Tower White Rust situation.<br><br>CLIENT FILES_Page_020 to 027 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the Amgen Cooling Tower White Rust situation.  He used this tool to simulate the different cooling tower water treatment scenarios to solve the Amgen White Rust situation at the Cooling Tower. | 020-027 | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |
| 3) | 3DTRASAR Optimizer Report for troubleshooting the situation at Lilly PR5 cooling tower system.<br><br>CLIENT FILES_Page_028 to 029 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the troubleshooting the situation at Lilly PR5.  He used this tool to simulate the cooling tower water treatment scenario to investigate a recurrent problem of scaling and corrosion in a Heat Exchange at Lilly PR-5. | 028-029 | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 5) | 3DTRASAR Optimizer Report for Amgen's Cooling Tower White Rust situation, Feb/2008.<br><br>CLIENT FILES_Page_042 to 045 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the Amgen Cooling Tower White Rust situation.  He used this tool to simulate the different cooling tower water treatment scenarios to solve the Amgen White Rust situation at the Cooling Tower. | 044-047 | IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 6) | 3DTRASAR Optimizer Report for Amgen's Cooling Tower White Rust situation, May/2008.<br><br>CLIENT FILES_Page_080 to 083 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the Amgen Cooling Tower White Rust situation.  He used this tool to simulate the different cooling tower water treatment scenarios to solve the Amgen White Rust situation at the Cooling Tower | 095-098 | IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |
| 7) | 3DTRASAR Optimizer Report for troubleshooting the situation at Lilly PR5 cooling tower system, Aug/2007.<br><br>CLIENT FILES_Page_084 to 103 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the troubleshooting the situation at Lilly PR5.  He used this tool to simulate the cooling tower water treatment scenario to investigate a recurrent problem of scaling and corrosion in a Heat Exchange at Lilly PR-5. | 099-104; 107-114 | IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>MULTIPLE DOCUMENTS |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 8) | 3DTRASAR Optimizer Report for Amgen's Cooling Tower White Rust situation, Aug/2007.<br><br>CLIENT FILES_Page_146 to 148 - Description: 3DTRASAR Optimizer Report – This type of reports is part of the 3DTRASAR Cooling Tower Water Treatment program. On this occasion Aponte used this tool to solve the Amgen Cooling Tower White Rust situation. He used this tool to simulate the different cooling tower water treatment scenarios to solve the Amgen White Rust situation at the Cooling Tower. | 223-225 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |
| 9) | Amgen's Flush Process Report, 2007.<br><br>CLIENT FILES_Page_160 to 165 - Description: Flush Process Report – This reports shows that Aponte worked as a third party witness to Amgen during the start up process at the New Expansion Projects at Amgen Plant in Juncos. | 736-741 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 10) | Amgen's Deareator Performance Test Report, 2007<br><br>CLIENT FILES_Page_365 to 376 - Description: Deareator Performance Test Report- Aponte Design this document format for report the result, findings and Recommendation of a Deareator performance test.  In those documents Aponte used this report to presents the result of the Deareator performance tests to the Amgen personnel. | 668-675; 680-683 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**IMPROPER/INACCURATE DESCRIPTION**<br><br>**RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**INCOMPLETE**<br><br>**MULTIPLE DOCUMENTS**<br><br>**NO CERTIFIED TRANSLATION** |
| 11) | Amgen's Boiler Inspection Report, 2006 and 2007.<br><br>CLIENT FILES_Page_394 to 396 - Description: Boiler Inspection Report – Aponte used this report format to communicate the observation, finding and recommendation to his customers in this occasion Amgen. | 715-716; 717 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**NO CERTIFIED TRANSLATION** |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 12) | Amgen's Boiler Inspection Deposit Analysis Report , Aug/31/2007.<br><br>CLIENT FILES_Page_407 - Description: Boiler Inspection Deposit Analysis Report – Aponte used this report to inform Amgen the result of the deposit found inside the boiler #2 and the possible cause of the deposit and the recommendation for this situation. | 945 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>NO CERTIFIED TRANSLATION |
| 13) | Description: Letter to Maria Bonilla (SS&P) from Amgen, Oct/18/2007.<br><br>CLIENT FILES_Page_460 - Description: Letter to Maria Bonilla (SS&P) from Amgen answering her request for a price decrease due the difficult economical situation of Amgen during those days. Aponte discuss this Amgen request with the Nalco management and answered Bonilla request with a 17% og total saving in the chemical products | 1627 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 14) | Amgen Cooling Tower White Rust Situation Report, May/27/2008.<br><br>CLIENT FILES_Page_483 to 484 - Description: Amgen Cooling Tower White Rust Situation Report – In this reports Aponte shows Amgen personnel quick and clear the Root Cause of the situation, the solutions and recommendation for the Amgen Cooling Tower White Rust situation | 666-667 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION<br><br>MULTIPLE DOCUMENTS |
| 15) | Chevron Phillips' Clarifier Performance Report, Aug/22/2006.<br><br>CLIENT FILES_Page_514 - Description: Clarifier Performance Report – Aponte used this type of document to report to the clients the solid removal efficiency of a WWTP clarifier. | 815 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 16) | Chevron Phillips' WWTP Jar Test Report, Feb/5/2007<br><br>CLIENT FILES_Page_517 to 521 - Description: WWTP Jar Test Report – Aponte used this type of document to report to the clients the result of a Jar Test and the recommendation of the more efficient products and doses of coagulants and polymers . | 818-822 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 17) | Chevron Phillips' WWTP Jar Test Report , Jul/27/2006<br><br>CLIENT FILES  Page_534 to 536 - Description: WWTP Jar Test Report – Aponte used this type of document to report to the clients the result of a Jar Test and the recommendation of the more efficient products and doses of coagulants and polymers. | 835-837 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY** |
| 18) | Lilly PR6 's Microbiological growth Reports , Aug/18/2007<br><br>CLIENT FILES  Page_594 to 596 - Description: Microbiological growth Reports – Aponte used this document to report the findings and recommendation of the qualitative microbiological culture in the cooling systems. | 1038-1040 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**IMPROPER/INACCURATE DESCRIPTION**<br><br>**RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**INCOMPLETE**<br><br>**NO CERTIFIED TRANSLATION**<br><br>**MULTIPLE DOCUMENTS** |

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 19) | Lilly PR-5 HE-1202 Report , Feb/23/2008<br><br>CLIENT FILES_Page_839 - Description: Lilly PR-5 HE-1202 Report – In this reports Aponte explain to Lilly PR-5 Engineers the evaluation, findings and recommendation for the HE-1202 situation. | 1270 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 20) | Lilly PR-5 HE-1202 Report , Dec/26/2007.<br><br>CLIENT FILES_Page_840 to 844 - Description: Lilly PR-5 HE-1202 Report – In this reports Aponte explain to Lilly PR-5 Engineers the evaluation, findings and recommendation for the HE-1202 situation. | 1271-1275 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 21) | Lilly PR-5 Water Reuse  Water Treatment Report , Nov/30/2007.<br><br>CLIENT FILES_Page_850 to 851 - Description: Lilly PR-5 Water Reuse Water Treatment Report – In this reports Aponte explain to Lilly PR-5 Engineers the evaluation, findings and recommendation for water chemical treatment as part of the Cooling tower water reuse project. | 1281-1282 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 22) | Warner Chilcott Deareator Performance Test Report, Jul/25/2007.<br><br>CLIENT FILES_Page_972 to 975 - Description: Warner Chilcott Deareator Performance Test Report- Aponte Design this document format for report the result, findings and Recommendation of a Deareator performance test. In those documents Aponte used this report to presents the result of the Deareator performance tests to the Warner Chilcott personnel. | 1612-1615 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 23) | Aponte's Amgen Business Review Presentation 2007<br><br>Organization Related Files_Pages_001 to 012 – Description - Aponte's Amgen Business Review Presentation 2007 | 606-617 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 24) | Aponte's Amgen Business Review Presentation 2006<br><br>Organization Related Files_Pages_013 to 045 - Description: Aponte's Amgen Business Review Presentation 2006. | 618-650 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 25) | Aponte's Baxter Business Review Presentation 2007<br><br>Organization Related Files_Pages_046 to 063 - Description: Aponte's Baxter Business Review Presentation 2007 | 795-812 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 26) | Aponte's Warner Chilcott Business Review Presentation 2006<br><br>Organization Related Files_Pages_064 to 115 - Description: Aponte's Warner Chilcott Business Review Presentation 2006. | 1136-1187 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>NO CERTIFIED TRANSLATION<br><br>MULTIPLE DOCUMENTS |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 27) | Aponte's Lilly PR5 Quarterly Business Review Presentation 2007.<br><br>Organization Related Files_Pages_064 to 115 - Description: Aponte's Warner Chilcott Business Review Presentation 2006. | 1430-1524 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 28) | PREPA San Juan Nalmet Jar Test Report, Oct/20/2007.<br><br>Organization Related Files_Pages_284 to 288 - Description: PREPA San Juan Nalmet Jar Test Report- Aponte Design this document format for report the result, findings and Recommendation of a WWTP Jar Test. In those documents Aponte used this report to presents the result of the WWTP Jar Test to PREPA Personnel as part of the selling process. | 1300-1304 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 29) | PREPA Palo Seco Nalmet  Powerpoint Presentation during PREPA technical seminar at Caguas Puerto Rico. Nov/2005.<br><br>Organization Related Files_Pages_289 to 309 - Description: PREPA Palo Seco Nalmet Powerpoint Presentation during PREPA technical seminar at Caguas Puerto Rico. - Aponte Design this powerpoint presentation to report the result, findings and Recommendation of a Palo Seco WWTP Nalmet Jar Test.  In those documents  Aponte used this report to presents the result of the WWTP Nalmet  Jar Test to PREPA Personnel as part of the selling process. | 1396-1416 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 30) | Aponte's Nalco Weekly Schedule, 2008<br><br>Organization Related Files_Pages_272 to 273 - Description: Aponte's Nalco Weekly Schedule. | 867-868 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 31) | Aponte's Nalco Weekly Monthly Call Report, Feb/2008<br><br>Organization Related Files_Pages_270 to 271 - Description: Aponte's Nalco Weekly Monthly Call Report. | 400-401 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 32) | Aponte's 3DTRASAR Powerpoint presentation for the Regional Sales Conference at Cartagena de Indias Colombia, Febuary 2008.<br><br>Out of Town Assigments_page_001 to 011 - Description: Aponte's 3DTRASAR Powerpoint presentation for the Regional Sales Conference at Cartagena de Indias Colombia, Febuary 2008.  Aponte design this presentation as Nalco's Regional 3DTRASAR Champion. | 243-253 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 33) | Aponte's 3DTRASAR Powerpoint presentation for the Regional Sales Conference at Cartagena de Indias Colombia, February 2008.<br><br>Out of Town Assigments_page_012 to 053 - Description: Aponte's 3DTRASAR Powerpoint presentation for the Regional Sales Conference at Cartagena de Indias Colombia, February 2008. Aponte design this presentation as Nalco's Regional 3DTRASAR Champion. | 254-295 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 34) | Aponte's 3DTRASAR Powerpoint presentation for the Central America and Caribbean Region Meeting at Dominican Republic, May 2007<br><br>Out of Town Assigments_page_074 to 234 - Description: Aponte's 3DTRASAR Powerpoint presentation for the Central America and Caribbean Region Meeting at Dominican Republic, May 2007. Aponte design this presentation as Nalco's Regional 3DTRASAR Champion as part of the Sales force training. | 404-545 (To be verified) | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>NO CERTIFIED TRANSLATION<br><br>MULTIPLE DOCUMENTS |

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 35) | Aponte's Client WWTP Clarification Case Study Powerpoint presentation for the Regional Sales Conference at Merida Mexico, March2007.<br><br>Out of Town Assigments_page_074 to 234 - Description: Aponte's 3DTRASAR Powerpoint presentation for the Central America and Caribbean Region Meeting at Dominican Republic, May 2007. Aponte design this presentation as Nalco's Regional 3DTRASAR Champion as part of the Sales force training. | 933-944 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |
| 36) | Photos taken by Aponte at Nalco's Regional sales Meeting Cartagena de Indias Feb/2008<br><br>Photos_Pages_001 to 006 - Description: Aponte's Nalco trip to Cartagena de Indias February 2008. | Photos pgs 1-6 | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION |
| 37) | List of Aponte's clients as April 2007 and April 2008.<br><br>Sales_Page_28 and 42 - Description: List of Aponte's clients as April 2007 and April 2008. | 1552-1566 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>MULTIPLE DOCUMENTS |

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 38) | Emails between Aponte and Duggal after Aponte's termination from jul/24/2008 to Aug/1/2008.<br><br>Medical Files and Earnings Records_page_138 to 142 - Description: Emails between Aponte and Duggal after Aponte's termination. | 1767-1771 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE<br><br>NO CERTIFIED TRANSLATION<br><br>MULTIPLE DOCUMENTS |
| 39) | Aponte's blood and urine, Aug/26/2005.<br><br>Medical Files and Earnings Records_page_034 to 035 - Description: Aponte's blood and urine analysis during the health episode of diabetes during his special WWTP project time (8/2005) in Cerveceria India at Mayaguez. | 1663-1664 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>ILLEGIBLE |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 40) | Aponte's blood and urine analysis, sep/6/2005.<br><br>Medical Files and Earnings Records_page_037 to 038 - Description: Aponte's blood and urine analysis during the health episode of diabetes after his special WWTP project time in Cerveceria India at Mayaguez. | 1666-1667 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |
| 41) | Aponte's Lumbosacral Spine MRI Result Report (June 17, 2008).<br><br>Medical Files and Earnings Records_page_156 - Description: Aponte's Lumbosacral Spine MRI Result Report (June 17, 2008). | 1785 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE |
| 42) | Aponte's Cobra Notification Enrollment after Nalco termination,  Jul/31/2008.<br><br>Medical Files and Earnings Records_page_110 to 114 - Description: Aponte's Cobra Notification Enrollment after Nalco termination. | 1739-1742 | LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>INCOMPLETE |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 43) | Aponte mitigation effort After Nalco termination . Emails from different companies,  Aug/2008.<br><br>Medical Files and Earnings Records_page_089 to 094 - Description: Aponte mitigation effort After Nalco termination. | 1718-1723 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION<br><br>MULTIPLE DOCUMENTS |
| 44) | Aponte mitigation effort After Nalco termination, Aug/2008.<br><br>Medical Files and Earnings Records_page_097 to 101 - Description: Aponte mitigation effort After Nalco termination. | 1726-1730 | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>MULTIPLE DOCUMENTS |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 45) | Divorce Sentence CASE: D DI2009-0763.<br><br>Divorce Sentence_Pages_001 to 003 - Description: Aponte's Divorce Sentence. | Divorce Sentence<br><br>Pgs. 1-3 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**NOT PRODUCED**<br><br>**RELEVANCE**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**NO CERTIFIED TRANSLATION** |
| 46) | Aponte's Nalco 2008 Total Rewards Statement prior Aponte's termination.<br><br>Medical Files and Earnings Records_page_144 to 151 - Description: Aponte's Nalco 2008 Total Rewards Statement prior Aponte's termination. | 1773-1780 | **LACK OF /IMPROPER IDENTIFICATION**<br><br>**LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY** |
| 47) | Aponte's Nalco pay checks copies, 2008.<br><br>Medical Files and Earnings Records_page_129 to 131 - Description: Aponte's Nalco pay checks copies. | 1758-1760 | **INCOMPLETE**<br><br>**MULTIPLE DOCUMENTS** |
| 48) | Aponte's Cerveceria India pay checks copies, 2008.<br><br>Medical Files and Earnings Records_page_152 to 153 - Description: Aponte's Cerveceria India pay checks copies. | 1781-1782 | **LACK OF FOUNDATION**<br><br>**LACK OF AUTHENTICATION**<br><br>**HEARSAY**<br><br>**INCOMPLETE** |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 49) | Psychiatric Report<br><br>Dr. Franceschini's Psychiatric Report. Santa Cruz #73 Suite 201, Medical Bldg. Santa Cruz Bayamon, Puerto Rico 00959. Report dated October 23, 2009. | | LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 50) | Loss of Earnings Report<br><br>Mr. Leroy López' Economic Loss of Earnings Report. Advanced Research Center, Inc., 301 Winston Churchill Ave. San Juan, Puerto Rico 00926 Report dated October 28, 2009 | | LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE |
| 51) | Dr. Franceschini's C.V. | | LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 52) | Mr. Leroy Lopez' C.V. | | RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |

75

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 53) | Aponte's I.Tax Returns 2003-2008 | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 54) | Aponte's Nalco Time Sheets | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE |
| 55) | Photographs at Wyeth  CT Test 5-14-2008 | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 56) | SS Earnings Statement 1980-2008 | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 57) | Nalco 2008 Total Rewards Statement | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY |
| 58) | Certification of Employment Cerveceria India 10-14-2009 | | NOT PRODUCED<br><br>LACK OF /IMPROPER IDENTIFICATION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>NO CERTIFIED TRANSLATION |

14050616v.6

| Exhibit No. | Description | Bates Nos. | Defendants' Objections |
|---|---|---|---|
| 59) | Statement at EEOC | | LACK OF /IMPROPER IDENTIFICATION<br><br>IMPROPER/INACCURATE DESCRIPTION<br><br>RELEVANCE<br><br>LACK OF FOUNDATION<br><br>LACK OF AUTHENTICATION<br><br>HEARSAY<br><br>INCOMPLETE |

B.    Defendants:

| | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| A. | Aponte Employment Agreement | Nalco 25-26 | Authentication;[7] Hearsay not subject to exception; Lack of proper foundation S.O. Subject to Preclusion[8] |
| B. | Duggal email to Aponte dated 2/17/2007 | Nalco 51 Nalco 153 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |

---

[7] Plaintiffs refer to FRE 801, 802, 803 (Hearsay); FRE 901 (Authentication, Identification); FRE 401. 402 (Relevance)

[8] Plaintiffs make standing objection as to preclusive effects of Motion in Limine to be Filed; See Sections XII(A): ("S.O. Subject to Preclusion")

14050616v.6

|  | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| C. | Duggal email to Aponte dated 3/24/2007 | Nalco 75 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| D. | Duggal email to Aponte dated 5/21/2007 re: Visita Warner Chilcott | Nalco 71 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| E. | Memo from Duggal to Aponte dated 7/24/2007 re: Mid Year Performance Review | Nalco 46-47 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| F. | Memo from Duggal to Aponte dated 8/14/2007 re: Performance Improvement | Nalco 1-2 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| G. | Duggal email to Aponte dated 5/3/2008 re: Amgen | Nalco 50 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness |
| H. | Duggal email to Aponte dated 5/23/2008 re: Reports | Nalco 68 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| I. | Duggal email to Aponte dated 5/27/2008 re: Amgen | Nalco 56 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness |

14050616v.6

|   | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| J. | Duggal email to Aponte dated 5/30/2008 re: Presentation | Nalco 74 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| K. | Duggal email to Aponte dated 6/08/2008 re: Chevron Phillips Chemical Puerto-Coolong Tower | Nalco 58 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness. S.O. Subject to Preclusion |
| L. | Duggal email to Aponte dated 6/8/2008 re: Request for Report-April 2008 | Nalco 69-70 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness |
| M. | Duggal email to Aponte dated 6/8/2008 re: Slicitud de Informe- Abril 2008 | Nalco 69--70 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness. S.O. Subject to Preclusion |
| N. | Duggal email to Aponte dated 6/12/2008 re: Alpla Barbados | Nalco 54-55 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness. |
| O. | Duggal email to Aponte dated 6/12/2008 re: WyethCT2-3 FansHz | Nalco 72-73 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |

14050616v.6

|   | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| P. | Duggal email to Aponte dated 6/12/2008 re: CFT May- Compliance Caribbean | Nalco 57 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness |
| Q. | Duggal email to Aponte dated 6/21/2008 re: Service Report | Nalco 52-53 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| R. | Duggal email to Aponte dated 6/21/2008 re: Nalco Ca Carbonate Fouling Inhibitor for Superfund | Nalco 59-64 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness. S.O. Subject to Preclusion |
| S. | Ortiz email toDuggal dated 6/23/2008 re: Amgen Pharmaceutical Complain with attachment | Nalco 3-5 | Authentication; Hearsay not subject to exception; Lack of proper S.O. Subject to Preclusion |
| T. | Glasshagel email to Duggal dated 6/27/2008 re: Information on Donato | Nalco 145 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| U. | Glendalis Garcia email to Glasshagel dated 7/1/2008 re: Donato Aponte Termination | Nalco 6 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |

81

|   | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| V. | Glasshagel email to A. Young dated 7/7/2008 re: Termination Recommendation for | Nalco 7 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| W. | Duggal email to Glasshagel dated 7/17/20008 re: Termination Recommendation for | Nalco 79-81 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| X. | Glasshagel email to Duggal dated 7/18/2008 re: Termination Recommendation for | Nalco 76-77 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness |
| Y. | Termination Form | Nalco 34 | Authentication; Hearsay not subject to exception; Lack of proper foundation; Lack of completeness S.O. Subject to Preclusion |
| Z. | Recommendation for Performance Related Termination | Nalco 10-11 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| AA. | Caribbean & Central America District Organizational Chart | Nalco 167 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| BB. | Nalco Equal Employment Opportunity Policy | Nalco 207-210 | Authentication; Hearsay not subject to exception; Lack of proper foundation |

82

| | Description | Bates Nos. | Plaintiff's Objections |
|---|---|---|---|
| CC. | Requisition | Nalco358-363 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| DD. | Offer letter | Nalco 365-366 | Authentication; Hearsay not subject to exception; Lack of proper foundation |
| EE. | Organizational Charts | Nalco 367-372 | Authentication; Hearsay not subject to exception; Lack of proper foundation |

## XI.   Claims or Defenses Deemed Waived or Abandoned

A.   Plaintiff:

None. Plaintiff has met, under penalty of perjury, on his own knowledge, and with other references to the record the standard to defeat Defendants' Motion for Sumary Judgment which includes the right that all reasonable inferences be made in his favor. Furthermore, as stated, all reasonable inferences helpful to Aponte must be drawn. *Cortes-Irizarry v. Corp. Insular, 111 F.3d 184,187 (1st Cir. 1997)*; *Hahn v. Sargent,523 F.2d 464 (lst Cir.1975), cert. den 425 U.S 904 (1976)*; *Greenburg v. P. R. Maritime Ship. Auth, 835 F.2d 932, 936 (lst. Cir. 1987)*. The court must assume all facts submitted by Aponte adopting his version of any contested facts which are material to his claims. *Vega-Rodriguez v. PR Tel. Co, 110 F.3d 174, 178 (lst Cir 1997)*; *Lipsett v. Univ of Puerto Rico, 864 F.2d 881,895 (1 Cir., 1988)*. As non-movant, Aponte needs only show either that there is controversy on material facts, or that there are sufficient facts in the record from which a trier could find in his favor. This is in contrast to Nalco, as movant, who must base their request solely on facts not in controversy. As per the cited standard for this Circuit, which Plaintiff has met, Plaintiff has not waived nor abandoned any of his claims..

B.   Defendants:

Based on Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Plaintiff's failure to contest or meaningfully respond to these issues, Defendants believe Plaintiff has waived the following:

1.   That Bray or Casanova are similarly situated to Aponte.
2.   That Plaintiff identified similarly situated individuals.
3.   Hostile Work Environment
4.   Applicability of Faragher Ellerth Defense

14050616v.6

5.    Any arguments as to spoliation of evidence or the inadequacy/ completeness of Defendants' document production

## XII.    Pending Motions

A.    <u>Plaintiff:</u>

1.    Motion in Limine to be filed within the timetable the case scheduling order, or under any other timetable allowed by the Court, which merited discussion  At Section VIII of Plaintiffs' initial Proposed Pretrial Order which was submitted for leave to file as ECF No. 162-2. Subsequent to such submission, the Court ruled on Plaintiffs' ECF No. 155 by Order (ECF. Doc. No. 164). Therefore Plaintiffs' request for a timetable to file a motion for a finding of spoliation and motion in limine prior to the resolution of the motion for summary judgment was denied by the Court. (See **ECF No. 155** and Order at **ECF No. 164).** Plaintiffs intend to file within the time period set in the scheduling order or any other timetable as may be set by the Court, a motion in limine that will incorporate all applicable arguments related to Nalco's willful spoliation, as they may justify preclusion of evidence, pleadings or defenses at trial. Through it, Plaintiffs will challenge the admissibility of the documentary evidence Nalco intends to present at trial. As a corollary to the suppression of the documentary evidence, Plaintiffs also seek relief in the form of preclusion at trial of the related and corresponding pleadings and defenses said documentary evidence is purported to be offered in support of. The motion will argue in detail the following areas, with appropriate cites to the record and jurisprudence:

*Nalco's Duty to Preserve*

*Nalco's Cavalier Attitude Towards Discovery Orders*

*Nalco's Data Downgrading*

*Nalco's Indefensible Search*

*Remedies to be Sought by Aponte.*

Discovery abuses perpetrated by Nalco are punishable by **Fed. R. Civ. P. 37,** and Aponte will seek any and all available remedies through a timely motion in limine, within the time frame set by the Court. Joseph, <u>Sanctions: The Federal Law of Litigation Abuse</u> § 49—(4th Edition).

Furthermore, evidence of spoliation is, therefore, admissible to show consciousness of guilt under **Fed. R. Evid. 404(b),** and Aponte will seek the corresponding instructions to the jury regarding the applicable adverse inferences to be had against Nalco. *United States v. Anderson, 2009 U.S. App. LEXIS 12532, at \*\*14–\*\*15 (6th Cir. May 26, 2009)*

2.    Plaintiffs expect at this time that there will be several motions in limine.

B.    <u>Defendants:</u>

1.    Motion for Summary Judgment (Docket Nos. 109, 110, 111, 122)
2.    Motion Submitting Nalco's Constitutional Challenge to Law 100 Presumption (Docket No. 113)
3.    Motion to Strike Plaintiff's Declaration (Docket No. 173)

84

4.      Depending on the Court's ruling on the motion for summary judgment, Defendants expect that there will be several motions in limine.

## XIII.   Estimated Length of Trial

A.      <u>Plaintiff</u>:

Three days of testimony, depending on length of cross-examination.

B.      <u>Defendants</u>:

10 days.

## XIV.   Suggested Dates for Commencement of Trial

A.      <u>Plaintiff</u>:

Trial is set to commence on February 6th, 2012. Plaintiff's counsel, Juan Jose Martinez-Rodriguez, has cleared his calendar for a week and will be able to attend.

B.      <u>Defendants</u>:

The Court has set a trial date of February 6, 2012.  Defendants propose a trial date not less than four (4) weeks after the pending motion for summary judgment is ruled upon.  In accordance with the Court's orders, however, Defendants' counsel will be available the week of February 6, 2012.

## XV.   Other Matters

A.      <u>Plaintiff</u>:

*Testimony by Adverse Parties in Aponte's Case in Chief*:

1.      Aponte will be calling defendant Ashok Duggal as a witness during his case in chief, and may call other witnesses who are employed by Nalco during his case in chief if Nalco brings them to Puerto Rico for this purpose before Nalco presents them in the defense case in chief.

2.      When Aponte presents these witnesses at trial, he is entitled to ask them leading questions, pursuant to the provisions of **Fed. R. E. 611(c).** Duggal is an "adverse party", as are any other potential witnesses who happen to be Nalco employees. Accordingly, on Aponte's examination of these witnesses, leading questions are appropriate. On the other hand,

14050616v.6

when Nalco's attorney engages in "cross examination" of these witnesses during Aponte's case in chief, he should not be allowed to ask leading questions.

3.     As stated by the Advisory Committee in its notes to **Fed. R. E. 611(c),** the rule speaks of leading questions "ordinarily" being "permitted on cross-examination. Such leading questions should not be permitted when the testimony is offered by an adverse party: "The purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example, the 'cross-examination' of a party by his own counsel after being called by the opponent".

4.     "Generally, when a witness identified with an adverse party is called, the roles of the parties are reversed. Leading questions would be appropriate on direct examination but not on cross examination.". *Alpha Display Paging v. Motorola, 867 F.2d 1168, 1171 (8th Cir 1989).*

5.     In conducting its examination of defendant Duggal and of Nalco employees who may be presented in Aponte's case in chief, Nalco should also be limited to the scope of the examination presented by Aponte in his case in chief, for the reasons set forth above.

### *The Jury Cannot be Informed of the Statutory caps or of the Automatic Doubling of Damages*

6.     The 1991 Amendments to Title VII prohibit informing the jury of the statutory caps. **42 U.S.C. §1981(a)(c)(2);** *Hernández-Miranda v. Empresas Díaz Massó, 651 F.3d 167, 173 (1st Cir. 2011),* as juries are not advised of the cap to ensure that no pressure, upward or downward, will be exerted on the amount of jury awards by the existence of the statutory limitations. This court has consistently applied the same reasoning to the automatically

86

doubling of damage awards pursuant to the law of Puerto Rico. *Campos-Orrego v. Rivera,* *175 F.3d 89, 96 (1st Cir. 1999).*

      7.    Doubling of the award is entirely independent of a punitive damage award, which depends upon an increased degree of culpability on the part of the defendants. *Sanchez v. Puerto Rico Oil Co., 37 F.3d 712 (1st Cir. 1994).* The Puerto Rico Supreme Court has characterized the doubling under Puerto Rico law as manifesting the intent of the legislature "to devise a formula to redress damages arising from discrimination in employment." *Garcia Pagan v. Shiley Caribbean,* *122 D.P.R. 193 (1988).* Thus, a plaintiff can receive both the doubling, as a form of compensation, and as punitive damages, to punish or deter.

      *Reservations*

      8.    Aponte reserves the right to present such rebuttal witnesses and documentary evidence on rebuttal as may be necessary without prior notice thereof to Nalco.

      9.    Aponte reserves the right to not use any of the exhibits herein announced and no adverse inference will be drawn from his failure to present them at trial.

      10.    Aponte reserves the right to not use any of the witnesses announced herein and no adverse inference will be drawn from his failure to present them at trial, unless special circumstances warrant such an inference.

      11.    Aponte reserves the right to use exhibits announced by co-defendants, to use witnesses announced by said parties, and to use any exhibit introduced into the record by defendants in the pleadings of the case including, but not limited to the Answer to the Complaint.

      12.    Plaintiffs reserve the right to depose any witnesses not previously announced by defendants.

13.     Plaintiffs reserve the right to further supplement the list of witnesses  and list of documentary evidence and to offer other evidence as may be necessary with proper notice to the defendants no later than fourteen (14) days before trial.

14.     Plaintiffs reserve the right to present rebuttal testimony of other witnesses without previous notice to defendants and to present other rebuttal evidence under Federal Rules of Evidence, without prior notice thereof to defendants.

15.     Plaintiffs reserve the right to equal time frame for filing motions in limine as defendants may seek and obtain from the Court, if other than the timeframe set in Order at ECF No.123..

16.     Plaintiffs reserve the right to present jury instructions and proposed voir dire in equal time frame as defendants may seek and obtain from the Court if other than the timeframe set in Order at ECF No. 123.

17.     Plaintiffs reserve the right to amend portions of the Pretrial, if necessary, as to which Defendants may seek and obtain leave of the Court to amend.

18.     The instant pretrial order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made either on application of counsel for the parties or on motion of the Court

B.     <u>Defendants:</u>

1.     Defendants reserve the right to call rebuttal testimony of other witnesses without prior notice thereof to the other parties and to present other rebuttal evidence pursuant to the Federal Rules of Evidence, without prior notice thereof to the other parties.

2.     Defendants reserve the right to further supplement the list of witnesses and the list of documentary evidence and to offer other evidence as may be necessary with proper notice to the other parties no later than fourteen (14) days before trial.

88

3.      The order in which the witnesses and/or documents have been mentioned herein does not necessarily correspond to the order in which they will be called and/or presented during the parties' presentation of their evidence at trial.

4.      Defendants may modify the statements in this Proposed Pretrial Order during the pretrial conference with the Court or with sufficient time before trial with Court approval to prevent manifest injustice.

5.      Defendants reserve the right to depose any witness or expert witness not previously announced by the other party.

6.      Defendants reserve the right not to present in the trial of this matter all the exhibits and witnesses announced herein, and by not doing so no adverse inference shall be drawn for failure to present them at trial.

7.      Defendants reserve the right to file motions in limine ten (10) days before trial and in no event prior to a ruling on Defendants' Motion for Summary Judgment.

8.      Defendants reserves the right to file jury instructions and their proposed voir dire not earlier than seven (7) days before trial in accordance with Local Rule 5.1.

9.      Defendants reserve the right to amend their portions of the Pre-Trial Order within 21 days after the Court's disposition of the motion for summary judgment.

WHEREFORE, the parties respectfully request that the Court approve and take notice of the above Joint Proposed Pre-trial Order.

Respectfully submitted.

In San Juan, Puerto Rico on this 27th day of December, 2011.

14050616v.6

_s/Juan J. Martinez-Rodriguez_

Juan J. Martinez-Rodriguez
(USDC-PR No. 128706)
PMB-570
1353 Ave. Luis Vigoreaux
Guaynabo, Puerto Rico 00966

_Counsel for Plaintiffs_

Mark Lies III (admitted _pro hac vice_)
Natascha B. Riesco-Farinas (USDC-PR No. 222112)
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL   60603
(312) 460-5000

Arturo Diaz-Angueira
James W. McCartney (USDC-PR No. 211511)
CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.
PO BOX 364966
San Juan, PR   00936-4966
(787) 767-9625
_Counsel for Defendants_

14050616v.6